UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

---

)
**ARTEMIO ALVAREZ BARRON,** )
**CARLOS ERNESTO PEREYRA** )
**VIDANA, MIGUEL MARTINEZ** )
**VILLALOBOS, JESUS LAMBERTO** )
**RAMIREZ LOPEZ, CARLOS** )
**ALFREDO RAMIREZ FERNANDEZ,** )
**DANIEL VALENZUELA CHAVEZ,** )
**ALFREDO VALDEZ RODRIGUEZ,** )
**JESUS IVAN RAMIREZ FERNANDEZ,** )
**ARNULFO VILLEGAS MIRANDA,** )
**JULIO SANTIAGO VILLEGAS** )
**SIFUENTES, JESUS PEDRO ZAZUETA** )   **NO. 6:21-CV-03741-RRS-PJH**
**OCHOA, PEDRO ABEL JIMENEZ** )
**GONZALEZ, FELIPE DE JESUS** )   **JUDGE ROBERT R SUMMERHAYS**
**SUAREZ PALAFOX, JESUS ALFREDO** )
**PARRA MARTINEZ,** )
and others similarly situated, )   **MAGISTRATE JUDGE PATRICK J**
)   **HANNA**
)
**Plaintiffs,** )
)
**v.** )
)
**STERLING SUGARS SALES** )
**CORPORATION,** )
)
)
**Defendant.** )
_____ )

**FIRST AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1.      Plaintiffs are fourteen migrant workers employed during the sugarcane season by

Sterling Sugars Sales Corporation ("Defendant") of Franklin, Louisiana under the federal H-2A

work visa program between 2018 and 2022. Defendant obtained the H-2A visas by falsely representing that Plaintiffs would be employed as agricultural workers. They were not. Instead, Defendant employed Plaintiffs solely as heavy truck drivers, hauling sugarcane from dozens of sugarcane farms in Louisiana back to Sterling Sugars, LLC's sugar mill, or moving sugarcane within the mill. Defendant did this to pay workers at the lowest wage rate possible—well below the local prevailing wage for heavy trucking, which Defendant would have had to pay if Defendant had accurately described the work Plaintiffs actually performed. Defendant's actions not only violated U.S. law and the rights of Plaintiffs, but also gave Defendant an unfair advantage over their U.S. business competitors who obeyed the law and paid fair wages.

2.     Plaintiffs were employed for long hours, often working over 80 hours each week. Plaintiffs and their co-workers were never paid overtime. Plaintiffs bring this action to secure and vindicate rights afforded them by the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* ("FLSA"), the Louisiana Wage Payment Law, Louisiana Revised Statutes 23:631, *et seq.*, the law of contracts, La. Civ. Code art. 1906, *et seq*, and for unjust enrichment, La. Civ. Code art. 2298, to recover unpaid wages, liquidated damages, and contract damages.

3.     Defendant willfully engaged in a scheme or policy of failing to pay its employees, including Plaintiffs, their overtime wages as required by the FLSA. Plaintiffs file this action on behalf of other similarly situated workers to secure overtime wages and liquidated damages due them under the FLSA.

4.     Plaintiffs seek an award of money damages, declaratory and injunctive relief, consequential, and compensatory damages, pre- and post-judgment interest, and attorney's fees to make them whole for damages each of them suffered due to Defendant's violations of the law.

Plaintiffs seek declaratory relief to ensure that they and other employees of Sterling Sugars Sales Corporation are not subjected to similar practices in the future.

## JURISDICTION

5.      Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising under the FLSA; by 28 U.S.C. §1331, this action arising under the laws of the United States; and 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law claims, because these state claims are so closely related to the federal claims that they form part of the same case or controversy.

6.      Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

## VENUE

7.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). As set out herein, a substantial part of the events giving rise to Plaintiffs' claim occurred in this district. Defendant resides in this district, with Sterling Sugars Sales Corporation conducting its business operations in St. Mary's Parish, Louisiana.

## PARTIES

8.      Plaintiffs are citizens of Mexico. At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2A temporary foreign worker visa program, 8 U.S.C. §1101(a)(15)(H)(ii)(a), administered in part by the United States Department of Labor ("DOL"), to work as agricultural equipment operators for Defendant Sterling Sugars Sales Corporation. Plaintiffs are monolingual speakers of Spanish.

9.      Defendant Sterling Sugars Sales Corporation is a closely held Louisiana corporation that operates and maintains its principal address in Franklin, St. Mary's Parish, Louisiana. At all times relevant to this action, Defendant was engaged in commerce within the

meaning of the FLSA, 29 U.S.C. §203(s)(1)(A), in that it transported sugarcane to an associated

processing facility, Sterling Sugars, LLC, that sold its products to businesses in various states

outside of Louisiana. Plaintiffs and the other employees of Defendant regularly and recurrently

handled goods and materials produced for interstate commerce, including raw sugarcane.

10.     At all times relevant to this action, Defendant employed Plaintiffs, Defendant was

Plaintiffs' employer, and Plaintiffs were employees within the meaning of the FLSA, 29 U.S.C.

§203(g), and under the H-2A program regulations, 20 C.F.R. § 655.103(b).

## BACKGROUND

### The Federal H-2A Visa Program

11.     The H-2A program was created by the Immigration and Nationality Act, 8 U.S.C.

§ 1188, and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and

29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of foreign workers to

perform agricultural labor or services of a seasonal or temporary nature.

12.     An employer in the United States may import foreign workers to perform

agricultural labor or services of a temporary nature if the DOL certifies that (1) there are

insufficient available workers within the United States to perform the job, and (2) the

employment of foreign workers will not adversely affect the wages and working conditions of

similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R.

§ 655.100. Foreign workers admitted in this fashion are commonly referred to as "H-2A

workers."

13.     Employers seeking the admission of H-2A workers must first file an Application

for Temporary Employment Certification with the DOL. 20 C.F.R. § 655.130. This application

must include a job offer, commonly referred to as a "clearance order" or "job order," complying

with applicable regulations. 20 C.F.R. § 655.121(a)(1). Employers must certify that the job offer describes the actual terms and conditions of the employment being offered and that it contains all material terms of the job. 20 C.F.R. § 653.501(c)(3)(viii).

14.    Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly situated U.S. workers. 20 C.F.R. §§ 655.120, 655.122 and 655.135. Among these terms is a requirement that for every hour or portion thereof worked during a pay period, the employer will pay the workers the highest of the agricultural adverse effect wage rate (AEWR), the applicable prevailing wage for the occupation in the geographic area where the work is to be performed, the federal minimum wage, or the state minimum wage. 20 C.F.R. § 655.120. In the 2018, 2019, 2020, and 2021 seasons, the highest of these wages for an agricultural equipment operator in Louisiana was the AEWR, which was $10.73 per hour in 2018, $11.33 per hour in 2019, $11.83 per hour in 2020, $11.88 per hour in 2021, and $12.45 in 2022.

## FACTS

### Defendant's Participation in the Federal H-2A Visa Program

15.    Because of an anticipated shortage of domestic workers to work in its business, Defendant Sterling Sugars Sales Corporation filed applications with the DOL seeking temporary employment certification to employ foreign workers as agricultural equipment operators in 2018, 2019, 2020, and 2021. The temporary employment certification applications identified Defendant Sterling Sugars Sales Corporation as a prospective employer of H-2A workers.

16.    The temporary employment certification applications described in Paragraph 15 included a clearance order that, like the temporary labor certification application, identified the prospective employer of the workers as Sterling Sugars Sales Corporation. As required by 20

C.F.R. § 653.501(c)(3)(viii), the clearance order included a certification that it described the actual terms and conditions of employment being offered and contained all material terms of the job. These certifications were signed by Rivers Patout, who identified himself as the President of Sterling Sugars Sales Corporation.

17.     The application described in Paragraphs 15 and 16 for the 2018 season sought certification for a period from September 1, 2018 through January 30, 2019 and requested 75 H-2A workers. The accompanying clearance order requested 70 H-2A workers. Exhibit 1 hereto. For the work to be performed in 2018, Defendant's temporary employment application promised the wage of $10.73 per hour to work in sugarcane for 40 anticipated hours of work per week. It stated that workers hired to fill the advertised positions would have the following job duties:

> Job duties include repair/maintain/continued maintenance of hauling equipment; haul/load/unload sugarcane;

The application also stated that "overtime hours may be offered at the published hourly rate."

18.     The application described in Paragraphs 15 and 16 for the 2019 season sought certification for a period from September 15, 2019 through January 30, 2020 and requested 169 H-2A workers. Exhibit 2 hereto. For the work to be performed in 2019, Defendant's temporary employment application promised the wage of $11.33 per hour to work in sugarcane for 40 anticipated hours of work per week. It stated that workers hired to fill the advertised positions would have the following job duties:

> Job duties include harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment.

The application also stated that "overtime hours may be offered and vary."

19.     The application described in Paragraphs 15 and 16 for the 2020 season sought certification for a period from August 20, 2020 to January 31, 2021 and requested 200 H-2A workers. Exhibit 3 hereto. For the work to be performed in 2020, Defendant's temporary employment application promised the wage of $11.83 per hour to work in sugarcane for 40 anticipated hours of work per week. It stated that workers hired to fill the advertised positions would have the following job duties:

> Job duties include harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment.

The application also stated that "overtime hours are usually offered during plentiful season and may include an additional 10-40 hours of overtime work depending on the nature of the season."

20.     The application described in Paragraphs 15 and 16 for the 2021 season sought certification for a period from August 20, 2021 to January 31, 2022 and requested 203 H-2A workers.  Exhibit 4 hereto. For the work to be performed in 2021, Defendant's temporary employment application promised the wage of $11.88 per hour to work in sugarcane for 40 anticipated hours of work per week. It stated that workers hired to fill the advertised positions would have the following job duties:

> Job duties include harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment.

The application also stated that "overtime hours are usually offered during plentiful season and may include an additional 10-40 hours of overtime work depending on the nature of the season."

21.     The application described in Paragraphs 15 and 16 for the 2018 season also listed as an addendum under "Beneficiaries" the names, addresses, and directions for 11 separate agricultural businesses in Louisiana, and identified Defendant as a "H-2A Labor Contractor."

22.     The application described in Paragraphs 15 and 16 for the 2019 season also listed as an addendum under "Beneficiaries" the names, addresses, and directions for 45 separate agricultural businesses in Louisiana, and identified Defendant as a "H-2A Labor Contractor."

23.     The application described in Paragraphs 15 and 16 for the 2020 season also listed under "Additional Place of Employment Information" the names, addresses, directions, dates of work, and total number of workers for 54 separate agricultural businesses in Louisiana, and identified Defendant as a "H-2A Labor Contractor."

24.     The application described in Paragraphs 15 and 16 for the 2021 season also listed under "Additional Place of Employment Information" the names, addresses, directions, dates of work, and total number of workers for 54 separate agricultural businesses in Louisiana, and identified Defendant as a "H-2A Labor Contractor."

25.     The DOL reviewed Defendant's temporary employment certification applications, which explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B. The DOL ultimately approved Defendant's temporary employment certification applications, allowing Defendant to import H-2A workers to fill the manpower needs set out in its temporary labor certification applications.

26.     Having described the job duties as those of an agricultural equipment operator, the temporary employment certification application for the 2018 season promised to pay the AEWR in Louisiana, $10.73 per hour, as the highest of the AEWR, prevailing wage, or federal or state minimum wage for the job described.

27.     Having described the job duties as those of an agricultural equipment operator, the temporary employment certification application for the 2019 season promised to pay the AEWR in Louisiana, $11.33 per hour, as the highest of the AEWR, prevailing wage, or federal or state minimum wage for the job described.

28.     Having described the job duties as those of an agricultural equipment operator, the temporary employment certification application for the 2020 season promised to pay the AEWR in Louisiana, $11.83 per hour, as the highest of the AEWR, prevailing wage, or federal or state minimum wage for the job described.

29.     Having described the job duties as those of an agricultural equipment operator, the temporary employment certification application for the 2021 season promised to pay the AEWR in Louisiana, $11.88 per hour, as the highest of the AEWR, prevailing wage, or federal or state minimum wage for the job described.

30.     The temporary employment certification applications described in Paragraphs 15 and 16 include, among other things, the assurance that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, labor contractor registration, and other employment-related laws. 20 C.F.R. § 653.501(c)(3)(iii) and 20 C.F.R. § 655.135(e).

31.     In Appendix A to the temporary employment certification applications described in Paragraphs 15 and 16, Defendant signed a declaration under the penalty of perjury that its representative had reviewed the applications and that to the best of his knowledge, the information contained in the applications was true and accurate.

32.     In the temporary employment certification applications described in Paragraphs 15 and 16 and the accompanying clearance orders, Defendant knowingly made false statements regarding the job duties to be performed.

33.     In their temporary employment certification applications and the accompanying clearance orders, Defendant knowingly misrepresented the job duties to be performed by the H-2A workers, including Plaintiffs. Although both the temporary employment certification applications and the clearance orders stated that the H-2A workers would be employed as agricultural equipment operators, Plaintiffs were not assigned such duties. Instead, Plaintiffs and similarly situated workers were employed driving heavy trucks in excess of 26,000 pounds to transport harvested sugarcane from various farms in Louisiana back to processing facilities in Franklin, Louisiana. Defendant did not harvest the sugarcane crops it transported.

34.     Defendant's false statements in their temporary employment certification application and the accompanying clearance order were made under oath.

35.     Defendant's false statements in their temporary employment certification application and the accompanying clearance order were made, *inter alia*, to enable Defendant to pay Plaintiffs and other employees wages at a rate substantially below that required by law.

36.     Admission of foreign workers under the H-2A program is limited to those individuals who will perform agricultural labor or services, as defined in 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 20 C.F.R. § 655.103(c). Under the H-2A program, agricultural labor or services include all work performed on a farm involving cultivating, raising, or harvesting agricultural or horticultural commodities, activities commonly referred to as "primary agriculture." Agricultural labor or services also include activities performed in connection with

- 10 -

primary agriculture activities, but only if those activities are performed on a farm or by the farmer engaged in the primary agriculture activities ("secondary agriculture").

37.     Additionally, agricultural labor or services include the delivering of agricultural commodities to storage, but only if the employer operates a farm and produced more than one-half of the commodities. 20 C.F.R. § 655.103(c)(1)(i)(D).

38.     Plaintiffs and similarly situated workers were not employed in either primary or secondary agriculture activities.  They were not employed cultivating, raising or harvesting agricultural or horticultural commodities. While their work driving heavy trucks involved transportation of sugarcane crops, this employment was neither performed on a farm nor for the farmers who produced the sugarcane. Instead, the work was performed as employees of Defendant, a job contractor.

39.     Defendant did not produce more than one-half of the sugarcane that Plaintiffs delivered or transported.

40.     None of Plaintiffs' work constituted agricultural labor or services within the meaning of 20 C.F.R. § 655.103(c).

41.     To obtain foreign workers to perform temporary or seasonal nonagricultural jobs, such as the truck driving jobs to which Plaintiffs were assigned, an employer must file an application for temporary employment certification under the H-2B program, 20 C.F.R. §§ 655.1, *et seq.*

42.     Among other things, employers seeking certification to employ H-2B nonagricultural workers must offer wages at least equal to the prevailing wage for the occupation in the area of intended employment, as determined by the National Prevailing Wage Center ("NPWC") of the DOL. 20 C.F.R. § 655.10. Absent employer-submitted data, the NPWC

- 11 -

prevailing wage is the arithmetic mean of the wages of workers similarly employed (as defined by the Bureau of Labor Statistics' Occupational Employment Statistics codes) in the area of intended employment. The NPWC prevailing wage in St. Mary's Parish, Louisiana for heavy truck drivers was $20.42 per hour for work performed between July 2018 and June 2019, $19.52 per hour for work performed between July 2019 and June 2020, $20.33 per hour for work performed between July 2020 and June 2021, and $19.76 per hour for work performed between July 2021 and June 2022.

43.     An employer seeking the admission of H-2B workers must obtain a labor certification from the DOL. 8 C.F.R. § 214.2(h)(6)(iii)(C). In order to obtain a labor certification, the employer files an application with DOL. 20 C.F.R. § 655.15. This application must include an attestation from the employer that it will abide with applicable regulatory requirements, including payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B employment certification, 20 C.F.R. §§ 655.10(a), 655.18(b)(5) and 655.20(a), and payment of overtime wages to all workers for any overtime hours, 20 C.F.R. § 655.18(b)(6).

44.     If Defendant wanted to hire foreign truck drivers and comply with the law, they could have and should have applied for certification to employ H-2B workers at the NPWC prevailing wage of $20.42 per hour for the 2018 season, $19.52 per hour for the 2019 season, $20.33 per hour for the 2020 season, and $19.76 for the 2021 season.

### Defendant's Recruitment and Hiring of Plaintiffs

45.     To meet the manpower requirements for their job set out in the temporary employment certification applications described in Paragraph 15 and the accompanying clearance orders, Defendant recruited and hired workers from Mexico, including Plaintiffs

Artemio Alvarez Barrón, Carlos Ernesto Pereyra Vidaña, Miguel Martinez Villalobos, Jesus

Lamberto Ramirez Lopez, Carlos Alfredo Ramirez Fernandez, Daniel Valenzuela Chavez,

Alfredo Valdez Rodriguez, Jesus Ivan Ramirez Fernandez, Arnulfo Villegas Miranda, Julio

Santiago Villegas Sifuentes, Jesus Pedro Zazueta Ochoa, Pedro Abel Jimenez Gonzalez, Felipe

de Jesus Suarez Palafox, and Jesus Alfredo Parra Martinez.

46.    As part of the recruitment process, Plaintiffs spoke with recruiters in Mexico who

worked for Defendant. Some Plaintiffs were told that they needed to obtain special driver's

licenses to perform the job in Louisiana.

47.    Plaintiffs accepted Defendant's offer of employment, which terms were contained

in the temporary employment certification applications described in Paragraphs 15–20, by

traveling to the United States and working for Defendant.

48.    On September 24, 2020 Plaintiff Artemio Alvarez Barrón was issued an H-2A

visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Alvarez Barrón

entered the United States shortly thereafter and commenced employment with Defendant from

around late September 2020 to January 2021.

49.    On September 25, 2018, Plaintiff Carlos Ernesto Pereyra Vidaña was issued an H-

2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Pereyra

Vidaña entered the United States shortly thereafter and commenced employment with Defendant

from around September 2018 to January 2019.

50.    On October 1, 2019, Plaintiff Carlos Ernesto Pereyra Vidaña was issued an H-2A

visa to work for Sterling Sugars Sales Corporation for the 2019 season. Plaintiff Pereyra Vidaña

entered the United States shortly thereafter and commenced employment with Defendant from

around October 2019 to January 2020.

51.     On September 23, 2020, Plaintiff Carlos Ernesto Pereyra Vidaña was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Pereyra Vidaña entered the United States shortly thereafter and commenced employment with Defendant from late September 2020 to October 2020.

52.     On September 25, 2018, Plaintiff Miguel Martinez Villalobos was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Martinez Villalobos entered the United States shortly thereafter and commenced employment with Defendant from around September 2018 to January 2019.

53.     On October 2, 2019, Plaintiff Miguel Martinez Villalobos was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2019 season. Plaintiff Martinez Villalobos entered the United States shortly thereafter and commenced employment with Defendant from around October 2019 to January 2020.

54.     On September 10, 2020, Plaintiff Miguel Martinez Villalobos was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Martinez Villalobos entered the United States shortly thereafter and commenced employment with Defendant from around September 2020 to January 2021.

55.     On September 22, 2021, Plaintiff Miguel Martinez Villalobos was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2021 season.  Plaintiff Martinez Villalobos entered the United States shortly thereafter and commenced employment with Defendant from around late September 2021 to October 2021.

56.     On September 17, 2020, Plaintiff Jesus Lamberto Ramirez Lopez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Ramirez

Lopez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

57.     On October 12, 2018, Plaintiff Carlos Alfredo Ramirez Fernandez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Ramirez Fernandez entered the United States shortly thereafter and commenced employment with Defendant from around October 2018 to January 2019.

58.     On September 17, 2020, Plaintiff Carlos Alfredo Ramirez Fernandez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Ramirez Fernandez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

59.     On October 3, 2019, Plaintiff Daniel Valenzuela Chavez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2019 season. Plaintiff Valenzuela Chavez entered the United States shortly thereafter and commenced employment with Defendant from around October 2019 to January 2020.

60.     On September 17, 2020, Plaintiff Daniel Valenzuela Chavez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Valenzuela Chavez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

61.     On September 17, 2020, Plaintiff Alfredo Valdez Rodriguez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Valdez Rodriguez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

62.     On September 23, 2021, Plaintiff Alfredo Valdez Rodriguez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2021 season. Plaintiff Valdez Rodriguez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2021 to December 2021.

63.     On September 25, 2018, Plaintiff Jesus Ivan Ramirez Fernandez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Ramirez Fernandez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2018 to January 2019.

64.     On September 24, 2020, Plaintiff Jesus Ivan Ramirez Fernandez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Ramirez Fernandez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

65.     On September 23, 2021, Plaintiff Jesus Ivan Ramirez Fernandez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2021 season. Plaintiff Ramirez Fernandez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2021 to December 2021.

66.     On September 23, 2021, Plaintiff Arnulfo Villegas Miranda was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2021 season. Plaintiff Villegas Miranda entered the United States shortly thereafter and commenced employment with Defendant from around late September 2021 to January 2022.

67.     On October 2, 2019, Plaintiff Julio Santiago Villegas Sifuentes was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2019 season. Plaintiff Villegas

Sifuentes entered the United States shortly thereafter and commenced employment with Defendant from around October 2019 to January 2020.

68.     On September 10, 2020, Plaintiff Julio Santiago Villegas Sifuentes was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Villegas Sifuentes entered the United States shortly thereafter and commenced employment with Defendant from around September 2020 to January 2021.

69.     On September 25, 2018, Plaintiff Jesus Pedro Zazueta Ochoa was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Zazueta Ochoa entered the United States shortly thereafter and commenced employment with Defendant from around late September 2018 to January 2019.

70.     On September 25, 2018, Plaintiff Pedro Abel Jimenez Gonzalez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Jimenez Gonzalez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2018 to January 2019.

71.     On October 1, 2019, Plaintiff Pedro Abel Jimenez Gonzalez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2019 season. Plaintiff Jimenez Gonzalez entered the United States shortly thereafter and commenced employment with Defendant from around early October 2019 to January 2020.

72.     On September 11, 2020, Plaintiff Pedro Abel Jimenez Gonzalez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Jimenez Gonzalez entered the United States shortly thereafter and commenced employment with Defendant from around September 2020 to January 2021.

73.     On September 22, 2021, Plaintiff Pedro Abel Jimenez Gonzalez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2021 season. Plaintiff Jimenez Gonzalez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2021 to January 2022.

74.     On November 27, 2018, Plaintiff Felipe de Jesus Suarez Palafox was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2018 season. Plaintiff Suarez Palafox entered the United States shortly thereafter and commenced employment with Defendant from around late November 2018 to January 2019.

75.     On September 17, 2020, Plaintiff Felipe de Jesus Suarez Palafox was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Suarez Palafox entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

76.     On September 23, 2021, Plaintiff Felipe de Jesus Suarez Palafox was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2021 season. Plaintiff Suarez Palafox entered the United States shortly thereafter and commenced employment with Defendant from around late September 2021 to January 2022.

77.     On September 25, 2020, Plaintiff Jesus Alfredo Parra Martinez was issued an H-2A visa to work for Sterling Sugars Sales Corporation for the 2020 season. Plaintiff Parra Martinez entered the United States shortly thereafter and commenced employment with Defendant from around late September 2020 to January 2021.

## Plaintiffs' Employment with Defendant

78.     Throughout the period of their employment by Defendant, Plaintiffs and their co-workers were engaged in commerce within the meaning of the FLSA and its implementing

- 18 -

regulations, because, *inter alia*, they were employed transporting sugarcane, a product that would be processed and sold to businesses in various states outside of Louisiana.

79.    Defendant transports sugarcane to the Sterling Sugars, LLC Franklin plant, which engages in sugar production. The plant receives sugarcane produced on numerous farms in Louisiana and processes it for sale in interstate commerce.

80.    Defendant is a business enterprise with at least two employees and an annual dollar volume of sales or business done of at least $500,000.

81.    At all times relevant to this action, Defendant Sterling Sugars Sales Corporation was an employer of Plaintiffs and their co-workers within the meaning of the FLSA, 29 U.S.C. § 203(d) and the H-2A regulations, 20 C.F.R. § 655.103(b). Defendant directed and supervised Plaintiffs' work activities, assigned them their tasks, and paid them their wages for their labor.

82.    Plaintiff Artemio Alvarez Barrón was employed by Defendant from approximately October 1, 2020 through January 19, 2021.

83.    Plaintiff Carlos Ernesto Pereyra Vidaña was employed by Defendant from approximately September 2018 through January 2019, from approximately October 2019 through January 2020, and from approximately September 25, 2020 through October 12, 2020.

84.    Plaintiff Miguel Martinez Villalobos was employed by Defendant from approximately September 2018 through January 2019, from approximately September 2019 through January 2020, from approximately September 2020 through January 2021, and from approximately September 2021 through October 2021.

85.    Plaintiff Jesus Lamberto Ramirez Lopez was employed by Defendant from approximately September 2020 through January 2021.

86.     Plaintiff Carlos Alfredo Ramirez Fernandez was employed by Defendant from approximately October 2018 through January 2019, and again from approximately September 2020 through January 2021.

87.     Plaintiff Daniel Valenzuela Chavez was employed by Defendant from approximately October 2019 through January 2020, and again from approximately September 2020 through January 2021.

88.     Plaintiff Alfredo Valdez Rodriguez was employed by Defendant from approximately September 2020 through January 2021, and again from approximately September 2021 through December 2021.

89.     Plaintiff Jesus Ivan Ramirez Fernandez was employed by Defendant from approximately September 2018 through January 2019, from approximately September 2020 through January 2021, and again from approximately September 2021 through December 2021.

90.     Plaintiff Arnulfo Villegas Miranda was employed by Defendant from approximately September 2021 through January 2022.

91.     Plaintiff Julio Santiago Villegas Sifuentes was employed by Defendant from approximately October 2019 through January 2021, and again from approximately September 2020 through January 2021.

92.     Plaintiff Jesus Pedro Zazueta Ochoa was employed by Defendant from approximately September 2018 through January 2019.

93.     Plaintiff Pedro Abel Jimenez Gonzalez was employed by Defendant from approximately September 2018 through January 2019, from approximately October 2019 through January 2020,  from approximately September 2020 through January 2021, and again from approximately September 2021 through January 2022.

94.     Plaintiff Felipe de Jesus Suarez Palafox was employed by Defendant from approximately November 2018 through January 2019,  from approximately September 2020 through January 2021, and again from approximately September 2021 through January 2022.

95.     Plaintiff Jesus Alfredo Parra Martinez was employed by Defendant from approximately September 2020 through January 2021.

96.     Plaintiffs' job assignments for the duration of their employment with Defendant consisted solely of driving heavy trucks, rather than performing the agricultural duties described in the temporary employment certification application and the accompanying clearance order, and they received the Louisiana agricultural AEWR for their work, which was $10.73 per hour in 2018, $11.33 per hour in 2019, $11.83 per hour in 2020, and $11.88 per hour in 2021.

97.     Plaintiffs and similarly situated workers drove heavy trucks within the state of Louisiana only, and did not drive across state lines.

98.      Throughout their employment with Defendant, Plaintiffs were assigned to drive heavy trucks in excess of 26,000 pounds to transport harvested sugarcane from various private farms in Louisiana to Defendant's associated sugar processing facility in Franklin, Louisiana, or to transport sugarcane within the facility itself.

99.     For their labor described in Paragraphs 96–98, Plaintiffs and their co-workers were paid $10.73 per hour for the 2018 season, $11.33 per hour for the 2019 season, $11.83 per hour for the 2020 season, and $11.88 per hour for the 2021 season, the respective Louisiana agricultural AEWRs.

100.     Defendant did not pay Plaintiffs or other H-2A workers the higher applicable prevailing wage to which they were entitled for heavy truck driving of $20.42 per hour for work performed between July 2018 and June 2019, $19.52 per hour for work performed between July

- 21 -

2019 and June 2020, $20.33 per hour for work performed between July 2020 and June 2021, and

$19.76 per hour for work performed between July 2021 and June 2022.

101.    Defendant's clearance orders stated that workers would be employed an

anticipated 40 hours per week, but overtime hours may be offered. Plaintiffs and their co-

workers were routinely employed more than 40 hours in a workweek.

102.    Defendant paid Plaintiffs and their other employees by two-week pay periods for

their labor.

103.    Plaintiffs regularly worked upwards of around 180 hours in a two-week pay

period.

104.    Plaintiffs averaged up to 80 hours of work every week over the course of the

season, and they were not paid overtime for hours above 40.

105.    Plaintiffs' co-workers who did the same jobs driving heavy trucks, including

those who moved sugarcane around the sugar processing facility, worked a similar schedule and

hours for the 2018, 2019, 2020, and 2021 seasons.

106.    Plaintiffs and similarly situated co-workers were paid in the same way, utilizing

the same method, system, and rate of pay, which was to multiply hours worked by the applicable

AEWR in the 2018, 2019, 2020, and 2021 seasons, respectively.

107.    In 2018, 2019, 2020, and 2021, Plaintiffs and similarly situated workers were not

compensated at one and one-half the workers' regular rate or any other premium rate for time

each of them was employed in excess of 40 hours in a week.

108.    Plaintiffs and their co-workers did not drive outside the state of Louisiana, and

they transported goods from individual farms to a sugar processing plant, or transported

sugarcane around the processing facility, so they are entitled to overtime pay. 29 C.F.R. Part 782.

## Collective Action Allegations

109.    All claims set forth in Count I are brought by Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to 29 U.S.C. § 216(b). These similarly situated individuals consist of all workers employed by Defendant Sterling Sugars Sales Corporation during 2018, 2019, 2020, or 2021 to drive heavy trucks transporting sugarcane products between various farms and any sugar processing facility, or moving sugarcane around within the facility. These similarly situated workers include all other workers employed by Defendant in 2018, 2019, 2020, and 2021 pursuant to H-2A visas.

110.    Pursuant to their temporary labor certification applications and the accompanying clearance orders, Defendant employed Plaintiffs and approximately 70 H-2A workers in the 2018 season, 169 H-2A workers in the 2019 season, and 200 H-2A workers in the 2020 season, and 203 H-2A workers in the 2021 season.

111.    Defendant failed to pay the similarly situated workers described in Paragraphs 109 and 110 overtime wages as required by the FLSA for those workweeks they were employed in excess of 40 hours.

112.    Pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all similarly situated workers employed by Defendant during 2018, 2019, 2020, or 2021. The named Plaintiffs have consented to be party plaintiffs in this FLSA collective action and copies of their signed FLSA consent forms are attached hereto as Exhibit 5.

## COUNT I

### FLSA OVERTIME WAGES
### (Collective Action)

- 23 -

113.    This count sets forth a claim for damages by Plaintiffs and similarly situated workers for Defendant's failure to pay overtime wages as required by the FLSA, 29 U.S.C. §207(a).

114.    Plaintiffs file this count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. §216(b).

115.    Defendant violated the overtime wage provisions of the FLSA, 29 U.S.C. §207(a), by failing to pay Plaintiffs and similarly situated workers at a rate not less than one and one-half times their regular rate for those workweeks during 2018, 2019, 2020, 2021 or 2022 in which these individuals worked in excess of 40 hours.

116.    Defendant's violations of the FLSA's overtime provisions as set out in this count were willful within the meaning of the Portal-to-Portal Act, 29 U.S.C. §255(a). Defendant showed reckless disregard as to whether their failure to pay overtime wages was prohibited by the FLSA. Although they were aware that they were subject to the overtime provisions of the FLSA, as demonstrated by their clearance orders and temporary labor certification applications that disclosed the potential for overtime hours to both prospective workers and the DOL, Defendant failed to adequately inquire or ascertain as to whether they were obligated to pay Plaintiffs and similarly situated workers at one and one-half their regular rate for work in excess of 40 hours in a workweek. Pay statements provided by Defendant to Plaintiffs and similarly situated workers show that it knew workers were employed in excess of 40 hours a week, but did not pay overtime.

117.    Because of Defendant's violations of the FLSA's overtime provisions, Plaintiffs and others similarly situated are each entitled to recover the amount of wages due to them under

the FLSA, plus an additional equal amount in liquidated damages, and attorney's fees in accordance with Section 16(b) of the Act, 29 U.S.C. §216(b).

**COUNT II**

**BREACH OF EMPLOYMENT CONTRACT**

118.     This count sets forth a claim for damages resulting from Sterling Sugars Sales Corporation's breach of the regulations governing the H-2A program and Plaintiffs' employment contracts, as embodied in Defendant's temporary employment certification applications and accompanying clearance orders seeking workers for the 2018, 2019, 2020, and 2021 seasons.

119.     Defendant was Plaintiffs' employer within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b).

120.     The temporary employment certification applications and accompanying clearance orders constituted a valid employment contract containing all material terms of Plaintiffs' employment for Defendant.

121.     Plaintiffs accepted the terms of their contract by traveling to the United States and working for Defendant in the jobs authorized by their H-2A visas.

122.     In the clearance orders, Defendant promised to pay Plaintiffs the highest of the prevailing wage, AEWR, or federal or state minimum wage. The prevailing wage, as described in Paragraph 42, measures the value of Plaintiffs' labor. Defendant also promised to comply with all applicable Federal and state employment-related laws, including compensation for overtime hours, as required under federal law.

123.     The highest of these wages for driving heavy trucks was the prevailing wage of $20.42 per hour for work performed between July 2018 and June 2019, $19.52 per hour for work performed between July 2019 and June 2020, $20.33 per hour for work performed between July

2020 and June 2021, and $19.76 per hour for work performed between July 2021 and June 2022 as outlined in Paragraph 42.

124.    Because the promises set out in Paragraph 122 were a legal condition of Defendant obtaining foreign worker visas, those promises are incorporated as a matter of law into the contractual relationship between Defendant and Plaintiffs.

125.    Defendant breached Plaintiffs' contracts by assigning them to drive heavy trucks and then failing to pay them the applicable prevailing wage ($20.42 per hour for work performed between July 2018 and June 2019, $19.52 per hour for work performed between July 2019, June 2020, and $20.33 per hour for work performed between July 2020 and June 2021, and $19.76 per hour for work performed between July 2021 and June 2022) for driving those trucks, and by failing to pay overtime wages.

126.    As a result of Defendant's actions as described in this count, Plaintiffs have been denied wages and benefits due them under their employment contracts for which they are entitled to relief.

## COUNT III

## LOUISIANA WAGE PAYMENT ACT

127.    This count sets forth a claim for damages resulting from Defendant Sterling Sugars Sales Corporation's violation of the Louisiana Wage Payment Act, Louisiana Revised Statutes 23:631 and 23:632 ("LWPA").

128.    Defendant failed to pay Plaintiffs within 15 days of their resignation or discharge from employment the amounts due each of them under the terms of their employment, in violation of the Louisiana Wage Payment Act, La. Rev. Stat. 23:631(A)(1)(b).

129.    Plaintiffs Artemio Alvarez Barron and Carlos Pereyra Vidaña notified Defendant in writing of the amounts of unpaid wages they are owed under the LWPA and demanded payment via a letter dated September 9, 2021 that was delivered by mail to Defendant on September 13, 2021. Defendant has not made any payments to Plaintiffs for the amounts of unpaid wages they are owed under the LWPA, nor have they made an offer to settle Plaintiffs' claims.

130.    As a result of Defendant's violations of the LWPA, Plaintiffs are each entitled to recover their unpaid wages along with penalty wages as prescribed by La. Rev. Stat. 23:632(A).

**COUNT IV**

**UNJUST ENRICHMENT**

131.    This count sets forth a claim for damages resulting from Defendant's unjust enrichment from Plaintiffs' employment, as authorized by La. Civ. Code art. 2298.

132.    During the 2018, 2019, 2020, and 2021 seasons, Defendant assigned Plaintiffs to drive heavy trucks and failed to pay them the applicable prevailing wage ($20.42 per hour for work performed between July 2018 and June 2019, $19.52 per hour for work performed between July 2019 and June 2020, $20.33 per hour for work performed between July 2020 and June 2021, and $19.76 per hour for work performed between July 2021 and June 2022) and overtime wages to which they were entitled under the law. The prevailing wage measures the value of Plaintiffs' labor.

133.    Defendant was enriched by Plaintiffs' labor driving heavy trucks for long hours, in that it paid Plaintiffs the lower AEWR ($10.73 per hour in 2018, $11.33 per hour in 2019, $11.83 per hour in 2020, and $11.88 per hour in 2021), but the actual value of their labor was the much higher prevailing wage rate. Defendant was also enriched by falsely characterizing

Plaintiffs' labor as agricultural and not paying overtime, when in fact it was nonagricultural work for which Plaintiffs were entitled to overtime.

134.    Plaintiffs were impoverished by Defendant's failure to pay the prevailing wages and overtime pay they were entitled to, and their impoverishment was directly connected to Defendant's enrichment.

135.    There was no justification or cause for Defendant's enrichment and Plaintiffs' impoverishment whereby obligations are created, modified, or extinguished.

136.    There are no other remedies at law available to Plaintiffs for Defendant's failure to pay prevailing wages.

137.    As a result of Defendant's actions, Defendant was enriched without cause at the expense of Plaintiffs, and Plaintiffs are entitled to compensation as authorized by La. Civ. Code art. 2298.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter an order:

a.    Declaring that Defendant, by the acts and omissions described above, violated Plaintiffs' rights under the overtime provisions of the FLSA at 29 U.S.C. § 207(a) as set forth in Count I;

b.    Granting judgment in favor of Plaintiffs on their Count I claims under the overtime provisions of the FLSA in the amount of the unpaid overtime due each of them, as well as an equal amount as liquidated damages;

c.    Granting judgment in favor of those similarly situated employees described in Count I who timely opt-in and awarding each of them the

amount of FLSA unpaid overtime wages due to him or her, as well as an
equal amount as liquidated damages;

d.     Granting judgment in favor of Plaintiffs on their breach of contract claims
as set forth in Count II and awarding each of them actual and
consequential damages;

e.     Granting judgment in favor of Plaintiffs on their claims under the
Louisiana Wage Payment Act set forth in Count III and awarding each of
them the unpaid wages due them for their employment and penalty wages
as provided in La. Rev. Stat. 23:632(A);

f.     In the alternative to granting judgment in favor of Plaintiffs on their claims
in Count II, granting judgment in favor of Plaintiffs as set forth in Count
IV for Defendant's unjust enrichment and Plaintiffs' impoverishment, and
awarding Plaintiffs compensation due them for their labor;

g.     Awarding Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C.
§216 and La. Rev. Stat. 23:632(A);

h.     Awarding Plaintiffs pre- and post-judgment interest, as allowed by law;

i.     Awarding Plaintiffs the costs of this action; and

j.     Granting such further relief as this Court deems just and appropriate.


                              Respectfully submitted,

                              /s/ Caitlin Berberich
                              Caitlin Berberich, TN Bar No. 025780
                              *Trial Attorney
                              Admitted Pro Hac Vice
                              SOUTHERN MIGRANT LEGAL SERVICES
                              A Project of Texas RioGrande Legal Aid, Inc.
                              311 Plus Park Blvd., Ste. 135

Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org

*/s/ Nicole Bucheri*
Nicole Bucheri, TX Bar No. 24095388
*Admitted Pro Hac Vice*
TEXAS RIOGRANDE LEGAL AID, INC.
1206 E. Van Buren St.
Brownsville, Texas 78520
Telephone: (956) 982-5552
Facsimile: (956) 541-1410
nbucheri@trla.org

*/s/ Daniel Davis*
Daniel Davis, LA No. 30141
*Admitted to Practice in W.D. La.*
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
dan@estesdavislaw.com


ATTORNEYS FOR PLAINTIFFS