UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ARTEMIO ALVAREZ BARRON,** | ) | |
| **et al., and others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | CIVIL ACTION No. 6:21-cv-03741 |
| | ) | |
| **v.** | ) | JUDGE ROBERT T. SUMMERHAYS |
| | ) | |
| **STERLING SUGARS SALES** | ) | MAGISTRATE JUDGE PATRICK J. |
| **CORPORATION,** | ) | HANNA |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF
NOTICE TO SIMILARLY SITUATED WORKERS PURSUANT TO 29 U.S.C. § 216(b)
AND AN ORDER TO PRODUCE CONTACT INFORMATION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF THE CASE .................................................................................. 1

ARGUMENT ............................................................................................................. 2

   I.    Defined Class of Similarly Situated Workers is Sufficiently Similar to Warrant
        Issuance of Court-Authorized Notice to Potential Opt-In Plaintiffs ............................ 3

       A. District Courts in the Fifth Circuit Determine Whether Workers are
          "Similarly Situated" Prior to Authorizing Notice of Lawsuit to
          Potential Opt-In Plaintiffs ........................................................................................ 3

       B. Plaintiffs and Similarly Situated Workers Are "Similarly Situated"
          As Required By § 216(b) .......................................................................................... 4

            i.     Plaintiffs and Similarly Situated Workers Experienced Similar
                  Factual and Employment Settlings ..................................................... 5

            ii.    Defendant's Affirmative Defendants Are More Collective Than
                  Individual .......................................................................................... 9

            iii.   Collectively Adjudicating the FLSA Claims Asserted
                  by Plaintiffs and Similarly Situated Workers is
                  Fair and Procedurally Efficient ...................................................... 11

        C. The Court Can Determine Whether the Defined Class of Similarly Situated
          Workers are Similarly Situated Without Further Discovery ............................... 13

   II.   Proposed Notice and Requested Contact Information is Appropriately Tailored
        to the Needs of the Case ............................................................................................ 15

       A. Court-Authorized Notice to Similarly Situated Workers is Essential
          to Further the Remedial Purposes of the FLSA, to Maximize Judicial
          Efficiency, and to Prevent the Expiration of Workers' Claims ........................... 15

       B. Plaintiffs' Requested Forms of Contact Information Are Routinely Provided
          to Facilitate Dissemination of Notice in FLSA Collective Actions ..................... 17

       C. The Court Should Allow Opt-In Plaintiffs to Execute Consent Forms
          Electronically Within a Reasonable Time Period ............................................... 20

CONCLUSION ......................................................................................................... 22

## **TABLE OF AUTHORITIES**

**CASES**

*Aboin v. IZ Cash Inc.*,
No. 4:20-CV-03188, 2021 WL 3616098 (S.D. Tex. June 29, 2021)......................................9

*Akins v. Worley Catastrophe Response, LLC*,
No. 12-2401, 2013 WL 1412371 (E.D. La. Apr. 8, 2013)....................................................18

*Alvarez v. NES Glob. LLC*,
No. 4:20-CV-1933, 2021 WL 3571223 (S.D. Tex. Aug. 11, 2021) ....................................15

*Amaraut v. Sprint/United Mgmt. Co.*,
No. 3:19-CV-411-WQH-AHG, 2020 WL 1433281 (S.D. Cal. Mar. 23, 2020) ....................17

*Badon v. Berry's Reliable Res., LLC*,
No. 19-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021) .............................................5, 10

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945)...........................................................................................................16

*Cardenas v. A.J. Piedimonte Agric. Dev., LLC*,
No. 18-CV-881-EAW-MJR, 2018 WL 6177271 (W.D.N.Y. Nov. 27, 2018)................20, 21

*Clark v. Centene Co. of Texas, L.P.*,
44 F. Supp. 3d 674 (W.D. Tex. 2014)............................................................................11, 13

*Defrese-Reese v. Healthy Minds, Inc.*,
No. 18-1134, 2018 WL 6928920 (W.D. La. Dec. 19, 2018) ................................................18

*Donogue v. Francis Servs., Inc.*,
No. 041-170, 2004 WL 1161366 (E.D. La. May 24, 2004) ....................................................5

*Dyson v. Stuart Petroleum Testers, Inc.*,
308 F.R.D. 510 (W.D. Tex. 2015).......................................................................................22

*English v. Texas Farm Bureau Bus. Corp.*,
No. 6:17-CV-00323, 2019 WL 2112275 (W.D. Tex. Mar. 29, 2019) ...................................19

*Escobar v. Ramelli Grp., L.L.C.*,
No. 16-15848, 2017 WL 3024741 (E.D. La. July 17, 2017) ................................................18

*Escobedo v. Dynasty Insulation, Inc.*,
No. EP-08-CV-137-KC, 2009 WL 2382982 (W.D. Tex. July 31, 2009) ......................11, 13

*Falcon v. Starbucks Corp.*,
  580 F. Supp. 2d 528 (S.D. Tex. 2008) ..............................................................5, 13

*Garcia v. TWC Admin., LLC*,
  No. SA:14-CV-985-DAE, 2015 WL 1737932 (W.D. Tex. Apr. 16, 2015)...........................19

*Hobbs v. Cable Mktg. & Installation of Louisiana, Inc.*,
  290 F. Supp. 3d 589 (E.D. La. 2018).......................................................................18

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)....................................................................................12, 13, 16

*Johnson v. Big Lots Stores, Inc.*,
  561 F.Supp.2d 567 (E.D. La. 2008) ............................................................................5

*Jones v. Yale Enf't Servs., Inc.*,
  No. 14-2831, 2015 WL 3936135 (E.D. La. June 26, 2015) ..................................18

*LaChapelle v. Owens-Illinois, Inc.*,
  513 F.2d 286 (5th Cir. 1975) .........................................................................3, 12

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987)...........................................................................3

*Magana-Munoz v. W. Coast Berry Farms, LLC*,
  No. 5:20-CV-02087-EJD, 2020 WL 3869188 (N.D. Cal. July 9, 2020) ...............................20

*Mahrous v. LKM Enterprises, LLC*,
  No. 16-10141, 2017 WL 2730886 (E.D. La. June 26, 2017) ..................................20

*Maynor v. Dow Chem. Co.*,
  671 F.Supp.2d 902 (S.D. Tex. 2009) ...............................................................5, 9

*Montelongo v. Meese*,
  803 F.2d 1341 (5th Cir. 1986) .........................................................................20

*Moresi v. Res. Energy Ventures & Constr. Co. LLC*,
  No. 15-cv-02224, 2019 WL 2565634 (W.D. La. June 18, 2019) ................................6, 11, 12

*Neizil v. Williams*,
  No. 82-3-CIV-OC, 1983 WL 1983 (M.D. Fla. Jan. 12, 1983) ..................................17

*Page v. Crescent Directional Drilling, L.P.*,
  No. 5:15-CV-193-RP, 2015 WL 12660425 (W.D. Tex. Dec. 10, 2015)...............................19

*Peery v. Nixon Eng;g, LLC*,
    No. 618CV00358ADAJCM, 2019 WL 5027126 (W.D. Tex. Aug. 29, 2019) ................19, 20

*Pendlebury v. Starbucks Coffee Co.*,
    518 F. Supp. 2d 1345 (S.D. Fla. 2007) ...............................................................14

*Plewinski v. Luby's Inc.*,
    No. H-07-3529, 2010 WL 1610121 (S.D. Tex. Apr. 21, 2010)..............................11

*Powell v. One Source EHS, L.L.C.*,
    No. 20-161-SDD-RLB, 2021 WL 4227064 (M.D. La. Sept. 16, 2021) ................4

*Recinos-Recinos v. Express Forestry, Inc.*,
    233 F.R.D. 472 (E.D. La. 2006)........................................................................21

*Resendiz-Ramirez v. P & H Forestry, LLC*,
    515 F. Supp. 2d 937 (W.D. Ark. 2007)................................................................21

*Riojas v. Seal Produce, Inc.*,
    82 F.R.D. 613 (S.D. Tex. 1979)........................................................................16

*Rodriguez v. RCO Reforesting, Inc.*,
    No. CV 2:16-2523 WBS CMK, 2017 WL 3421963 (E.D. Cal. Aug. 9, 2017) ................21

*Roebuck v. Hudson Valley Farms, Inc.*,
    239 F. Supp. 2d 234 (N.D.N.Y. 2002)................................................................21

*Roussell v. Brinker Int'l, Inc.*,
    441 F. App'x 222 (5th Cir. 2011) ...................................................................5

*Ryan v. Staff Care, Inc.*,
    497 F.Supp.2d 820 (N.D. Tex. 2007) ...............................................................5

*Salinas-Rodriguez v. Alpha Servs., L.L.C.*,
    No. 3:05CV44WHBAGN, 2005 WL 3557178 (S.D. Miss. Dec. 27, 2005)..................21

*Schmidt v. Fuller Brush Co.*,
    527 F.2d 532 (8th Cir. 1975) ........................................................................12

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d. Cir. 2020)............................................................................4

*Snively v. Peak Pressure Control, LLC*,
    314 F. Supp. 3d 734 (W.D. Tex. 2018)..........................................................7, 10

*Soto v. Marquez Constr. & Maint., LLC,*
    No. MO20CV00101DCRCG, 2021 WL 3832836 (W.D. Tex. Apr. 9, 2021)...................6, 15

*Swales v. KLLM Transp. Servs., L.L.C.,*
    985 F.3d 430 (5th Cir. 2021) ...................................................................... passim

*Thiessen v. Gen. Elec. Capital Corp.,*
    267 F.3d 1095 (10th Cir. 2001) ..............................................................................5

*Wade v. Furmanite Am., Inc.,*
    No. 3:17-CV-00169, 2018 WL 2088011 (S.D. Tex. May 4, 2018)........................22

*White v. Integrated Elec. Techs., Inc.,*
    No. 12-359, 2013 WL 2903070 (E.D. La. June 13, 2013)....................................18

*Yair Granados v. Hinojosa,*
    219 F. Supp. 3d 582 (W.D. Tex. 2016)................................................................20

*Young v. Energy Drilling Co.,*
    534 F. Supp. 3d 720 (S.D. Tex. 2021) .................................................................15

*Xavier v. Belfor USA Grp., Inc.,*
    585 F. Supp. 2d 873 (E.D. La. 2008) ....................................................................4

**STATUTES**

8 U.S.C. §1101(a)(15)(H)(ii)(a) ...................................................................................2
29 U.S.C. § 201 ..........................................................................................................1
29 U.S.C. § 207(a) .....................................................................................................1
29 U.S.C. § 216(b) ............................................................................................. passim
29 U.S.C. § 255(a) .............................................................................................2, 17

**RULES**

20 C.F.R. § 655.103(b) ...............................................................................................8
20 C.F.R. § 655.120 ...................................................................................................8
20 C.F.R. § 655.121(a)(1) ..........................................................................................6
20 C.F.R. § 655.122 .................................................................................................12
20 C.F.R. § 655.135 .................................................................................................12

**INTRODUCTION**

Plaintiffs allege that Defendant, Sterling Sugars Sales Corporation, violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (hereinafter "FLSA") by failing to pay Plaintiffs and similarly situated workers overtime wages as required by the FLSA for those workweeks they were employed in excess of 40 hours. 29 U.S.C. § 207(a). A FLSA action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiffs seek court approval for notice to be issued to the following class of similarly situated workers ("Similarly Situated Workers"):

> All current and former employees of Defendant who were employed by Defendant at any time during the last three years to drive trucks to transport harvested sugarcane within the state of Louisiana, including within the sugar processing mill operated by Sterling Sugars, LLC.

The facts alleged in Plaintiffs' pleadings, along with the declarations and documents offered as evidence, show "sufficient similarity between the plaintiffs' employment situations" and the employment situations of this group of workers. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021). Therefore, Plaintiffs request that the Court order Defendant to produce the names and contact information for this group of current and former employees so they may be notified of the pendency of this action as soon as possible; authorize Plaintiffs' counsel to distribute the proposed notice and consent to sue form, attached to Plaintiffs' Motion as Exhibit 1, to all Similarly Situated Workers; and allow all Similarly Situated Workers six months from the date Defendant produces complete contact information to file their consent-to-sue form with the Court.

**STATEMENT OF THE CASE**

Defendant Sterling Sugars Sales Corporation is a Louisiana corporation operating in Franklin, Louisiana. *See* Dkt. 29, ¶ 9. Defendant is wholly owned by Sterling Sugars, LLC, Dkt.

13, which operates a sugarcane processing mill in Franklin, Louisiana. Plaintiffs are migrant workers from Mexico who were recruited and hired by Defendant to work for Defendant in the United States between 2018 and 2022, pursuant to the federal H-2A temporary foreign visa program administered by the United States Department of Labor ("DOL"). *See* Exhibits E–R, ¶ 3. *See also* 8 U.S.C. §1101(a)(15)(H)(ii)(a). Plaintiffs worked for Defendant as heavy truck drivers. *See* Exhibits E–R, ¶ 4. Their primary job responsibility was to transport already harvested sugarcane from sugarcane farms within Louisiana back to a sugar mill operated by Sterling Sugars, LLC in Franklin, Louisiana, *see* Exhibits E–Q, ¶¶ 4, 9, or to transport harvested sugarcane within the mill. *See* Exhibit R, ¶¶ 4, 9. In addition to their claim for unpaid overtime wages under the FLSA, Plaintiffs bring causes of action for unpaid wages under Louisiana law, breach of contract, and unjust enrichment.

Plaintiffs' FLSA claim alleges that, as a matter of policy and practice, Defendant failed to pay them overtime wages for all workweeks in 2018, 2019, 2020, 2021, and 2022 during which they worked more than 40 hours per week. Plaintiffs allege that the same policy of not paying overtime applied to all other employees who drove trucks to transport harvested sugarcane during this period. *See* Dkt. 28, ¶¶ 109–111. Plaintiffs allege further that Defendant's violations of the FLSA's overtime provisions were willful within the meaning of the Portal-to-Portal Act, 29 U.S.C. § 255(a), therefore extending the statute of limitations for their FLSA claim against Defendant, and the claims of any similarly situated worker, to three years from the date of each violation. *See* Dkt. 28, ¶ 116.

## **ARGUMENT**

The Court should grant court-authorized notice to the defined class of workers and should order Defendant to produce the requested names and contact information for all such workers.

Through their declarations and exhibits, Plaintiffs have established that they and the defined class of workers are sufficiently similarly situated to warrant court-authorized notice. Plaintiffs' FLSA claims result from Defendant's common policy of not paying overtime to its truck drivers, as opposed to individual circumstances. Court-authorized notice to those workers who are similarly situated is essential to promoting judicial efficiency, furthering the remedial purposes of the FLSA, and preventing the expiration of these workers' claims. The proposed notice, the requested contact information, and the requested opt-in period is fair and properly tailored to the needs of this case.

I.    **Defined Class of Similarly Situated Workers is Sufficiently Similar to Warrant Issuance of Court-Authorized Notice to Potential Opt-In Plaintiffs**

   A.   District Courts in the Fifth Circuit Determine Whether Workers are "Similarly Situated" Prior to Authorizing Notice of Lawsuit to Potential Opt-In Plaintiffs

To proceed as a FLSA collective action, plaintiffs must be "similarly situated." 29 U.S.C. § 216(b).[1] Traditionally, courts have applied a two-step approach to certifying a FLSA collective action, which involves a decision to "conditionally certify" the proposed class for purposes of facilitating notice of the lawsuit to employees who are proposed potential plaintiffs, and a later determination as to whether the employees are sufficiently similar to proceed collectively. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 353 (D.N.J. 1987). Recently, the Fifth Circuit rejected this two-phase approach. In *Swales v. KLLM Transp. Servs., L.L.C.*, the Fifth Circuit directs district courts to decide "the realm of 'similarly situated' workers . . . from the outset of the case" so as to "determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." 985 F.3d at 434.

---

[1] Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a FLSA collective action is fundamentally different in its requirement that a party consent in writing to take part in the suit; similarly situated workers must affirmatively "opt-in," rather than "opt-out." *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

Although *Swales* changed case management procedures, it did not change the standard by which district courts determine whether plaintiffs are "similarly situated," which is "quite distinct from the much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes." *See, e.g., Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d. Cir. 2020) (internal quotations omitted) (citing cases). Further, *Swales* emphasizes that, despite rejecting the *Lusardi* two-phase approach, district courts still retain "broad, litigation-management discretion" in deciding whether a group of workers is sufficiently similarly situated to proceed collectively. *Swales*, 985 F.3d at 443.

Under *Swales*, district courts now "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Powell v. One Source EHS, L.L.C.*, No. 20-161-SDD-RLB, 2021 WL 4227064, at *2 (M.D. La. Sept. 16, 2021) (*citing Swales*, 985 F.3d at 441). Once the necessary information is before it, the district court determines "whether the proposed collective is in fact 'similarly situated,' with an eye toward ensuring that the collective action does not 'devolve into a cacophony of individual actions.'" *Id.* (*citing Swales*, 985 F.3d at 441).

B. <u>Plaintiffs and Similarly Situated Workers Are "Similarly Situated" As Required By § 216(b)</u>

Plaintiffs are similarly situated with all other individuals employed by Defendant within the last three years who drove trucks to transport harvested sugarcane within the state of Louisiana. Defendant had a common policy and practice of not paying overtime to workers holding this position, as shown by Plaintiffs' pay records and their declarations. "FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873,

877–78 (E.D. La. 2008) (internal quotation omitted). "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Ryan v. Staff Care, Inc.,* 497 F.Supp.2d 820, 825 (N.D. Tex. 2007) (quoting *Donogue v. Francis Servs., Inc.,* Civ. A. No. 041-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004)); *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) ("Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively."). To justify the denial of collective treatment, "distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Int'l, Inc*., 441 F. App'x 222, 226–27 (5th Cir. 2011) (noting that, "[i]f one zooms in close enough on anything, differences will abound[,] but plaintiffs' claims need to be considered at a higher level of abstraction") (internal quotation omitted).

In determining whether workers are similarly situated, district courts consider a variety of factors, including: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Badon v. Berry's Reliable Res., LLC*, No. 19-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). "The three factors are not mutually exclusive and there is considerable overlap among them." *Maynor v. Dow Chem. Co.*, 671 F.Supp.2d 902, 931 (S.D. Tex. 2009) (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 574 (E.D. La. 2008)). In this case, an assessment of each factor demonstrates that the proposed group of workers are similarly situated and should proceed collectively.

    i.   <u>Plaintiffs and Similarly Situated Workers Experienced Similar Factual and Employment Settings</u>

District courts (both pre- and post-*Swales*) typically consider the same types of employee/employment characteristics when deciding whether a group of workers are similarly situated for purposes of proceeding collectively. Courts review evidence of "job duties, geographic location, supervision, and salary," *Moresi v. Res. Energy Ventures & Constr. Co. LLC,* No. 15-cv-02224, 2019 WL 2565634, at *2 (W.D. La. June 18, 2019), "the employer's classification of the employees [and] the level of similarity in actual job performance," *id.* at *3, and "plaintiffs' job title, plaintiffs' job duties, and the method in which plaintiffs were paid[.]" *Soto v. Marquez Constr. & Maint., LLC*, No. MO20CV00101DCRCG, 2021 WL 3832836, at *2 (W.D. Tex. Apr. 9, 2021).

The defined Similarly Situated Workers experienced overwhelmingly similar employment characteristics. Employers, such as Defendant, seeking the admission of H-2A workers must first file an application with the DOL that includes details of the job for which the employer is seeking to hire H-2A workers. *See* 20 C.F.R. § 655.121(a)(1). This document is commonly referred to as a "clearance order" or "job order." Defendant filed four H-2A applications and accompanying clearance orders during the time period relevant to this case, one for each sugarcane season. *See* Dkt. 28-1 (2018–2019 season); Dkt. 28-2 (2019–2020 season); Dkt. 28-3 (2020–2021 season); Dkt. 28-4 (2021–2022 season). Plaintiffs and Similarly Situated Workers were hired by Defendant to fill the same position advertised in these applications and clearance orders.

The jobs described in each season's application and clearance order are the same in all material respects. Each claims that the position being hired for is "Agricultural Equipment Operator," *see* Dkt. 28-1, pg. 2; Dkt. 28-2, pg. 2; Dkt. 28-3, pg. 5; Dkt. 28-4, pg. 2, and specifies that the positions would be non-supervisory. *See* Dkt. 28-1, pg. 4; Dkt. 28-2, pgs. 4; Dkt. 28-3, pg. 8; Dkt. 28-4, pg. 3. Each specifies that no U.S. education was necessary. *See* Dkt. 28-1, pg. 5; Dkt. 28-2, pg. 5; Dkt. 28-3, pg. 8; Dkt. 28-4, pg. 3. Each clearance order included the same job

qualifications, specifically that workers have three months of prior related experience and the ability to lift up to 50 pounds. *See* Dkt. 28-1, pg. 11; Dkt. 28-2, pg. 11; Dkt. 28-3, pg. 8; Dkt. 28-4, pg. 3. Each clearance order states that the position would begin in August or September and would finish in January of the following year. *See* Dkt. 28-1, pg. 9; Dkt. 28-2, pg. 9; Dkt. 28-3, pg. 7; Dkt. 28-4, pg. 2. Job descriptions such as these are often considered by courts when determining whether employees are similarly situated. *See, e.g. Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 740 (W.D. Tex. 2018) ("Further, Plaintiffs cite Defendants' single job description for all PCOs to show that PCOs possessed similar qualifications and were expected to perform comparable work").

The declarations submitted by each of the Plaintiffs include similar descriptions of job duties and job supervision. Defendant was the employer named on the H-2A visa for each Plaintiff. *See* Exhibits E–R, ¶ 5. Each Plaintiff generally received work instructions and assignments from the same supervisors employed by Defendant, including individuals the Plaintiffs knew as "Aracely," "Jamie," "Tim," "Osvaldo," and "Lues." *See* Exhibits E–R, ¶ 6. Each Plaintiff drove trucks to various farms in Louisiana to pick up harvested sugarcane and then transported that sugarcane back to the same sugar processing plant in Franklin, Louisiana, *see* Exhibits E–Q ¶ 4, or drove trucks within the sugar mill, *see* Exhibit R, ¶ 4. Each Plaintiff was told he needed a license to drive commercial trucks when he was recruited to work for Defendant. *See* Exhibits E–R, ¶ 10. The job description included in the clearance orders for the 2019, 2020, and 2021 seasons claimed that workers would perform agricultural work such as "harvesting sugarcane" and operating "cane harvester to cut and remove leaves from crop," *see* Dkt. 28-2, pg. 11; Dkt. 28-3, pg. 23; Dkt. 28-4, pg. 18, but Plaintiffs declare uniformly that they did not harvest sugarcane or operate the cane harvester. *See* Exhibits E–R, ¶ 18.

The clearance orders and declarations also demonstrate that Plaintiffs, and Similarly Situated Workers, all worked in the same geographic location. Each clearance order states that the employer-provided worker housing was located in Franklin, Louisiana. *See* Dkt. 28-1, pg. 9; Dkt. 28-2, pg. 9; Dkt. 28-3, pg. 8; Dkt. 28-4, pg. 3. Each clearance order includes an addendum listing the farms to which workers may have to travel as part of their employment with Defendant, all of which are within the state of Louisiana. *See* Dkt. 28-1, pg. 17; Dkt. 28-2, pgs. 17–21; Dkt. 28-3, pgs. 16-21; Dkt. 28-4, pgs. 11–16. Plaintiffs declare that they drove trucks to various farms within the state of Louisiana, but always transported the harvested sugarcane back to the same sugar processing mill located in Franklin, Louisiana, which was owned by Sterling Sugars, LLC, *see* Exhibits E–Q, ¶¶ 4, 9, or that they worked within the mill located in Franklin, Louisiana, *see* Exhibit R, ¶ 4. Plaintiffs declare that as far as they were aware, none of their co-workers worked outside of Louisiana. *See* Exhibits E–Q, ¶ 14.

The H-2A applications and clearance orders submitted by Defendant, Plaintiffs' declarations, and Plaintiffs' wage statements, demonstrate that Plaintiffs were subject to uniform pay practices. Each clearance order states that workers would be paid on a per hour basis. *See* Dkt. 28-1, pg. 12; Dkt. 28-2, pg. 12; Dkt. 28-3, pg. 7; Dkt. 28-4, pg. 2. The disclosed wage in each season was the federally mandated H-2A Adverse Effect Wage Rate (AEWR). *See* 20 C.F.R. §§ 655.103(b) and 655.120. The clearance order for the 2018–2019 season states that workers would be compensated $10.73 per hour. *See* Dkt. 28-1, pg. 12. The clearance order for the 2019–2020 season states that workers would be compensated $11.33 per hour. *See* Dkt. 28-2, pg. 12. The clearance order for the 2020–2021 season states that workers would be compensated $11.83 per hour. *See* Dkt. 28-3, pg. 7. The clearance order for the 2021–2022 season states that workers would be compensated $11.88 per hour. *See* Dkt. 28-4, pg. 2. Plaintiffs, their wage statements, and the

wage statements produced by Defendant, confirm that this is the wage rate that Plaintiffs were paid. *See* Exhibits A–D; Exhibits E–R, ¶ 11. Plaintiffs believe that their co-workers received the same wage rate. *See* Exhibits E–R, ¶ 17. Plaintiffs each report that they were paid by check every two weeks, which is corroborated by their wage statements, and that they generally received their checks from the same individuals. *See* Exhibits E–R ¶ 7.

In assessing whether employees are similarly situated, courts also look for evidence of a "single policy which violates the FLSA." *See Aboin v. IZ Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *4 (S.D. Tex. June 29, 2021); *see also* Maynor, 671 F. Supp. 2d at 931 (stating that "[t]he presence of a common policy, plan, or practice affecting all class members, although not necessarily required, is helpful to showing a similar factual setting."). Plaintiffs have provided the Court with evidence that Defendant had a uniform policy of not paying truck drivers overtime pay. Each of the 14 Plaintiffs declare that they were not paid overtime for weeks in which they worked more than 40 hours per week. *See* Exhibits E–R, ¶ 13. Further, Plaintiffs declare that, to their knowledge, their co-workers also did not receive overtime for any hours worked over 40 hours per week. *See* Exhibits E–R, ¶ 17. Plaintiffs' wage statements confirm that each of the Plaintiffs regularly worked more than 80 hours in a two-week period (in fact, they often averaged 80 hours in a single week), but never received overtime compensation for hours over 40 hours per week. *See* Exhibits A–D. This is sufficient evidence that Defendant had a single policy of not paying truck drivers overtime in violation of the FLSA.

ii.   <u>Defendant's Affirmative Defenses Are More Collective Than Individual</u>

As part of the similarly situated analysis, courts may consider "the various defenses available to defendant which appear to be individual to each plaintiff." *Badon*, 2021 WL 933033, at *3. Defendant has raised 38 affirmative defenses in its Answer to Plaintiffs' First Amended

Complaint. *See* Dkt. 29, pages 25–32. The same defenses are raised against all Plaintiffs jointly, which "lends support to the notion that Plaintiffs are similarly situated." *Snively*, 314 F. Supp. 3d at 741 (pointing out that "many of the specific fact questions cited by Defendants apply to each Plaintiff—i.e. Defendants raise the same defenses against most, if not all, Plaintiffs"). "Although [a defense] may require specific factual inquiries about each Plaintiff," because Defendant asserts the same defenses against every Plaintiff, "collective treatment is less problematic." *Id*. at 742 (reasoning further that "[t]he Court does not see how posing this inquiry 70 times in one collective trial is any less difficult then posing the same inquiry 70 times in 70 separate trials."); *see also Badon*, 2021 WL 933033, at *3 (finding workers to be similarly situated where Defendant's affirmative defense, that the workers were independent contractors, was asserted universally against each plaintiff and opt-in).

In addition to being asserted universally, many of Defendant's affirmative defenses will rely on common legal analysis and evidence. *See, e.g.* Dkt. 29, Second Affirmative Defense ("Plaintiffs cannot prove the existence of a contract entitling them to recovery for the assertions made in their Complaint"); Twenty-Fourth Affirmative Defense ("Defendant's pay practices do not and at no time did violate the FLSA"); Twenty-Fifth Affirmative Defense ("Defendant did not willfully fail to pay overtime compensation to Plaintiffs or any persons allegedly 'similarly situated' to them"); Twenty-Eighth Affirmative Defense ("Defendant at all times acted in good faith with reasonable grounds for believing that it acted in compliance with applicable law"); Thirty Seventh Affirmative Defense ("Plaintiffs are not entitled to any overtime wages because they are statutorily exempt from overtime"). Collective treatment remains appropriate where, like here, "[d]efendant's defenses are more collective than individual." *Moresi*, 2019 WL 2565634, at *4.

Further, none of Defendant's affirmative defenses require a level of individualized inquiry that would frustrate collective treatment in this case. For instance, several defenses relate to the availability and/or calculation of damages. *See, e.g.* Dkt. 29, Fifth, Seventh, Eighth, Ninth, Tenth, Nineteenth Affirmative Defenses. However, differences related exclusively to damages are "generally found to be an insufficient basis for decertification." *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 690 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016); *see also Plewinski v. Luby's Inc*., No. H-07-3529, 2010 WL 1610121, at *5 (S.D. Tex. Apr. 21, 2010) (holding that "[t]he fact that individualized findings regarding damages may be necessary does not require class decertification."). Likewise, defenses related to the applicable statute of limitations for the FLSA claims alleged, s*ee, e.g.* Dkt. 29, Thirty-First Affirmative Defense, are "not [] sufficient to decertify." *Escobedo v. Dynasty Insulation, Inc.*, No. EP-08-CV-137-KC, 2009 WL 2382982, at *8 (W.D. Tex. July 31, 2009) (explaining that even if "Defendant's statute of limitations defense applies to Opt-In Plaintiffs but not to Original Plaintiffs, the common issues invoked by the parties would nevertheless predominate.").

The affirmative defenses in this case are more collective than individual and will rely largely on common evidence and legal analysis. For these reasons, this factor provides further support for a finding that Plaintiffs and the defined class of workers are similarly situated and should be permitted to proceed collectively.

iii.   Collectively Adjudicating the FLSA Claims Asserted by Plaintiffs and Similarly Situated Workers is Fair and Procedurally Efficient

The fairness and procedural considerations of adjudicating the claims of Plaintiffs and Similarly Situated Workers in a collective action are informed by the primary objectives of the FLSA § 216(b) collective action. First, collective action affords plaintiffs "the advantage of lower individual costs to vindicate their rights by the pooling of resources[.]" *Hoffmann-La Roche*

11

*Inc. v. Sperling*, 493 U.S. 165, 170 (1989).[2] Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact" arising from the same activity. *Id*.; *see also Moresi,* 2019 WL 2565634, at *3 (repeating these objectives in the context of a FLSA collective action).

In this case, the scope of the collective action is clear and limited—the proposed class of Similarly Situated Workers to which notice would be sent includes workers employed by Defendant within the last three years who drove trucks to transport harvested sugarcane within the state of Louisiana, including within the sugar processing mill operated by Sterling Sugars, LLC. Most of these workers were employed pursuant to H-2A clearance orders submitted by Defendant to the DOL.[3] Defendant's clearance orders list the total number of workers requested to perform this job: 169 H-2A workers for the 2019 season (Dkt. 28-2, pg. 2), 200 H-2A workers for the 2020 season (Dkt. 28-3, pg. 7), and 203 workers for the 2021 season (Dkt. 28-4, pg. 2).

Further, there is no risk that this action will devolve into unwieldy adjudications of individual claims. As summarized above, the facts and employment circumstances of each Plaintiff and Similarly Situated Worker are overwhelmingly similar. *See supra*, pgs. 6–9. Plaintiffs have provided in their exhibits payroll records that show Defendant's failure to pay overtime wages. *See* Exhibits A-D. Their declarations indicate that these violations are pervasive across the payroll practices for all workers in the defined class of Similarly Situated Workers. *See* Exhibits E–R ¶ 17. All Plaintiffs face the exact same affirmative defenses. *See supra*, pgs. 10–11. The

---

[2] *Hoffman-La Roche* involved the Age Discrimination in Employment Act (ADEA). However, the ADEA incorporates § 216(b) of the FLSA in its enforcement scheme. *See* 29 U.S.C. §626(b). As a result, courts have applied the holdings and analysis in ADEA collective action cases to FLSA collective action cases. *See Schmidt v. Fuller Brush Co*., 527 F.2d 532, 536 (8th Cir. 1975) (*quoting LaChapelle,* 513 F.2d at 288–89).

[3] Defendant may have employed U.S. workers in these positions as well. An H-2A employer "must provide employment to any qualified, eligible U.S. worker who applies to the employer until 50 percent of the period of the work contract has elapsed." 20 C.F.R. § 655.135. Employers must offer U.S. workers terms and working conditions which are not less favorable than those offered to H-2A workers. 20 C.F.R. § 655.122.

overwhelming similarity of the facts and claims at issue in this case favor allowing the proposed group of workers to proceed collectively. "Proceeding collectively always poses certain logistical challenges . . . [b]ut the alternative—[dozens of] individual trials litigating largely the same liability issues and defenses—is less efficient, less expedient, and simply unnecessary." *Clark*, 44 F. Supp. 3d at 691; *see also Falcon*, 580 F. Supp. 2d at 541 ("[G]iven the substantial similarity of the putative class members' claims, it certainly would not be in the interest of judicial economy to require the claims to be adjudicated in [hundreds of] individual trials.").[4]

Finally, "the FLSA is a remedial statute, and the Supreme Court has acknowledged that Congress intended to give 'plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Falcon*, 580 F. Supp. 2d at 541., *citing Hoffmann-LaRoche,* 493 U.S. at 170 (other internal citations omitted). "If Defendant did indeed fail to pay overtime . . . then Defendant retained income which belong to its former employees. Such failure is best remedied by allowing Plaintiffs—some of whom may not have the resources or the sophistication to commence an action individually—to vindicate their rights as a group." *Escobedo*, 2009 WL 2382982, at *9. Here, Plaintiffs are migrant, low-wage workers from Mexico, *see* Exhibits E–R, ¶¶ 2, 3, 11, as are the majority of the Similarly Situated Workers. Given the cost, geographic, and language barriers to accessing justice in the United States, absent collective treatment some potential plaintiffs may find it impossible to pursue their claim individually. This "is the precise reason Congress authorized class action treatment for these types of cases." *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1363 (S.D. Fla. 2007).

C. The Court Can Determine Whether the Defined Class of Similarly Situated Workers is Similarly Situated Without Further Discovery

---

[4] This case was initially filed with six plaintiffs; since filing, eight additional workers who experienced the same overtime violations while employed with Defendant have opted into the lawsuit. Absent collective treatment, this matter—which raises the same legal questions and relies on the same evidence—would be forced to proceed in a *minimum* of fourteen separate lawsuits.

Although in complex cases a district court may decide that additional discovery is necessary before determining whether a group of workers is similarly situated, *Swales* emphasized that "when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations," the district court does not need "mountains of discovery to decide whether notice is appropriate." *Swales*, 985 F.3d at 441–442. The court reasoned that this would likely be the case where "plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job." *Id.*

Plaintiffs' Complaint and the evidence accompanying this motion provide the court with sufficient information about their employment with Defendant to make a similarly situated determination. The Court is in possession of the clearance orders, which specify the terms and conditions of Plaintiffs' and the defined class of similarly situated workers' employment with Defendant during the 2019, 2020, and 2021 seasons. *See* Dkt. 28-2 (2019–2020 season); Dkt. 28-3 (2020–2021 season); Dkt. 28-4 (2021–2022 season). The clearance orders list the job title, required job qualifications, wage rate, job location, housing location, and method of payment applicable to all workers who were hired on H-2A visas, as well as any U.S. workers who applied for and were hired for these positions. *See id.*; *see also supra* at pg. 7-9. In addition, Plaintiffs have submitted declarations with detailed information attesting to the similarity of their employment with Defendant, including information about their daily job responsibilities, their compensation, their supervision, and the geographic areas in which they were assigned to work. *See* Exhibits E–R, ¶¶ 4, 6, 7, 8, 9, 11, 18. Finally, the available wage information—including pay summaries provided by Defendant to Plaintiffs for 11 of the current Plaintiffs, along with Plaintiffs' own pay records, show that Defendant was not paying overtime to the truck drivers employed to transport harvested sugarcane. *See* Exhibits A-D. Given the strong evidence currently before the Court,

14

further discovery is not necessary prior to deciding whether the employees that make up the proposed collective are similarly situated.

Post-*Swales*, numerous district courts in the Fifth Circuit have approved the distribution of court-authorized notice without requiring further discovery where, like here, the pleadings and evidence provided by the plaintiffs provide sufficient information about the employment at issue. *See, e.g., Alvarez v. NES Glob. LLC*, No. 4:20-CV-1933, 2021 WL 3571223 at *2, 4 (S.D. Tex. Aug. 11, 2021) (finding that members of the proposed collective were similarly situated without requiring further discovery where plaintiff,  two opt-ins, and a fourth employee each submitted an affidavit providing details about employment and pay practices); *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 724–725 (S.D. Tex. 2021) (finding that "[n]o further discovery is needed to conclude that [Plaintiff] is similarly situated to other employees" where Plaintiff had already provided payroll documents, two declarations, and evidence of a company-wide pay policy); *Soto*, 2021 WL 3832836 at *2 (finding that "Plaintiffs' pleadings and the declarations provided demonstrate that Plaintiffs have met their burden of establishing similarity" without ordering further discovery).

For the reasons stated above, Plaintiffs do not believe further discovery is needed prior to the Court deciding whether the workers are similarly situated for purposes of § 216(b). In the alternative, Plaintiffs propose that the Court schedule a hearing with the parties to discuss what additional evidence the Court believes to be relevant so that the parties may submit discovery proposals for consideration and approval.

## II.     Proposed Notice and Requested Contact Information is Appropriately Tailored to the Needs of the Case

A. <u>Court-Authorized Notice to Similarly Situated Workers is Essential to Further the Remedial Purposes of the FLSA, to Maximize Judicial Efficiency, and to Prevent the Expiration of Workers' Claims</u>

In collective actions, district courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche*, 493 U.S. at 170–171. This is done for the "prime purpose" of the FLSA— "to aid the unprotected, unorganized and lowest paid of the nation's working population[.]" *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945); *see also Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 619 (S.D. Tex. 1979) (holding that "[i]n light of the fact that the statute is meant to aid injured parties in recovering unpaid minimum wages, it is only sensible that procedures facilitating this intent would be favored."). Notice to similarly situated workers, tailored to the practical needs and considerations of the workers in the proposed class, serves both FLSA's remedial intent and § 16(b)'s goal of judicial economy, but the judicial efficiency of the collective action "depend[s] on employees receiving accurate and timely notice concerning the pendency of the collective action." *Hoffmann-La Roche*, 493 U.S. at 170.

Prompt Court-authorized notice is particularly important here, where the majority of the similarly situated individuals are migrant workers from Mexico and face significant barriers to asserting their legal rights. *See, e.g. Riojas*, 82 F.R.D. at 619 ("In a case such as this where the alleged class members are migratory and difficult to locate, it is nothing more than an act of fundamental fairness to allow the Texas Rural Legal Aid to attempt to notify these farm workers of allegedly illegal activities and the availability of legal action."); *Neizil v. Williams*, No. 82-3-CIV-OC, 1983 WL 1983, at *2 (M.D. Fla. Jan. 12, 1983) ("Notice to potential FLSA class members is particularly appropriate under circumstances such as the case at bar where the class members are indigent migrant farm workers and the action has been brought by a non-profit legal assistance organization."). Given the relatively short statute of limitations for FLSA claims (which

is two years, or three years for willful violations, 29 U.S.C. § 255(a)), sending notice promptly helps these workers avoid losing the ability to enforce their legal rights in court.

To facilitate the notice process and preserve the rights of those who have not yet been notified of the action, Plaintiffs seek an Order from the Court requiring Defendant to disclose full names, all known physical addresses (U.S. and Mexican), telephone numbers (U.S., Mexican, and cellular), and e-mail addresses for each employee or former employee who falls within the proposed class of Similarly Situated Workers. This includes information currently held by any agents of Defendant, such as a labor recruiter. *See Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-CV-411-WQH-AHG, 2020 WL 1433281, at *5–6 (S.D. Cal. Mar. 23, 2020) (finding that in the context of complying with a court order to produce class member contact information, "[a] party is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.") (internal quotations omitted). Plaintiffs request that this information be provided within 14 days from the entry of the Court's Order, in computer readable electronic format, such as in a Microsoft Excel spreadsheet, in order to reduce delays in sending out notice. Plaintiffs ask the Court to approve the proposed Notice and Consent Forms attached to Plaintiffs' Motion as Exhibit 1, which Plaintiffs will then have translated into Spanish, and to approve a six-month opt-in period from the date Defendant produces contact information to counsel for Plaintiffs. Plaintiffs propose that Similarly Situated Workers be allowed to execute the consent form electronically.

B.  <u>Plaintiffs' Requested Forms of Contact Information Are Routinely Provided to Facilitate Dissemination of Notice in FLSA Collective Actions</u>

District courts in Louisiana frequently order defendants to produce the forms of contact information requested by Plaintiffs. *See, e.g. Hobbs v. Cable Mktg. & Installation of Louisiana, Inc.*, 290 F. Supp. 3d 589, 592 (E.D. La. 2018) (ordering Defendant to produce names, addresses,

17

telephone numbers, e-mail addresses, and dates of employment); *Defrese-Reese v. Healthy Minds, Inc.*, No. 18-1134, 2018 WL 6928920, at *5 (W.D. La. Dec. 19, 2018), *report and recommendation adopted*, 2019 WL 97042 (W.D. La. Jan. 3, 2019) (ordering defendant to produce names, last known addresses, and cell phone numbers); *Escobar v. Ramelli Grp., L.L.C.*, No. 16-15848, 2017 WL 3024741, at *4 (E.D. La. July 17, 2017) (ordering defendant to produce names, current or last known addresses, e-mail addresses, and telephone numbers); *Jones v. Yale Enf't Servs., Inc.*, No. 14-2831, 2015 WL 3936135, at *3 (E.D. La. June 26, 2015) (ordering defendant to produce names, mailing addresses, e-mail addresses, and telephone numbers); *White v. Integrated Elec. Techs., Inc.*, No. 12-359, 2013 WL 2903070, at *11 (E.D. La. June 13, 2013) (ordering defendant to produce addresses, telephone numbers, and e-mail addresses); *Akins v. Worley Catastrophe Response, LLC*, 12-2401, 2013 WL 1412371, at *10 (E.D. La. Apr. 8, 2013) (ordering defendant to produce names, addresses, telephone numbers, and e-mail addresses).

In this case, the requested contact information is particularly necessary given the practical realities of reaching migrant and foreign-residing workers like Plaintiffs and others similarly situated. The exact method of notice will depend on the type and quality of contact information provided by Defendant, but Plaintiffs believe the most effective means to distribute notice will be via WhatsApp or other text message and through social media (such as through a Facebook post or messages). *See* Exhibits E-R, ¶ 19 (explaining that mail is often not reliable or commonly used in some communities in Mexico, and that communications made via phone, such as calls and texts, are more reliable).  For notice communicated via WhatsApp or other text message, Plaintiffs will send a short explanatory text message, with the full notice attached. Both forms of notice are included with Exhibit 1 to Plaintiffs' Motion. *See* Exhibit 1 to Plaintiffs' Motion at pgs. 1-2 (Full Notice); pg. 3 (Text Message Notice). Plaintiffs will also send reminder notices and contact

Similarly Situated Workers to confirm receipt of the notice. *See Peery v. Nixon Eng;g, LLC*, No. 618CV00358ADAJCM, 2019 WL 5027126, at *6 (W.D. Tex. Aug. 29, 2019), *report and recommendation adopted*, No. 6:18-CV-00358-ADA, 2019 WL 8501016 (W.D. Tex. Dec. 19, 2019) ("Without another basis to refuse reminders, the Court concludes reminder notices are appropriate to facilitate the FLSA's objectives."); *English v. Texas Farm Bureau Bus. Corp*., No. 6:17-CV-00323, 2019 WL 2112275, at *8 (W.D. Tex. Mar. 29, 2019) (approving reminder notices and contact by phone to ensure notice is received in FLSA collective action); *Page v. Crescent Directional Drilling, L.P.,* No. 5:15-CV-193-RP, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015) (approving reminder notices and contact by phone to ensure notice is received in FLSA collective action). If Plaintiffs' preferred methods of contact are unusable due to the insufficiency of the contact information provided, for example if some workers do not have WhatsApp or a phone number is disconnected, Plaintiffs will also consider communicating notice via e-mail, direct Facebook message, written mail, local radio announcements, and posting notice at Defendant's worksite or employee housing.[5]

Courts routinely find that such methods of communication are necessary and appropriate in cases involving migrant, transient, or low-wage workers. *See e.g., Montelongo v. Meese*, 803 F.2d 1341, 1351-1352 (5th Cir. 1986) (explaining that notice to Rule 23 class of farmworkers by use of mail, radio announcements, and personal contact with class members was adequate because of the "mobile, semi-literate character of the class"); *Magana-Munoz v. W. Coast Berry Farms,*

---

[5] In FLSA collective actions, courts often order the employer defendant to post a copy of the court-authorized notice in a visible place at the worksite. *See, e.g. Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *5 (W.D. Tex. Apr. 16, 2015) (noting that posting notice in the workplace is a "simple and effective way of ensuring that notice reaches all of the putative class members currently employed by [the defendant]" and "not unduly burdensome."). However, based on Plaintiffs' experience, Defendant employs workers who fall within the definition of the proposed class only between late September through early January, meaning that a posting at Defendants workplace would not be an effective notice for a large portion of the requested notice period. However, Plaintiffs will reconsider this form of notice if it becomes apparent that it will be the most effective form of notice, based on existing contact information and the exact timing of any notice period authorized by the Court.

*LLC*, No. 5:20-CV-02087-EJD, 2020 WL 3869188, at *7 (N.D. Cal. July 9, 2020) (finding that various methods of notice, including via text, WhatsApp, and Facebook, should be considered "because mail notice may not be effective for all members of the putative collective, some of whom  are in rural Mexico."); *Peery v. Nixon Eng'g, LLC*, 2019 WL 5027126, at *6 (approving notice sent via text message where potential opt-in plaintiffs were "workers who disperse to non-centralized and remote worksite . . . where they spend long hours away from their home residences."); *Cardenas v. A.J. Piedmonte Agric. Dev., LLC*, No. 18-CV-881-EAW-MJR, 2018 WL 6177271, at *5 (W.D.N.Y. Nov. 27, 2018) (finding that because "plaintiff class are migrant and seasonal agricultural workers, that there is high employee turnover, and that several class members have already changed addresses," notice communicated "via first-class mail, text message, and e-mail" was appropriate.); *Mahrous v. LKM Enterprises, LLC*, No. 16-10141, 2017 WL 2730886, at *4 (E.D. La. June 26, 2017) (finding that "[a]ccess to telephone numbers [would] facilitate notice," where plaintiffs contended that text messages would be "the best form of notice because putative class members may have changed addresses"); *Yair Granados v. Hinojosa*, 219 F. Supp. 3d 582, 586-587 (W.D. Tex. 2016) (approving notice via mail, e-mail, Facebook, and publication by radio).

C.  <u>The Court Should Allow Opt-In Plaintiffs to Execute Consent Forms Electronically Within a Reasonable Time Period.</u>

Plaintiffs' counsel will bear the cost of issuing the notices and otherwise informing the Similarly Situated Workers of the pendency of the action. Plaintiffs propose that Similarly Situated Workers have at least six months from the date on which Defendant produces complete contact information to file their consent to sue forms. In this case, a six-month period is reasonable in light of the barriers to notifying workers about the existence of this lawsuit. Similarly Situated Workers are often away from home for long periods of time, both because they travel from their residence

in Mexico to the U.S. to work on temporary visas and because they may be long-haul truck drivers, which makes a longer than usual opt-in period necessary. Courts frequently grant extended opt-in periods in these circumstances. *See, e.g.*, *Cardenas v. A.J. Piedimonte Agric. Dev., LLC*, 2018 WL 6177271, at *6 (granting migrant opt-in plaintiffs "six months from the date notice is first distributed to file the forms with the Clerk of Court."); *Rodriguez v. RCO Reforesting, Inc.*, No. CV 2:16-2523 WBS CMK, 2017 WL 3421963, at *3 (E.D. Cal. Aug. 9, 2017) (granting six-month opt in period to Mexican H-2B forestry workers); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 943 (W.D. Ark. 2007) (ordering a six-month opt in period "[b]ecause the vast majority of potential opt-in plaintiffs are migrant workers who are away from home for long periods of time"); *Recinos-Recinos v. Express Forestry, Inc*., 233 F.R.D. 472 (E.D. La. 2006) (granting a 180-day opt-in period to H-2B migrant tree planters from Mexico); *Salinas-Rodriguez v. Alpha Servs., L.L.C.*, No. 3:05CV44WHBAGN, 2005 WL 3557178, at *4 (S.D. Miss. Dec. 27, 2005) (granting a 180-day opt in period to class of H-2B migrant workers from Mexico and Guatemala); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002) (providing for a nine-month opt-in period for migrant farmworkers, considering anticipated difficulties in locating potential opt-in plaintiffs).

With respect to returning consent forms to Plaintiffs' counsel for filing with the Court, Plaintiffs propose that opt-in plaintiffs be allowed to execute the consent forms electronically. *See, e.g., Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 WL 2088011, at *8 (S.D. Tex. May 4, 2018) ("[C]ourts routinely permit opt-in members in FLSA collective actions to execute their consent by means of electronic signature."); *Dyson v. Stuart Petroleum Testers, Inc.,* 308 F.R.D. 510, 517-518 (W.D. Tex. 2015) (permitting electronic signatures on consent forms and citing cases).

## CONCLUSION

For the foregoing reasons, this Court should (1) Grant Plaintiffs' Motion with respect to all current and former employees of Defendant who were employed by Defendant at any time during the last three years to drive trucks to transport harvested sugarcane within the state of Louisiana, including within the sugar processing mill operated by Sterling Sugars, LLC; (2) Order Defendant to provide to Plaintiffs within 14 days, in computer readable electronic format (such as a Microsoft Excel spreadsheet), the full names, all known physical addresses (U.S. and Mexican), telephone numbers (U.S., Mexican, and cellular), and e-mail addresses for each Similarly Situated Worker; (3) Order the parties to agree upon a Spanish-translation of Plaintiffs' proposed Notice, attached to Plaintiffs' Motion as Exhibit 1; (4) Authorize Plaintiffs to distribute the proposed Notice and consent to sue form, attached to Plaintiffs' Motion as Exhibit 1, to all Similarly Situated Workers through all practical and necessary means; and (5) allow Similarly Situated Workers to execute consent forms electronically to join the collective action within six months of the date by which Defendant produces to Plaintiffs the requested contact information. A proposed order is attached to Plaintiffs' Motion as Exhibit 2.

Respectfully submitted,

*/s/ Caitlin Berberich*
Caitlin Berberich, TN Bar No. 025780
*Trial Attorney
Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd, Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org

*/s/ Nicole Bucheri*
Nicole Bucheri, TX Bar No. 24095388
*Admitted Pro Hac Vice*

22

TEXAS RIOGRANDE LEGAL AID, INC.
1206 E. Van Buren St.
Brownsville, Texas 78520
Telephone: (956) 982-5552
Facsimile: (956)541-1410
nbucheri@trla.org

*/s/ Daniel Davis*
Daniel Davis, LA No. 30141
*Admitted to Practice in W.D. La.*
Estes Davis Law, LLC
4456 Bluebonnet Blvd., Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
dan@estesdavislaw.com

ATTORNEYS FOR PLAINTIFFS