# EXHIBIT 5

**U.S. Department of Labor**          Wage and Hour Division
                                      Washington, D.C. 20210



April 13, 2022


FIELD ASSISTANCE BULLETIN No. 2022-3


MEMORANDUM FOR:        Regional Administrators
                       District Directors
                       Investigators


FROM:                  Jessica Looman
                       Acting Administrator


SUBJECT:               Employment of H-2B workers in a Job Classification not Listed on
                       the TEC Application (Form ETA-9142B) in the H-2B Visa
                       Program


The employment of H-2B workers in a job classification not listed on the Application for
Temporary Employment Certification (TEC Application) ([Form ETA-9142B](#)) (an "unapproved
job classification") has violated the requirement that employers may not place H-2B workers in a
job opportunity not listed on the TEC Application (Form ETA-9142B).  The purpose of this
Field Assistance Bulletin (FAB) is to review the harms inflicted on the U.S. and H-2B workforce
by the employment of H-2B workers in an unapproved job classification and provide guidance
on the sanctions and remedies that the Wage and Hour Division (WHD) may implement to
address these harms.

**Background**

The failure to adhere to the job classifications listed in the TEC Application (Form ETA-9142B)
harms both H-2B and U.S. workers.  An employer that has inaccurately disclosed the terms of
the job opportunity, or failed to comply with the disclosed terms of the job opportunity, may
have misled H-2B workers about the nature of the job opportunity and has also deprived U.S.
workers of the opportunity to evaluate potential job opportunities.  Further, H-2B workers who
are employed in a job classification not listed on the TEC Application (Form ETA-9142B) may
be paid wage rates that are significantly less than the prevailing wage for the job being
performed, which can result in two distinct harms: (1) workers with H-2B visas (H-2B workers)
are paid less than the prevailing wage for the job they are actually performing; and (2) other
workers performing the same work as the underpaid H-2B workers have their wages undercut by
the employer's noncompliance with the H-2B provisions of the Immigration and Nationality Act
(H-2B visa program).

An employer applying to employ workers pursuant to the H-2B visa program must fully disclose
the terms and working conditions of the H-2B job opportunity to the U.S. Department of Labor
(DOL), U.S.-based job applicants, and workers applying for H-2B visas.  Among other items, the
employer must fully disclose the job duties and must attest that it will not employ workers in a

job opportunity not listed on the Application for Temporary Employment Certification (TEC Application) (Form ETA-9142B). *See* 20 CFR § 655.20(x) and 29 CFR § 503.16(x).[1] The employer's description of the job opportunity on various forms and disclosure documents affects the occupational classification (job classification) that DOL issues, which in turn determines the prevailing wage, and affects U.S. worker recruitment and disclosure accuracy.

WHD enforces certain labor protection provisions relating to the H-2B visa program. Specifically, WHD investigates employers to determine compliance with obligations under 8 U.S.C. 1184(c), INA Section 214(c), 20 CFR part 655 Subpart A, and 29 CFR part 503. *See* 29 CFR § 503.7. Upon finding a violation during an investigation, WHD may seek recovery of unpaid wages, the enforcement of the provisions of the job order, assessment of civil money penalties, and debarment from future participation in the H-2B visa program. *See* 29 CFR § 503.20.

**<u>Violations Resulting When H-2B Workers are Employed in an Unapproved Job Classification</u>**

An employer that employs H-2B workers in an unapproved job classification is in violation of the regulatory provisions at 20 CFR § 655.20(x), 29 CFR § 503.16(x), and the corresponding Attestation 11 on the TEC Application (<u>Form ETA-9142B Appendix B)</u>, which explicitly prohibits such action.

*Incorrect Disclosure on the TEC Application*

WHD's enforcement when employers improperly require H-2B workers to perform duties not listed on the TEC application is consistent with the job classification and prevailing wage determinations made by DOL's Employment and Training Administration's (ETA) Office of Foreign Labor Certification (OFLC) National Prevailing Wage Center (NPWC). An employer seeking to employ workers using the H-2B visa program must first request and receive a prevailing wage determination from the NPWC.[2] The employer applies for a prevailing wage determination using the Application for Prevailing Wage Determination (PWD) (<u>Form ETA-9141</u>) in which the employer must provide, among other items, a description of the job duties to be performed in sufficient detail to allow OFLC to identify the correct job classification. Importantly, the instructions in the PWD (Form ETA-9141) clarify that *all* job duties must be disclosed, as well as other pertinent information such as the industry and any equipment to be used.[3] The NPWC reviews this information and matches the duties listed on the PWD (Form

---

[1] A job opportunity is one or more employment openings that the employer is seeking to fill with H-2B workers if no U.S. workers are hired. *See* 20 CFR § 655.5 and 29 CFR § 503.4.

[2] DOL's Employment and Training Administration's (ETA) Office of Foreign Labor Certification (OFLC) is responsible for administering the certification process for employers who seek to participate in the H-2B visa program. This includes issuing prevailing wage determinations, examining the employer's representations and assurances (e.g., the terms and conditions of the job and the employer's need for foreign workers), and examining the employer's recruitment of U.S. workers. OFLC also conducts program integrity measures, such as post-certification audits of employer applications and supporting documentation.

[3] The instructions to the PWD (Form ETA-9141) for Section F.a.2 instruct the employer to "[d]escribe the job duties, in detail, to be performed by any worker filling the job opportunity. Specify the field(s) and/or

ETA-9141) to the definition and tasks section corresponding with the Occupational Information Network (O*NET) Standard Occupational Classification (SOC) occupation codes listed on the O*NET website.[4]  The NPWC then issues a SOC code, which corresponds with a specific prevailing wage determination, for use when applying for an H-2B temporary employment certification.[5]

If the job description entered on the PWD (Form ETA-9141) reflects duties that are not found within a single SOC code, the NPWC will view the employer's job opportunity as a combination of two (or more) distinct occupations.  The prevailing wage is the highest among all applicable SOCs.  For example, when an employer's job duties require a bellhop to perform bellhop duties and also park cars, which is not a normal occupational duty for a bellhop, the NPWC will view the job opportunity as the combination of two SOCs (bellhop and valet).  If the prevailing wage is $10 per hour for a bellhop and $15 per hour for a valet, the prevailing wage determination returned to the employer is $15 per hour for this combination of job duties.[6]

It is essential that employers accurately disclose all job duties in the PWD (Form ETA-9141).  An employer's provision of incomplete or inaccurate information to the NPWC may result in a job opportunity being classified as an incorrect job classification and an incorrect prevailing wage being issued.  The prevailing wage issued to the employer usually becomes the H-2B offered wage rate because the offered wage must equal or exceed the highest of the prevailing wage, or Federal, State, or local minimum wage, and must be paid during the entire period of employment.[7]  *See* 20 CFR § 655.20(a)(1) and 29 CFR § 503.16(a)(1).  The employer must disclose the offered wage rate on the TEC Application (Form ETA-9142B) and the job order.[8]

---

product(s)/industry(ies) involved, any equipment to be used, and pertinent working conditions.  The duties provided must be specific enough to be classified under a relevant Standard Occupational Classification (SOC) code pursuant to the O*NET publication at https://www.onetonline.org.  All job duties must be disclosed." *See* Form ETA-9141 Instructions (dol.gov).

[4] https://www.foreignlaborcert.doleta.gov/faqsanswers.cfm#q!854 (FAQs 14 and 15 under "Prevailing Wage (PERM, H-2B, H-1B, H-1B1, E-3, and CW-1)" and then under "H-2B 2015 Wage Final Rule").

[5] *Ibid.*

[6] https://www.foreignlaborcert.doleta.gov/faqsanswers.cfm#q!854 (FAQ 16 under "Prevailing Wage (PERM, H-2B, H-1B, H-1B1, E-3, and CW-1)" and then under "H-2B 2015 Wage Final Rule").[7] If the Federal, State, or local minimum wage is higher than the prevailing wage issued by OFLC, the Federal, State, or local minimum wage becomes the H-2B offered wage rate.  *See* 20 CFR § 655.20(a)(1) and 29 CFR § 503.16(a)(1).

[7] If the Federal, State, or local minimum wage is higher than the prevailing wage issued by OFLC, the Federal, State, or local minimum wage becomes the H-2B offered wage rate.  *See* 20 CFR § 655.20(a)(1) and 29 CFR § 503.16(a)(1).

[8] The job order is the document containing the materials terms and conditions of employment relating to wages, hours, working conditions, worksite, and other benefits, including obligations and assurances under 20 CFR § 655 Subpart A and 29 CFR § 503 that is posted between and among the State Workforce Agencies on their job clearance systems.  *See* 20 CFR § 655.5 and 29 CFR § 503.4.

Importantly, both the TEC Application (Form ETA-9142B) and the job order must disclose the same job duties as disclosed to OFLC on the PWD (Form ETA-9141).  Specifically, the instructions to the TEC Application (Form ETA-9142B) for Section F.a.4 instruct the applicant to "describe, in detail, the job duties to be performed by any working filing the job opportunity, including any equipment to be used, any supervisor responsibilities, and other pertinent work tasks.  The entry in this field must be the same as the job duties issued by the Department for the employer's job opportunity on the [prevailing wage determination] Form ETA-9141."  An employer who later places H-2B workers in an unapproved job classification thus has potentially misrepresented the job opportunity

Correct disclosure of the job opportunity to DOL and to H-2B and U.S. workers is essential. The paperwork that the employer files with OFLC and the State Workforce Agency – the TEC Application (Form ETA-9142B), the PWD (Form ETA-9141), and the job order – represents the employer's unique job opportunity, including the specific job duties listed by the employer and the job classification assigned by DOL. This information is used to recruit both H-2B workers and U.S. workers. DOL must also use this information to evaluate whether there are sufficient qualified U.S. workers available for the actual positions that the employer is seeking to fill with H-2B workers, and whether such workers' employment will adversely affect the employment of U.S. workers similarly employed.[9] *See* 8 U.S.C. 1101(a)(15)(H)(ii)(b); 20 CFR § 655.1(a).

The employment of H-2B workers in a job classification not listed on the TEC Application (Form ETA-9142B) is thus contrary to the requirements of the Immigration and Nationality Act; DOL has not evaluated whether there are sufficient qualified U.S. workers available for the job opportunity because the employer has provided inaccurate information or, after certification, has failed to employ workers to perform the job duties described in the TEC Application (Form ETA-9142B), the PWD (Form ETA-9141), and the job order.

*WHD's Enforcement of Violations*

In its investigations, WHD has found that the nature of these violations varies; sometimes an employer omitted or misstated an essential job duty on the PWD (Form ETA-9141), the TEC Application (Form ETA-9142B), and the job order. Other times, an employer never intended to employ the workers in any job duties it identified to either DOL or the workers, and instead submitted fictitious job duties in order to obtain a lower prevailing wage rate, or to avoid conducting the required recruitment. Both of these actions are a violation of the H-2B program. Consider the following examples:

> *Example 1:* An employer discloses on the PWD (Form ETA-9141) that the job opportunity is for brickmason helpers, with associated job duties listed as assisting journeyworker brickmasons, holding materials, cleaning tools, and cleaning worksites. The NPWC returns the SOC code 47-3011 for the job classification helpers – brickmasons, blockmasons, stonemasons, and tile and marble setters – and a prevailing wage of $14.83 per hour. The employer completes the TEC Application (Form ETA-9142B) and the job order with these same job duties and discloses that the job classification is brickmason helper with an offered wage rate of $14.83 per hour.

---

when it completed the PWD (Form ETA-9141), when it applied for the TEC Application (Form ETA-9142B), or when it recruited workers (the job order). It may have also failed to comply with the terms and conditions certified on the wage determination, the TEC Application (Form ETA-9142B), or the job order.

[9] The employer must submit the recruitment report to OFLC to show that it has conducted the required recruitment of U.S. workers and the results of such recruitment. The purpose is to show OFLC that there are not sufficient U.S. workers who are qualified and who will be available to perform the temporary services or labor for which an employer desires to hire U.S. workers. The contents of the recruitment report include items such as the name of each recruitment activity; the name and contact information for each worker who applied, the disposition of the application, and whether each worker accepted or declined the job offer; confirmation that former U.S. workers were contacted, if applicable, and the method of contact; and confirmation that the bargaining representative was contacted, if applicable. The employer must continue to update the recruitment report until 21 days before the employer's date of need listed on the TEC Application (Form ETA-9142B). *See* 20 CFR §§ 655.1(a)(1) and 655.48

4

However, the employer requires H-2B workers to work in laying and binding brick with mortar and other substances to construct and repair walls and other structures, in addition to cleaning tools and worksites at the end of the day.  The employer does not employ any journeyworker brickmasons, and the H-2B workers complete all brickmason work.  The SOC code for brickmasons and blockmasons is 47-2021, and the prevailing wage is $22.17 per hour.  **The employer has employed the H-2B workers in an unapproved job classification.  By doing so, the employer is underpaying the H-2B workers, is depressing wages for brickmasons in the United States, has not properly recruited for brickmasons in the United States, and has not accurately disclosed the terms of the job opportunity to H-2B workers.**

*Example 2:* An employer discloses on the PWD (Form ETA-9141) that the job opportunity is for lifeguards at a hotel, with the only job duty listed as monitoring pools to provide assistance and protection to participants.  The NPWC returns the SOC code 33-9092 for the job classification lifeguards, ski patrol, and other recreational protective service workers, and a prevailing wage of $8.38 per hour.  The employer completes the TEC Application (Form ETA-9142B) and the job order with these same job duties and job classification, and discloses an offered wage rate of $8.38 per hour.  When the H-2B workers arrive, they work four days per week in lifeguarding duties, and one day per week in maintaining the hotel's landscaping, including mowing, trimming, and sprinkler maintenance.  Landscaping duties are not associated with lifeguards and SOC code 33-9092; rather, these job duties are more accurately associated with landscaping and groundskeeping workers and SOC code 37-3011, the prevailing wage for which is $14.52 per hour.  **The employer has employed the H-2B workers in an unapproved job classification.  By doing so, the employer is underpaying the H-2B workers, is depressing wages for landscapers in the United States, has not properly recruited for landscaping and groundskeeping workers in the United States, and has not accurately disclosed the terms of the job opportunity to H-2B workers.**

*Impact on Workers' Wages*

As seen in the examples above, in addition to other violations, an employer that requires H-2B workers to perform work in an unapproved job classification may have also underpaid such workers.  If the NPWC issued a prevailing wage determination based on the job duties the employer disclosed on the PWD (Form ETA-9141), but would have issued a different prevailing wage determination had the employer disclosed all the job duties, then the employer has not paid the correct wage rate.  In both *Example 1* and *Example 2*, the H-2B workers were paid less than the required prevailing wage rate for the occupation actually performed, and the employer has failed to comply with the H-2B obligation to offer a wage that equals or exceeds the highest of the prevailing wage or Federal, State, or local minimum wage.  *See* 20 CFR § 655.20(a)(1) and 29 CFR § 503.16(a)(1).  Therefore, WHD will cite a violation and compute back wages for the difference between the wage paid and the correct prevailing wage for the job classification corresponding to the work actually performed.

In the event the prevailing wage for the work actually performed is less than the offered wage listed on the TEC Application (Form ETA-9142B) for the approved job classification, the

5

employer must still pay the wage listed on the TEC Application (Form ETA-9142B).  WHD cannot permit an employer to pay a rate below the offered wage rate certified on the TEC Application (Form ETA-9142B), even if employees work in a job classification with a lower prevailing wage rate.  In this situation, the employer certified to both employees and DOL that it would pay at least the certified rate, and workers accepted the job upon this rate being offered.  Additionally, employing H-2B workers in an unapproved job classification constitutes a violation even if the worker is paid the correct prevailing wage rate for the work actually performed (see more details in next subsection).

*Impact on U.S. Worker Recruitment*

Employing H-2B workers to perform work in a job classification not approved on the TEC Application (Form ETA-9142B) undermines DOL's labor certification process.  An employer that has employed H-2B workers in an unapproved job classification has not recruited U.S. applicants as required by 20 CFR §§ 655.40-.48.  Prior to employing H-2B workers, an employer must take steps to recruit U.S. workers to see if there are any U.S. workers who are qualified for the job and who are available to perform the work for which H-2B certification is being requested.  If the employer has not accurately disclosed the job duties, classification, and prevailing wage for these positions, it has not accurately tested the labor market for qualified, available U.S. applicants, because potential U.S. applicants are unaware of the true nature of the job opportunity and its corresponding prevailing wage.  The employer must recruit U.S. workers before hiring H-2B workers.  This recruitment includes, among other things, posting a job order with the State Workforce Agency, having the job order posted on OFLC's electronic job registry, engaging in any additional recruitment as required by the OFLC Certifying Officer, and hiring any qualified U.S. applicants for the job opportunity until 21 days before the date of need.  The employer's job order must, among other things, describe the job opportunity with sufficient information to apprise U.S. workers of the services or labor to be performed, including the duties and offered wage rate.  *See* 20 CFR § 655.18(b)(3).  If the employer has not accurately disclosed the job duties in the job order, the employer may have failed to conduct all required recruitment activities under 29 CFR § 503.16(s); and may have failed to comply with the continuing requirement to hire U.S. workers under 29 CFR § 503.16(t).  For instance, in both examples above, the employer may have found qualified and available U.S. workers to hire as brickmasons or landscapers had it accurately disclosed that it was seeking brickmasons instead of brickmason helpers or landscapers instead of lifeguards and disclosed the appropriate offered wage rate.

Employers should be aware that employment of H-2B workers in unapproved job classifications constitutes a violation even if the employer independently pays a higher wage, or if the job classification corresponds with a lower prevailing wage than the workers are paid.  Even if the violation does not result in back wages, the employer has not accurately recruited U.S. applicants for the job.  For instance, in *Example 1*, if the employer recruited for brickmason helpers at the offered wage rate of $14.83 per hour, but then employed H-2B workers in brickmason duties and actually paid $22.17 per hour (the appropriate prevailing wage for the job classification in *Example 1*), the employer is still in violation.  In *Example* 1, the employer has not complied with its obligation to recruit brickmasons in the United States at the rate of $22.17 per hour, and there may have been ready and available U.S. workers had the employer recruited workers using the correct job classification.

6

*Disclosure of Working Conditions to H-2B Workers*

Finally, an employer that has inaccurately disclosed the job duties on the job order has also failed to accurately disclose the terms and working conditions to H-2B workers, which employers are required to do no later than at the time the applicant applies for the H-2B visa.  *See* 20 CFR § 655.20(l) and 29 CFR § 503.16(l).  For instance, in *Example 1* and *Example 2*, a worker with an H-2B visa may have chosen not to accept the job had they known that the work would involve brickmason duties instead of brickmason helper duties, or landscaping duties in addition to lifeguarding duties.

Accurate disclosure of the job opportunity to H-2B workers is an essential worker protection. Nonimmigrant workers must have all the facts about the job opportunity in writing in a language they understand no later than the time they apply for the visa.  This allows workers to make a meaningful, informed decision as to whether they want this particular job that requires them to leave their homes and families to travel to another country.  Failure to accurately disclose the job opportunity to H-2B workers increases worker vulnerability as it creates an information deficit relative to the employer, thus exacerbating existing power imbalances.

**Back Wages for Violations Resulting from Employment in Unapproved Job Classifications**

In its investigations, WHD gathers and reviews all relevant information about the job duties performed under H-2B certifications.  This information may include interviews with workers, interviews with the employer, an analysis of job classification ratios (e.g., how many brickmasons are employed compared to brickmason helpers or apprentices), contracts, and advertising or promotional materials.  WHD compares the job duties performed by H-2B workers to the job duties that were disclosed on the PWD (Form ETA-9141), the TEC Application (Form ETA-9142B), and the job order.  If the job duties performed differ from those disclosed, WHD will, when appropriate, cite the violation, assess a civil money penalty, and compute back wages for the worker when warranted.

In general, back wages are owed to H-2B workers if the prevailing wage for the job classification performed exceeds the wage paid to the workers.[10]  To determine the appropriate prevailing wage for the job duties during an investigation, WHD will follow the same established policies used by the NPWC to issue prevailing wage determinations in the first instance.  Specifically, WHD will review the job duties performed and match them to the definition and tasks section corresponding with O*NET SOC occupation codes listed on the O*NET website.[11]  WHD will

---

[10] Additionally, workers who perform work within the proper job classification but are paid less than the prevailing wage listed on the TEC Application (Form ETA-9142B), are also owed back wages at the prevailing wage rate listed on the TEC Application.  *See* 20 CFR 655.20(a) and 29 CFR 503.16(a).

[11] The definition of the occupation is found at the top of O*NET online page, right below the SOC code and job title. The tasks section is the first section listed on the report Summary or Details.  Consistent with OFLC policy, WHD will not review any aspects of the O*NET report other than the definition and tasks when determining the corresponding SOC occupation code.  *See* https://www.foreignlaborcert.doleta.gov/faqsanswers.cfm#q!854 (FAQs 14 under "Prevailing Wage (PERM, H-2B, H-1B, H-1B1, E-3, and CW-1)" and then under "H-2B 2015 Wage Final Rule").

determine the most appropriate SOC code based on the actual work performed.  The SOC occupation code will correspond with a specific prevailing wage for back wage purposes.

If the job duties performed are not found within a single SOC, WHD will view the employer's job opportunity as a combination of two (or more) distinct occupations, and consistent with NPWC policy, the prevailing wage is the highest among all applicable SOCs.  **In general, WHD will compute back wages at the highest applicable prevailing wage for all hours worked within the work contract period, even if the worker only worked part time in the unapproved job classification**.  An employer that accurately discloses to OFLC on the PWD (Form ETA-9141) the job duties for a job opportunity that is a combination of at least two distinct occupations would be responsible for paying the higher prevailing wage for the entirety of the work contract period.  Therefore, WHD will generally hold an employer that has failed to disclose the job duties to the same standard, helping ensure uniform compliance.  WHD will consider all appropriate facts and circumstances when determining back wage liability in an investigative context.

> *Example 1:* WHD will compute back wages for all hours worked at the higher brickmason and blockmason rate of $22.17 per hour, even if some of the job duties, such as cleaning the worksite and cleaning tools, may also fall under the job classification helpers – brickmasons, blockmasons, stonemasons, and tile and marble setters.  This is consistent with the NPWC's approach because, if the employer accurately disclosed on the PWD (Form ETA-9141) that workers would be engaged in laying and binding brick with mortar and other substances to construct and repair walls and other structures, the NPWC would have issued the higher brickmason and blockmason prevailing wage to be paid during the entire period of the TEC Application (Form ETA-9142B).

> *Example 2:* Even though the workers only worked one day per week in landscaping, WHD will compute back wages for all hours worked, including time worked as a lifeguard, at the higher landscaping rate of $14.52 per hour.  This is consistent with the NPWC's approach because, if the employer accurately disclosed on the PWD (Form ETA-9141) that workers would be engaged in both lifeguarding and landscaping duties, the NPWC would have issued the higher landscaping prevailing wage to be paid during the entire period of the TEC Application (Form ETA-9142B).

## **Additional Information**

Please address any questions regarding this FAB to the Division of Immigration, Farm Labor, and Trade in the National Office.  Please visit the Wage and Hour Division website for the H-2B visa program at https://www.dol.gov/agencies/whd/immigration/h2b and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).