**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **ARTEMIO ALVAREZ BARRON, ET AL., AND OTHERS SIMILARLY SITUATED,** | * | **CIVIL ACTION NO. 6:21-CV-03741** |
| **PLAINTIFFS** | * | **JUDGE: ROBERT R. SUMMERHAYS** |
| **VERSUS** | * | **MAGISTRATE JUDGE: DAVID J. AYO** |
| **STERLING SUGARS SALES CORPORATION** | * | |
| **DEFENDANT.** | * | |

**DEFENDANT STERLING SUGARS SALES CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Sterling Sugars Sales Corporation ("Sterling" or "Defendant"), and pursuant to Federal Rule of Civil Procedure 56, submits this Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment [ECF No. 103], and would show the following:

# **TABLE OF CONTENTS**


TABLE OF CONTENTS…………………………………………………………………… ii

TABLE OF AUTHORITIES …………………………………………………………..iii

INTRODUCTION……………………………………………………………………………1

LEGAL STANDARD……………………………………………………………………..2

FACTUAL BACKGROUND…………………………………………………………...3

A. Overview…………………………………………………………………………….3

B. Sterling's Corporate Structure and Business Operations……………………………4

C. Background of the H-2A Migrant Guestworker Program…………………………...5

D. Sterling's Participation in the H-2A Program……………………………………….6

ARGUMENT & AUTHORITIES………………………………………………………….8

A. Plaintiffs' motion is premature…………………………………………………...8

B. There are substantial factual disputes as to whether Plaintiffs performed agricultural work……………………………………………………………………..10

C. Plaintiffs have not satisfied their summary judgment burden of establishing willful FLSA violations…………………………………………………………13

D. Plaintiffs have not met their summary judgment burden on their Louisiana Wage Pay Act claims………………………………………………………………15

E. Plaintiffs are not entitled to summary judgment on their breach of contract claims…………………………………………………………………………….15

F. Plaintiffs have not met their summary judgment burden regarding their unjust enrichment claims……………………………………………………………..17

CONCLUSION……………………………………………………………………………18

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)………………………………………………………………. 3

*Arriaga v. Florida Pacific Farms, LLC*,
305 F.3d 1228 (11th Cir. 2002)……………………………………………………16

*Babin v. Plaquemines Parish*,
421 F. Supp. 3d 391 (E.D. La. 2019)………………………………………………15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)…………………………………………………………………2, 3

*Dacar v. Saybolt, L.P.*,
914 F.3d 917 (5th Cir. 2018)………………………………………………………13

*Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*,
376 F.3d 399 (5th Cir. 2004)………………………………………………………17

*Edwards v. Conforto*,
636 So.2d 901 (La. 1993)………………………………………………………… 17

*Everglades Harvesting and Hauling v. Scalia*,
427 F. Supp.3d 101 (D.C. Cir. 2019)…………………………………………..11, 12

*Ferrara Fire Apparatus, Inc. v. JLG Inds., Inc.*,
581 Fed. Appx. 440 (5th Cir. 2014)……………………………………………… 17

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (5th Cir. 1986)…………………………………………………….. 3

*Hamilton v. Business Partners, Inc.*,
No. 96-2366, 1997 WL 631002 (E.D. La. Oct. 8, 1997)………………………………...3

*Hercules Machinery Corp. v. McElwee Bros., Inc.*,
No. 01-3651, 2002 WL 31015598 (E.D. La. Sept. 2, 2002)…………………………...16

*Johnson v. Big Lots Stores, Inc.*,
604 F. Supp. 2d 903 (E.D. La. 2009)………………………………………13, 15

*Leger v. Offshore Staffing Servcs. Of Acadiana, LLC*,
No. 6:11-cv-01539, 2013 WL 504922 (W.D. La. Feb. 8, 2013)……………………..3, 8

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988)……………………………………………………………13

*MCP Int'l, LLC v. Formula Four Beverages, Inc.*,
No. 20-3440-WBV-DMD, 2022 WL 782752 (E.D. La. Mar. 15, 2022)………………18

*Mireles v. Frio Foods, Inc.*,
899 F.2d 1407 (5th Cir. 1990)………………………………………………………13

*Raby v. Livingston*,
600 F.3d 552 (5th Cir. 2010)…………………………………………………………8

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*,
765 F.2d 1334 (5th Cir. 1985)………………………………………………………16

*Scallan v. Mark Petroleum Corp.*,
303 So. 2d 498 (La. Ct. App. 2d Cir. 1974)…………………………………………16

*Stegall v. Orr Motors of Little Rock, Inc.*,
121 So. 3d 684 (La. Ct. App. 2d Cir. 2013)…………………………………………16

*U.S. v. Cytogel Pharma, LLC*,
No. 20-3440-WBV-DMD, 2018 WL 5297753 (E.D. La. Oct. 15, 2018)……………...18

*1436 Jackson Joint Venture v. World Constr. Co., Inc.*,
499 So.2d 426 (La. App. 4th Cir. 1986)……………………………………………..16

**STATUTES**

8 U.S.C. § 1101(a)(15)(H)(ii)(a)…………………………………………………….. 5

8 U.S.C. § 1188(a)(1)(A) and (B)……………………………………………………….6

29 U.S.C. § 203(f)……………………………………………………………………...10

29 U.S.C. § 255(a)…………………………………………………………………….. 13

**REGULATIONS**

20 C.F.R. § 655.101(b)………………………………………………………………...16

20 C.F.R. § 655.120……………………………………………………………………. 6

20 C.F.R. § 655.121…………………………………………………………………….17

20 C.F.R. § 655.181…………………………………………………………………….. 2

29 C.F.R. § 780.103 .......... 10

29 C.F.R. § 780.105 .......... 10, 11

**OTHER AUTHORITIES**

*Modification of terms during employment*,
La. Prac. Employment Law § 3:24 .......... 16

## I. INTRODUCTION

Plaintiffs prematurely filed their motion for partial summary judgment with nearly three months remaining in discovery and while also disregarding Sterling's requests that they make themselves available for deposition for several months. Sterling has requested that Plaintiffs provide available dates for their depositions since December 2022. Rather than making any meaningful effort to comply with Sterling's reasonable requests, Plaintiffs have instead cited logistical hurdles to avoid appearing for their depositions based on the fact that many of them reside outside of the United States. To date, none of the thirty-one (31) Plaintiffs have provided their location to enable Sterling to facilitate their depositions, nor have they identified a single date or range of dates for which any of them would be available for deposition. Plaintiffs have substantially interfered with Sterling's right to secure their testimony, and as a result, Plaintiffs' motion is not ripe for adjudication at this stage.

Notwithstanding the prematurity of Plaintiffs' motion, Plaintiffs' motion fails on substantive grounds. Contrary to Plaintiffs' assertions, there remains a legitimate factual dispute as to whether (or which) Plaintiffs engaged in "agricultural work" as defined in the Fair Labor Standards Act and/or the Internal Revenue Code, which would ultimately determine whether Sterling is exempt from paying Plaintiffs overtime under the FLSA's agricultural exemption. In light of the substantial factual disputes on this threshold question, summary judgment in Plaintiffs' favor is likewise improper on Plaintiffs' breach of contract, unjust enrichment, and Louisiana Fair Wage Pay Act claims, as each of these claims is premised on Plaintiffs' position that they are owed allegedly unpaid overtime.

As for Plaintiffs' claims for willful FLSA violations, Plaintiffs have fallen far short of carrying their summary judgment burden of establishing the absence of a genuine factual dispute

that Sterling acted with "reckless disregard." Considering Plaintiffs have not fulfilled their summary judgment burden on their ordinary FLSA claims, it follows that Plaintiffs have not satisfied the heightened burden of demonstrating that no genuine factual dispute exists with respect to their claims for willful FLSA violations. Conversely, Sterling has presented sufficient evidence to support their good-faith defense in response to Plaintiffs' claims for liquidated damages and attorneys' fees under the FLSA. Thus, Plaintiffs' summary judgment request for liquidated damages and attorney's fees is a non-starter.

Finally, Plaintiffs cannot meet their summary judgment burden on their breach of contract and unjust enrichment claims because Plaintiffs' job clearance orders serve as valid, binding contracts,[1] and Plaintiffs have presented no evidence to demonstrate that Sterling deviated from the temporary labor certifications in any respect. Similarly, Plaintiffs cannot obtain summary judgment on their unjust enrichment claims because they have failed to establish that no enforceable contract existed with Sterling.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact that the moving party is entitled to judgment as a matter of law."[2] When, as here, a plaintiff moves for summary

[1] In urging the Court to award Plaintiffs the prevailing wage rate for alleged non-agricultural work, Plaintiffs effectively seek revocation of the temporary labor certifications approved by the Department of Labor, which authorized Plaintiffs to work for Sterling from 2018 to 2021. However, a threshold issue exists as to whether this Court has (or should exercise) jurisdiction to award such a remedy to Plaintiffs under separation of powers principles because there is an administrative regulatory scheme that governs such relief, and that scheme has neither been utilized in any respect nor adequately exhausted by the Department of Labor with respect to the temporary labor certifications governing Plaintiffs' seasonal employment with Sterling during the years in question. *See* 20 C.F.R. 655.181 ("Revocation") (outlining procedure to revoke a temporary labor certification obtained by means of fraud or misrepresentation).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

judgment, the plaintiff bears the burden of proof, which requires the plaintiff to "establish beyond peradventure all the essential elements of the claim[s]…to warrant judgment in [the plaintiff's] favor.[3] "In other words, when a plaintiff moves for summary judgment on claims for relief, it must establish that no reasonable trier of fact could find other than for the plaintiff."[4]

Upon review of a summary judgment motion, "the non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."[5] Movants "are not entitled to summary judgment based solely on selected pieces of evidence before a meaningful opportunity for discovery has been afforded."[6] Critically, "[s]ummary judgment is not appropriate until after the non-movant has had a fair opportunity for discovery of information essential to its opposition to movant's motion."[7]

## III. FACTUAL BACKGROUND[8]

### A. Overview

The thirty-one (31) Plaintiffs in this collective action are foreign laborers who the federal government authorized Sterling to employ as H-2A guest laborers between 2018 and 2021.[9] Plaintiffs each claim that instead of primarily performing duties as Agricultural Equipment Operators, they were recruited to drive heavy trucks and were told they would need a special license to drive these commercial vehicles. After applying for H-2A visas to work for Sterling

---

[3] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

[4] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[5] *Celotex*, 477 U.S. at 322.

[6] *Hamilton v. Business Partners, Inc.*, No. 96-2366, 1997 WL 631002 (E.D. La. Oct. 8, 1997).

[7] *Leger v. Offshore Staffing Servcs. Of Acadiana, LLC*, No. 6:11-cv-01539, 2013 WL 504922, at *2 (W.D. La. Feb. 8, 2013) (denying plaintiffs' motion for summary judgment as premature in worker's compensation action where defendant was denied opportunity to, *inter alia*, depose key witnesses and to obtain discovery regarding the nature of the plaintiff's work) (citing 477 U.S. at 322) (emphasis added)).

[8] Pursuant to Local Rule 56.2, Sterling has attached its "Statement of Disputed Material Facts" as an exhibit to this oppositional response. *See* Ex. "A."

[9] ECF No. 22.

pursuant to the government's authorization, Plaintiffs now claim that Sterling violated of the Fair Labor Standards Act ("FLSA"), breached its contract with plaintiffs, violated the Louisiana Wage Payment Act, and unjustly enriched itself when employing Plaintiffs in accordance with the authorizations the government had issued to Sterling for years.[10] Plaintiffs also seek attorneys' fees and liquidated damages under the FLSA.[11] In this regard, Plaintiffs argue Sterling deliberately and unlawfully employed Plaintiffs as H-2A workers instead of as H-2B workers in an effort to avoid paying Plaintiffs overtime under the FLSA.

Plaintiffs completed the corporate deposition of Sterling pursuant to Federal Rule of Civil Procedure 30(b)(6) between February 8, 2023 and February 10, 2023. The following individuals testified on Sterling's behalf: Randy Romero, General Manager; Tim Soileau, Office Manager; and Desiree Lange, Administrative Assistant. Plaintiffs also deposed third-party fact witness, Great Labor, LLC ("Great Labor"), pursuant to Rule 30(b)(6), and Plaintiffs took a third-party fact witness deposition of Melchor Maya Soto after Sterling's deposition concluded.

**B. Sterling's Corporate Structure and Business Operations**

Sterling is an agricultural business that operates a sugarcane processing mill in Franklin, Louisiana. Sterling is owned by Sterling Sugars, LLC. Apart from management, Sterling Sugars, LLC's employees include combine operators, tractor drivers, mechanics, sugar boilers, welders, maintenance workers, and truck drivers.[12]

Randall Romero is the Chief Executive Officer of Sterling and has served in that role since 2013.[13] In this capacity, Romero supervises Sterling's President and General Manager, Rivers

---

[10] *Id.*
[11] *Id.*
[12] D. Lange Dep., *attached hereto* as Ex. "B", at 28-29; Soileau Dep., *attached hereto* as Ex. "C", at 15:19-24.
[13] R. Romero Dep., Vol. I, *attached hereto* as Ex. "D", at 20:21-21:13.

Patout, who has served as General Manager for approximately 20 years and is responsible for overseeing daily mill operations and the growers Sterling contracts with.[14] Romero visits Sterling's sugarcane mill on an approximate monthly basis, appearing usually for "a couple of hours" at a time.[15] Romero has worked in the sugarcane industry since 1989.[16]

Tim Soileau is the Office Manager for Sterling Sugars, LLC and has served in that role for approximately 20 years.[17] Soileau is responsible for Sterling's purchasing and labor management, which includes supervising Sterling's H-2A workers.[18] Soileau works at Sterling's milling facility in Franklin, Louisiana on a daily basis.

Desiree Lange is the Administrative Assistant at Sterling Sugars, LLC.[19] Her primary job duties include managing payroll processing, managing finances, responding to phone calls, and assisting with day-to-day administrative needs.[20] She has worked for Sterling since 1983 and has served as Administrative Assistant since 1988.[21]

**C. Background of the H-2A Migrant Guestworker Program**

In 1986, Congress established a migrant guestworker visa program to enable U.S. employers to hire workers "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform agricultural labor or services... of temporary or seasonal nature."[22] The H-2A guestworker labor program is

[14] Rivers Patout is responsible for reviewing and approving Sterling's H-2A temporary labor certification applications.
[15] Ex. "D", Romero Dep. at 22:2-10.
[16] *Id.* at 22:20-23:1.
[17] Ex. "C", Soileau Dep. at 13:7-14:14.
[18] *Id.* at 13:10-14:10.
[19] Ex. "B", D. Lange Dep. at 13:1.
[20] *Id.* at 13:18-25.
[21] *Id.* at 13:6-17.
[22] 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (the "H-2A" program).

administered and regulated by the United States Department of Labor ("DOL"). The program certifies agricultural employers to hire foreign workers on a temporary basis.

For an employer to participate in the H-2A program, the Secretary of Labor must certify that (1) "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition" and (2) "the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed."[23] The purpose of this requirement is to prevent wage disparities between American laborers and foreign workers who perform similar work in the same geographic regions.

The DOL relies on what is known as the "Adverse Effect Wage Rate" ("AEWR") to establish a minimum wage for H-2A visa workers and U.S. workers performing similar work. H-2A employers are required to pay the highest of the AEWR, any collectively bargained wage rate, the state or federal minimum wage, or the state prevailing wage for that crop or occupation.[24] To provide a standardized framework for analyzing and setting wages for specific job duties across various industries, the DOL assigns "Standard Occupational Classification" (SOC) codes. At all times relevant to this lawsuit, the AEWR for sugarcane haulers was governed by the "Agricultural Equipment Operators" SOC.

**D. Sterling's Participation in the H-2A Program**

In 2018, amid a nationwide shortage of American transportation workers, Sterling began to participate in the Department of Labor's H-2A foreign migrant guestworker visa program to support its sugarcane hauling and harvesting operations.[25] Since then, Sterling has contracted with

---

[23] 8 U.S.C. § 1188(a)(1)(A) and (B).
[24] 20 C.F.R. § 655.120.
[25] R. Patout Dep., *attached hereto* as Ex. "E", at 78:23-79:9.

sugarcane growers to lease land, owned by Sterling, to sugarcane growers and to provide the growers with laborers to harvest sugarcane and haul it to Sterling's sugarcane mill in Franklin, Louisiana.[26] To this end, Sterling has employed seasonal migrant guestworkers to harvest sugarcane and haul it to its mill processing facility in Franklin, Louisiana since 2018.

Sterling's sugarcane harvesting operations take place during the harvest season, which typically begins in the third to last week of each September and continues through the middle of January.[27] Because sugarcane must be harvested and delivered to Sterling's mill-site within 24 hours to avoid bacterial infections, Sterling's H-2A workers, including Plaintiffs, are often required to contemporaneously perform hauling and harvesting tasks.[28] The H-2A workers Sterling employs are responsible for operating combines, tractor-trailers, dump carts, and excavators to harvest, cut, load, unload, and haul sugarcane to its mill-site in Franklin, Louisiana.[29]

Sterling contracts with Great Labor, LLC ("Great Labor") to recruit and hire H-2A workers. Great Labor is owned by John Dees. Great Labor employs Melchor Maya Soto and Jose Santos Maldonado as recruiters. Soto and Maldonado are responsible for recruiting, interviewing, hiring, and transporting H-2A workers to work for agricultural employers like Sterling. Soto testified during his deposition that he typically communicates with H-2A workers during the interview and onboarding process using the WhatsApp cell phone application.[30]

---

[26] Ex. "D", R. Romero Dep., Vol. I, at 51:9-53:12.

[27] *Id.* at 24-25; Ex. "E", R. Patout Dep. at 72.

[28] Ex. "E", R. Patout Dep. at 72:20-74:7.

[29] Ex. "D", R. Romero Dep., Vol. I, at 43:17-44:5 ("The harvesting service would include the combine operators. Operating combines. The tractor drivers. Pulling the high-dump carts. It would be the mechanics and the crew leader to maintain the equipment. It would be excavators to basically smooth out the load in the trailer – into the cane trailer as it's brought up to the loading site. It's dumped into the[…]cane trailer and basically it's topped off and […] smooth[ed] out to be able to deliver it to the mill. That's what the harvesting would entail.").

[30] M. Maya Soto Dep., *attached hereto* as Ex. "F", at 34:19-22, 39:3-9, 63:7-15.

In its temporary labor certification applications, Sterling specified that the H-2A workers' job duties would include cutting leaves from sugarcane, loading sugarcane onto wagons and tractor-trailers, repairing and maintaining hauling equipment, and hauling sugarcane. Sterling has not required any of its H-2A laborers, including Plaintiffs, to obtain a commercial driver's license, as would be necessary for H-2A laborers assigned to the Heavy Truck Drivers SOC.[31] Sterling's H-2A workers are, however, required to obtain a heavy equipment operator's license during the harvest season.[32]

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiffs' motion is premature.

Plaintiffs' motion for summary judgment should be denied because Sterling has not had the opportunity to depose a single Plaintiff. Under Rule 56(d), district courts are authorized to defer consideration of a motion for summary judgment and/or allow additional time for discovery where, as here, the non-movant is denied the opportunity to obtain discovery of essential facts necessary to oppose summary judgment.[33]

> [T]o obtain a Rule 56(d) continuance in order to conduct further discovery prior to a ruling on a motion for summary judgment, the nonmovant must essentially make three showings: (1) a description of the particular discovery the movant intends to seek; (2) an explanation showing how that discovery would preclude the entry of summary judgment; and (3) a statement justifying why the discovery had not been or could not have been obtained earlier.[34]

Here, the crux of Plaintiffs' lawsuit is premised on their allegation that they were denied overtime pay and the prevailing wage rate for driving heavy trucks because they did not perform agricultural labor or services. Conversely, Sterling has defended this allegation by offering sworn

---

[31] Ex. "E", R. Patout Dep. at 194:3-10; Great Labor Dep. (via John Dees), *attached hereto* as Ex. "G", at 76:2-11.

[32] Ex. "E", R. Patout Dep. at 194:3-10; Ex. "G", Great Labor Dep. (via John Dees) at 76:2-11.

[33] Fed. R. Civ. P. 56(d).

[34] *Leger*, 2013 WL 504922, at *1 (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

testimony to show that Plaintiffs engaged in agricultural work as defined by the FLSA and the Internal Revenue Code.[35] Plaintiffs' deposition testimony is necessary for Sterling to evaluate the specific day-to-day job duties performed by each Plaintiff during their employment with Sterling. The self-serving declarations attached as exhibits to Plaintiffs' motion are not credible substitutes for live, sworn testimony. At a minimum, Sterling should be able to question Plaintiffs about the contents of their declarations.

Plaintiffs' counsel has advised that several Plaintiffs have been in the process of securing H-2A employment in the United States and that as many as seventeen (17) Plaintiffs' locations could change through the summer of 2023. Tellingly, Plaintiffs' counsel, to date, have not identified *any* specific Plaintiffs who are available for depositions, their locations, or when they are available, despite the fact that Sterling has requested this information since as early as December 2022.[36]

As Plaintiffs have consistently acknowledged, there are many logistical considerations in conducting Plaintiffs' depositions, which include securing court reporters and translators, making travel arrangements to appear in-person, ensuring reliable internet and technological connectivity, and coordinating remote depositions for any remaining Plaintiffs as necessary. To mitigate the logistical challenges of coordinating Plaintiffs' depositions, Sterling has offered to depose Plaintiffs in any major hub in Mexico and to conduct remote depositions for any Plaintiffs who may not be within reasonable commuting distance of such major hubs.

---

[35] Ex. "D", R. Romero Dep., Vol. I, at 43:17-44:5; Ex. "E", R. Patout Dep. at 169:2-25; Ex. "C", Soileau Dep. at 63:19-64:12.

[36] In fact, further illustrating the prematurity of Plaintiffs' motion, Plaintiffs' counsel recently contacted undersigned counsel on August 11, 2023 (several weeks after Plaintiffs filed their motion for partial summary judgment) seeking to depose third-party fact witness Jose Santos Maldonado, presumably to elicit testimony in support of the claims they seek summary judgment on.

Because Plaintiffs' motion is premature, Sterling respectfully requests that the Court defer its ruling on the issue of whether Plaintiffs engaged in agricultural work until Sterling has had an opportunity to depose the Plaintiffs.

**B. There are substantial factual disputes as to whether Plaintiffs performed agricultural labor.**

Plaintiffs have introduced no evidence to foreclose the existence of a factual dispute as to whether (and which) Plaintiffs performed primary or secondary agriculture. Pursuant to 29 C.F.R. § 780.103, which is the DOL's "official interpretive bulletin . . . with respect to the meaning and application of sections 3(f), 13(a)(6), and 13(b)(12) [of the FLSA]," the term "Agriculture" includes the:

> Cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . and any practices . . . performed by a farmer or on a farm <u>as incident to or in conjunction</u> with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.[37]

"[This] definition has two distinct branches. One has relation to the primary meaning of agriculture; the other gives to the term a somewhat broader secondary meaning for purposes of the Act."[38] This broader, secondary meaning "includes any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations."[39]

> Agriculture includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities ..., the raising of livestock ... and any practices ... *performed by a farmer or on a farm as an incident to or in conjunction with such farming operations,* including preparation for market, delivery to storage or to market, or to carriers for transportation to market.[40]

---

[37] 29 C.F.R. § 780.103 (emphasis added).
[38] 29 C.F.R. § 780.105.
[39] *Id.*
[40] 29 U.S.C. § 203(f).

When asked during Sterling's corporate deposition about how Sterling confirmed that the job duties performed by Plaintiffs as set forth in the H-2A workers' clearance orders were truly agricultural in nature, Rivers Patout testified that Sterling would send Tim Soileau and Jaime Robertson[41] to observe the harvesting operations.[42] Patout further testified that the growers Sterling contracted with would often provide reports to Sterling regarding the H-2A workers' performance:

> Q: How do the growers provide those reports to you?
>
> A. They would pick up the phone and call.
>
> Q: And what would be in those reports?
>
> A: They would say, [']Look, your guy needs to change the blades on the harvester. He needs to clean my cane better. Pick up the chopper blade on the bottom, it's picking up too much soil. They['re] leaving too much [*sic*] scraps in the field. The cane is not clean.[']<sup></sup>[43]

Construing this testimony in a light most favorable to Sterling, the Court can reasonably infer that the duties Patout described (*i.e.*, cutting and cleaning sugarcane) were performed "on a farm as an incident to and in conjunction with…farming operations."[44] Further, Soileau testified that loading the sugarcane typically lasts thirty (30) to forty (40) minutes at a time, but equipment breakdowns and other factors could potentially extend the amount of time it takes an H-2A worker to load the cane.[45]

In *Everglades Harvesting and Hauling, Inc. v. Scalia*, the District of Columbia Circuit Court of Appeals determined that an H-2A worker's performance of nonagricultural duties does

---

[41] Randall Romero testified that Jaime Robertson works for Sterling Sugars, LLC as an assistant to Tim Soileau, a role in which he works closely with the growers Sterling contracts with. *See* R. Romero Dep., Vol. I, at 59:17-23.

[42] Ex. "E", R. Patout Dep. at 169:2-12.

[43] *Id.* at 169:13-25.

[44] 29 C.F.R. § 780.105.

[45] Soileau Dep. at 35:21-36:1.

not necessarily preclude the application of the agricultural exemption to the FLSA when the H-2A worker's agricultural duties predominate.[46] In this case, Plaintiffs were responsible for cutting, harvesting, and hauling sugar cane from farms owned by growers that Sterling leased land and provided labor to. The question of whether Plaintiffs' duties were "incident to or in conjunction with" those growers' farming operations ultimately depends on the amount of time Plaintiffs spent performing agricultural duties on those farms in proportion to their non-agricultural hauling duties.

Sterling's H-2A workers perform combined harvesting and hauling duties that are inextricably linked. Rivers Patout elaborated on the contemporaneous nature of Sterling's harvesting and hauling operations as follows:

> Q: The harvesting season is the same as the hauling of the sugar cane from farm to mill?
>
> A: Yes.
>
> […]
>
> It's very time-consuming and it's one in the same. I mean, you're harvesting and you have to – You're harvesting. You're down every row of cane with a combine harvester. Cleaning the cane. From the combine harvester, it goes into a cart which is pulled on a tractor. And then from the tractor cart, it goes to the loading site.
>
> It's all on the farm. And then it goes into a truck. You can't harvest this cane and just let it sit like you can the other commodities, such as soybeans, cotton. […]
>
> Sugar cane is a perishable crop. As we just went through with this freeze, you know, we lost several pounds of sugar, per the cane. We went down probably 20 pounds each day for 23 days after the storm – after the freeze. The sugar content ratchets down because it was killed due to cold weather.
>
> You are on time constraints to get this cane. Ideally, the cane should be harvested and pressed within 24-hours. If not, you get degradation and bacterial infection.[47]

---

[46] *Everglades Harvesting and Hauling v. Scalia*, 427 F. Supp.3d 101 (D.C. Cir. 2019) (H-2A laborers engaged in secondary agriculture where 60% of the laborers' workweek hours took place on sugarcane farm property and 40% was spent hauling sugarcane to other locations).

[47] Ex. "E", R. Patout Dep. at 72:20-74:7.

For this reason, and as a matter of practicality, Sterling does not maintain records of the specific length of time that its workers spend performing hauling and harvesting duties, respectively.[48] This critical fact underscores the fundamental necessity of allowing Sterling to question each of the thirty-one (31) Plaintiffs under oath regarding their daily job duties and the length of time Plaintiffs spent performing those respective duties.

### C. Plaintiffs have not satisfied their summary judgment burden of establishing willful FLSA violations.

Plaintiffs have fallen far short of meeting their summary judgment burden on their claim for willful FLSA violations.[49] When asserting a claim for willful FLSA violations, "Plaintiffs bear the burden of establishing a defendant's willfulness."[50] "A willful violation occurs when the 'employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'"[51] "The Supreme Court explicitly rejected a standard that would require merely 'an awareness of the possible application of the FLSA."[52] "A negligent violation of the statute is not itself a willful violation[,]"[53] and "[e]ven unreasonableness is not sufficient to establish a willful violation."[54]

For example, in *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018 (5th Cir. 1993), the Fifth Circuit concluded that a company that employed workers to operate helicopters to "dust lawns, herd cattle, and spray herbicides, insecticides, and fertilizers on crops for [a farmer] and

---

[48] Ex. "B", D. Lange Dep. at 36:24-37:8.

[49] Plaintiffs filed suit on October 22, 2021. *See* ECF No. 1. Even if Plaintiffs could establish willful violations of the FLSA (which they cannot), at best, any claims that accrued more than three years before Plaintiffs filed this lawsuit (October 22, 2018) are untimely. *See* 29 U.S.C. § 255(a).

[50] *Dacar v. Saybolt, L.P.*, 914 F.3d 917 (5th Cir. 2018).

[51] *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[52] *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 924 (E.D. La. 2009) (citing *McLaughlin*, 486 U.S. at 135).

[53] *Id.* (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990).

[54] *Id.* (citing *McLaughlin*, 486 at 135).

approximately 200 client farmers" qualified for the agricultural exemption under the FLSA, even though some of the company's off-farm services were not exempt under the FLSA.[55] The Fifth Circuit also held that, although the company violated the FLSA by failing to pay workers overtime for non-exempt services, the failure to pay overtime did not constitute a willful violation of the FLSA.[56] Critically, the company had been involved in a prior investigation for alleged violations of FLSA, but the plaintiffs failed to establish willfulness because they presented no evidence that the violations found during the prior investigation were "substantially similar" to the violations established during their lawsuit.[57] Unlike the plaintiffs in *Reich*, Plaintiffs have introduced no evidence of a prior DOL investigation or determination that Sterling ever violated the FLSA's overtime requirements.

Randall Romero testified that his understanding that H-2A workers are not entitled to overtime comes from decades of experience in the sugarcane industry and his understanding of general business law. Similarly, Rivers Patout's understanding that agricultural transportation workers are not entitled to overtime pay derives, in part, from his twenty-five (25) years of service as a board member of the American Sugar Cane League.[58] Rivers Patout further testified that the topic of whether workers who transport sugar cane from farms to mill has been a topic of discussion during American Sugar Cane League board meetings.[59] Prior to entering the H-2A program, Rivers Patout consulted with other H-2A employers in the agricultural industry to determine whether maintain farm equipment and transporting sugarcane from farms to mill-sites constituted agricultural work under the FLSA.[60] Plaintiffs cite no authority to suggest that either

---

[55] 8 F.3d 1018, 1022 (5th Cir. 1993).
[56] *Id.* at 1023, 1036.
[57] *Id.* at 1036.
[58] R. Patout Dep. 95:14-96:6.
[59] *Id.*
[60] *Id.* at 125:17-128:12.

Romero's or Patout's testimony could be construed as a reckless disregard for whether Sterling's practices violated the FLSA.[61]

**D. Plaintiffs have not met their summary judgment burden on their Louisiana Wage Pay Act claims.**

As with Plaintiffs' FLSA claims, Plaintiffs' motion for partial summary judgment on their LWPA claims is likewise premature. To prevail on their LWPA claims, Plaintiffs must establish that Sterling failed to pay the prevailing wage rate for work they allegedly performed outside the scope of the clearance orders approved by the DOL. The DOL approved Sterling's temporary labor certification application to employ Plaintiffs as "Agricultural Equipment Operators," and while Plaintiffs argue that they should have been paid the prevailing wage rate for Heavy Truck Drivers, a genuine factual dispute remains as to whether Plaintiffs' duties of operating combines and tractor-trailers and loading sugarcane onto wagons are sufficiently commensurate with the Agricultural Equipment Operator SOC. Until Sterling has an opportunity to depose Plaintiffs about their daily job duties and the amount of time performing each respective task, the Court should defer its ruling on Plaintiffs' motion with respect to their LWPA claims.

**E. Plaintiffs are not entitled to summary judgment on their breach of contract claims.**

Plaintiffs have failed to carry their summary judgment burden with respect to their breach of contract claims. As Plaintiffs admit, their clearance orders constitute valid, binding contracts. Sterling paid Plaintiffs wages in accordance with the wages set forth in the clearance orders

[61] Plaintiffs suggest that Sterling willfully violated the FLSA by failing to "affirmatively ascertain" whether its pay practices violated the FLSA, even though Sterling has never been found to be in violation of the FLSA since it entered the H-2A program in 2018. ECF No. 103-1, at 42; *see Babin v. Plaquemines Parish*, 421 F. Supp. 3d 391 (E.D. La. 2019) ("The failure to seek legal advice, by itself, does not establish reckless disregard. However, consulting with an attorney about whether a compensation plan complies with the FLSA may preclude a finding of willfulness.") (citing *Johnson v. Big Lot Stores, Inc.*, 604 F. Supp. 2d 903, 924 (E.D. La. 2009)).

approved by the DOL. To participate in the H–2A guest-worker program, petitioners like Sterling make factual representations to the federal government that should comply with federal regulations.[62] These regulations establish the minimum benefits, wages, and working conditions that must be offered to employees and form the contracts between employers and employees.[63] Here, Sterling agreed to hire the employees at issue as Agricultural Equipment Operators at the statutorily established rate of pay applicable to Agricultural Equipment Operators.

To assert a breach of contract claim under Louisiana law, Plaintiffs must establish (1) the obligor's (*i.e.*, Sterling's) undertaking of an obligation to perform, (2) the failure of the obligor to perform the obligation (the breach), and (3) that the failure to perform resulted in damages to the obligee.[64] Plaintiffs allege that Sterling breached its employment contracts with Plaintiffs by assigning them to drive heavy trucks and then failing to pay them the applicable prevailing wage for heavy truck drivers. Under Louisiana law, however, the burden of proving an alteration in the terms of a written employment contract lies with the party alleging the change.[65] Without reasonable notice of the chance and concurrence through continued performance, the existing contract remains in force and governs the employment contract.[66]

---

[62] 20 C.F.R. § 655.101(b).

[63] *See Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341 (5th Cir. 1985) (adopting the H-2 workers' argument that "because [the H-2 regulations] have the force of law, these terms were part of their employment agreement"); *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002) (explaining that "clearance orders ultimately become the work contract between the employers and the farmworkers").

[64] *See 1436 Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La. App. 4th Cir. 1986); *see also Hercules Machinery Corp. v. McElwee Bros., Inc.*, 2002 WL 31015598 at *9 (E.D. La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages.").

[65] *See Modification of terms during employment*, La. Prac. Employment Law § 3:24 (citing *Scallan v. Mark Petroleum Corp.*, 303 So. 2d 498 (La. Ct. App. 2d Cir. 1974)).

[66] *Stegall v. Orr Motors of Little Rock, Inc.*, 121 So. 3d 684 (La. Ct. App. 2d Cir. 2013).

Plaintiffs' public policy arguments are unavailing. Importantly, the H-2A regulations do not allow employers to modify the terms of the job order. Instead, the H-2A regulations expressly specify when and how a job order can be modified:

> The employer may not amend the job order on or after the date of filing an Application for Temporary Employment Certification…The employer must provide all workers recruited in connection with the Application for Temporary Employment Certification with a copy of the modified job order or work contract which reflects the amended terms and conditions, on the first day of employment, in accordance with § 655.122(q), or as soon as practicable, whichever comes first.[67]

Even if Plaintiffs could establish that Sterling failed to pay Plaintiffs wages commensurate with truck driving duties, that would be insufficient as a matter of law to establish a breach of contract claim because Plaintiffs acquiesced with the change in their job duties by completing the work—let alone to grant summary judgment in Plaintiffs' favor on their breach of contract claims. The burden rests with Plaintiffs to prove that Sterling modified their employment contracts by offering a higher wage than the wages set forth in Plaintiffs' clearance orders, and Plaintiffs have plainly failed to satisfy that burden.

**F. Plaintiffs have not met their summary judgment burden regarding their unjust enrichment claims.**

Pursuant to longstanding precedent, "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract."[68] This is so because "the remedy of unjust enrichment is subsidiary in nature" and "is only applicable to fill a gap in the law where no express remedy is provided."[69] Consistently,

---

[67] 20 C.F.R. § 655.121.

[68] *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004) (citing *Edwards v. Conforto*, 636 So.2d 901, 907 (La. 1993)); *see also Ferrara Fire Apparatus, Inc. v. JLG Inds., Inc.*, 581 Fed. Appx. 440, 443-44 (5th Cir. 2014).)

[69] *Walters v. MedSouth Record Management, LLC*, 38 So.3d 243, 244 (La. 2010).

judges in this district have routinely held that "[u]njust enrichment claims cannot be maintained in the alternative."[70]

Plaintiffs must establish that no binding employment contract exists to prevail on their unjust enrichment claims. Here, Plaintiffs do not dispute that their job clearance orders constitute enforceable employment contracts. Thus, Plaintiffs have have failed to satisfy their summary judgment burden with respect to their unjust enrichment claims.

## V. CONCLUSION

For each of the foregoing reasons, Plaintiffs' motion for partial summary judgment [ECF No. 103] should be denied.

This the 15th day of August, 2023.

Respectfully submitted,

*/s/ Marcellus D. Chamberlain*
BRANDON E. DAVIS (#29823)
CLERC C. COOPER (#38170)
MARCELLUS D. CHAMBERLAIN (#917498) (*pro hac vice*)
PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email: brandon.davis@phelps.com
Email: marcellus.chamberlain@phelps.com
and;

*/s/ Ashley Foret Dees*
ASHLEY FORET DEES (#31727)
517 Broad Street
Lake Charles, LA 70601
Telephone: (337) 214-0354
Facsimile: (337) 326-5543

[70] *U.S. v. Cytogel Pharma, LLC*, No. 20-3440-WBV-DMD, 2018 WL 5297753, at *4 (E.D. La. Oct. 15, 2018); *MCP Int'l, LLC v. Formula Four Beverages, Inc.*, No. 20-3440-WBV-DMD, 2022 WL 782752 (E.D. La. Mar. 15, 2022) ("This Court has repeatedly held that unjust enrichment claims must be dismissed when a plaintiff has other remedies available, including a claim for breach of contract.").

Email: ashley@afdees.com

**ATTORNEYS FOR STERLING SUGARS SALES CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Marcellus D. Chamberlain*
MARCELLUS D. CHAMBERLAIN