UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

|  |  |
|---|---|
| **ARTEMIO ALVAREZ BARRON,** et al., and others similarly situated, | CIVIL ACTION No. 6:21-cv-03741 |
| **Plaintiffs,** | JUDGE ROBERT T. SUMMERHAYS |
| *v.* | MAGISTRATE JUDGE DAVID J AYO |
| **STERLING SUGARS SALES CORPORATION,** | |
| **Defendant**. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

The legal theories articulated in Defendant's Motion for Partial Summary Judgment rely on a series of mischaracterizations about the nature of the H-2A application process and misapply the facts of this case to the law. Plaintiffs file this Response in Opposition.

---

[1] Plaintiffs filed their own Motions for Partial Summary Judgment on June 30, 2023 and October 23, 2023, Docs. 103 and 118 respectively, addressing nearly all the claims and legal issues in this case. For the sake of efficiency, throughout this Response Plaintiffs cite back to their main brief, where Plaintiffs have already made arguments and established a factual record that respond to Defendant's motion.

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................................ iii

SUMMARY OF FACTS ....................................................................................................................1

STANDARD OF REVIEW ................................................................................................................5

ARGUMENT......................................................................................................................................6

    I.      All of Defendant's Arguments that Rely on Plaintiffs Having Purportedly "Accepted" the AEWR Rate Are Invalid Because, By Operation of Law, H-2A Rights Cannot Be Waived. ...............................................................................................................................6

    II.    Defendant's breach of contract and contract modification arguments fail. ...................9

        A.  Plaintiffs are not seeking to revoke or modify the terms of their contract. .............9

        B.  The Final Rule does not constitute contract modification. ...................................10

        C.  Auer deference does not apply to a labor certification determination. ..................11

        D.  The regulatory provision on clearance order revocation does not apply here. ......12

    III.    Plaintiffs' have proven all the elements of unjust enrichment and Defendant's unclean hands defense is meritless.........................................................................................13

CONCLUSION.................................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**

*Ahner v. Hatfield*,
865 So. 2d 205 (La. App. 4 Cir.), overruled by *Roundtree v. New Orleans Aviation Bd.*, 896 So. 2d 1078 (La. App. 4 Cir.) ..................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................6

*Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*,
817 So.2d 427 (La. App. 2 Cir. 2002) ...................................................................17

*Boxwell v. Department of Highways,*
203 La. 760 (La. 1943) ...........................................................................................17

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945)..................................................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................6

*Citgo Petroleum Corp. v. Lake Charles Metal Trades Council*,
175 F. Supp. 3d 662 (W.D. La. 2016).....................................................................6

*Cantieri Navali Riuniti v. M/V Skyptron*,
621 F. Supp. 171 (W.D. La. 1985), aff'd and remanded, 802 F.2d 160 (5th Cir. 1986) .......7

*Davis v. Laster*,
138 So. 2d 558 (1962)...............................................................................................7

*De Leon-Granados v. Eller & Sons Trees, Inc.*,
581 F. Supp. 2d 1295 (N.D. Ga. 2008) ...................................................................8

*H&E Equipment Servs, Inc. v. Sugar & Power Int'l, LLC*,
215 So.3d 446 (La. App. 1st Cir. 2017)................................................................14

*Hagberg v. John Bailey Contractor*,
435 So.2d 580 (La.App. 3 Cir. 1983) ...............................................................17–18

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019).............................................................................................11

*Maroulis v. Entergy Louisiana, LLC*,

314 So. 3d 1002 (La. App. 5 Cir. 2/10/21), rev'd on other grounds, , 317 So. 3d 316 (La. 6/8/21)...................................................................................................................15

*Marshall v. Franklin,*
370 So.3d 486 (La.App. 1 Cir. 2023) ...............................................................14

*Mayhue's Super Liquor Store, Inc. v. Hodgson,*
464 F.2d 1196 (5th Cir. 1972) ...........................................................................8

*Palowsky v. Cork,*
337 So.3d 550 (La.App. 5th Cir. 2022) .......................................................14, 16

*Quaternary Resource Investigations, LLC v. Phillips,*
316 So.3d 448 (La. App. 1 Cir. 2020) ...............................................................17

*Salim v. Louisiana State Bd. of Ed.,*
289 So. 2d 554 (La. Ct. App.), writ denied sub nom. *Salim v. Louisiana State Bd. of Educ.,* 293 So. 2d 177 (La. 1974) ........................................................................7

*Sarmiento v. Fresh Harvest, Inc.,*
573 F. Supp. 3d 1378 (N.D. Cal. 2021), petition for interlocutory appeal denied, *Sarmiento v. Fresh Harvest, Inc.,* No. 22-80006, DE 5 (9th Cir. Apr. 21, 2022)...............8

*St. Romain v. Midas Expl., Inc.,*
430 So. 2d 1354 (La. Ct. App. 1983).................................................................7

*Whitehead v. Int'l Paper Co.,*
No. CV 16-00176, 2018 WL 6186944 (W.D. La. Nov. 27, 2018) ....................................7

## STATUTES

8 U.S.C. § 1101(a)(15)(H)(ii)(a) ........................................................................ 1

8 U.S.C. 1188(a)(1).........................................................................................1

La. Civ. Code art. 4.........................................................................................14

La. Civ. Code art. 1927 ................................................................................7, 16

La. Civ. Code art. 2030....................................................................................14

La. Civ. Code art. 2031....................................................................................18

La. Civ. Code art. 2033.................................................................................14, 17

La. Civ. Code art. 2034 ...................................................................................................15

La. Civ. Code Art. 2054 ...................................................................................................15


**RULES**

8 C.F.R. § 214.2(h)(5)(vii) ...............................................................................................13

20 C.F.R. § 653.501(c)(1)(i) ..............................................................................................2

20 C.F.R. § 653.501(c)(3)(viii) ..........................................................................................2

20 C.F.R. § 655.0(a) ...........................................................................................................1

20 C.F.R. § 655.100 ............................................................................................................1

20 C.F.R. § 655.101 ..........................................................................................................11

20 C.F.R. § 655.103(a) .......................................................................................................1

20 C.F.R. § 655.103(b) .....................................................................................................11

20 C.F.R. § 655.103(c) ......................................................................................................11

20 C.F.R. § 655.120 ............................................................................................................5

20 C.F.R. § 655.121(a)(1) and e(1) .....................................................................................1

20 C.F.R. § 655.181 ..........................................................................................................12

20 C.F.R. § 655.55 ............................................................................................................13

29 C.F.R. § 501.5 ..........................................................................................................8, 16

Fed. R. Civ. P. 56(c) ...........................................................................................................6

88 Fed. Reg. 12,760 (Feb. 28, 2023) ..................................................................................5

## SUMMARY OF FACTS

Plaintiffs incorporate herein their "Statement of Undisputed Materials Facts" filed with Plaintiffs Motion for Partial Summary Judgment. *See* Doc. 103 and 103-2; *see also* Doc. 103-1 at 1–2. Plaintiffs have further attached hereto their Statement of Disputed Facts, pursuant to Local Rule 56.2; however, the majority of Defendant's "Undisputed Facts," Doc. 116-2, make assertions unsupported by the factual record, that are immaterial, or that are legal conclusions as opposed to facts. Thus, the Court should not credit them for purposes of summary judgment.

Defendant's description of the H-2A program attempts to remove Defendant's agency, ignoring the purposive role it played in initiating the entire H-2A process that ultimately led to the claims in this case. The H-2A process *begins* with an employer filing a job order, by filling out form ETA-790/790A, with the State Workforce Agency (SWA) and National Processing Center (NPC).[2] Thus, it was Defendant, and no one else, who chose to submit its application for foreign temporary workers through the H-2A program (as opposed to the H-2B non-agricultural program), when the known central prerequisite to the H-2A application and statutory scheme is that the work must be for agricultural labor or services. *Id.* ("The work to be performed must consist of agricultural labor or services"); 20 C.F.R. §§ 655.100, 655.0(a), and 655.103(a); 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).[3] The SWA, and subsequently the U.S. Department of Labor's (DOL) Office of Foreign Labor Certification (OFLC), then relies on the representations and certifications made by the employer under penalty of perjury, including that

---

[2] *See e.g.*, Ex. 1, https://flag.dol.gov/programs/H-2A, H-2A Temporary Certification For Agricultural Workers ("Step 1: Filing a Job Order with the State Workforce Agency (SWA)"); *see also* 20 C.F.R. § 655.121(a)(1) and e(1).

[3] *See also* Ex. 2, https://foreignlaborcert.doleta.gov/about.cfm, ETA Home, Foreign Labor Certification, About Foreign Labor Certification ("The employer must ensure that the position meets the qualifying criteria for the requested program.")

the "clearance order describes the actual terms and conditions of the employment being offered," when making decisions regarding the labor certification. *See* Doc. 103-1, p. 32 n. 22; 20 C.F.R. § 653.501(c)(3)(viii); 20 C.F.R. § 653.501(c)(1)(i) ("neither the ETA nor the SWAs are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers"). The legitimacy of the entire regulatory scheme relies on employers' candor. Thus, Defendant cannot escape liability by shielding itself under the guise of DOL's labor certification, when the government certification relied on the truthfulness of Defendant's certifications under penalty of perjury, and, after the certifications were made, Defendant ultimately assigned Plaintiffs to tasks that did not constitute agricultural labor.

After an employer's application for temporary labor certification is approved, it is again the employer/petitioner who requests H-2A classification from U.S. Citizenship and Immigration Services (USCIS) by filing a Form I-129, Petition for Nonimmigrant Worker.[4] *See* Ex. 4, H Classification Supplement, p. 13. H-2A workers are merely beneficiaries of the employer's Form I-129 Petition. *See* Ex. 4, Part 3, p. 2–3. Thus, by the time prospective workers are advised of the job opportunity and applying for the visas corresponding to the labor certification, the designation of the visa's H-2A status has long since been made, initially by the employer's H-2A job order and application and later approved by DOL and USCIS, based on the Defendant's representations about the work. "The foreign labor certification process is the responsibility of the employer, not the employee."[5]

---

[4] *See* Ex. 3, https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-2a-temporary-agricultural-workers, H-2A Temporary Agricultural Workers ("Step 2: Petitioner submits Form I-129 to USCIS").

[5] *See* Ex. 2, https://foreignlaborcert.doleta.gov/about.cfm, ETA Home, Foreign Labor Certification, About Foreign Labor Certification ("The foreign labor certification process is the responsibility of the employer, not the employee[.]")

Lacking substantive argument, Defendant uses semantics to make much of its passing reference to "haul[ing] sugarcane" in its H-2A job duties description. The mere fact that Plaintiffs "hauled" (i.e. transported) sugarcane does not transform their work into agricultural labor or mean that they were properly classified as "Agricultural Equipment Operators." That argument ignores both the legal distinction between other kinds of hauling, or even trucking, work that might be considered agriculture *if* it were performed by the same worker who also performed field work for his farmer employer, and it ignores the linguistic context of how the term "haul sugarcane" was used within Defendant's job description.

**a. Job Description**

| 1. Job Title *  Ag Equipment Operator | | |
|---|---|---|
| 2. Number of hours of work per week  Basic *: 40.00    Overtime: 0 | | 3. Hourly Work Schedule *  A.M. *(h:mm):* 7 : 00    P.M. *(h:mm):* 4 : 00 |
| 4. Does this position supervise the work of other employees? *  ☐ Yes ☑ No | | 4a. If yes, number of employees worker will supervise (if applicable) § 0 |

5. Job duties – A description of the duties to be performed **MUST** begin in this space. If necessary, add attachment to continue and complete description. *

Job duties include harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment. Post-hire, random, or upon suspicion drug screening (paid for by employer); 3 months experience required in similar occupation; must be able to lift/carry 50 lbs.; exposure to extreme temps; repetitive movements; extensive stooping and walking; overtime hours may be offered and vary; possibility of bonus at completion of contract based on profitability of season and discretion of employer.

16. Job description and requirements / Descripción y requisitos del trabajo:

**Job duties include harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment. Post-hire, random, or upon suspicion drug screening (paid for by employer); 3 months experience required in similar occupation; must be able to lift/carry 50 lbs.; exposure to extreme temps; repetitive movements; extensive stooping and walking; overtime hours may be offered and vary; possibility of bonus at completion of contract based on profitability of season and discretion of employer.**

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si ☒ No ☐ If yes, number of months preferred: / Si es así, numero de meses de experiencia: **3**

2. Check all requirements that apply:

| | |
|---|---|
| ☐ Certification/License Requirements / Certificación/Licencia Requisitos | ☐ Criminal Background Check / Verificación de antecedentes penales |
| ☐ Driver Requirements / Requisitos del conductor | ☒ Drug Screen / Detección de Drogas |
| ☐ Employer Will Train / Empleador entrenará o adiestrará | ☐ Extensive Pushing and Pulling / Empujar y Jalar Extensamente |
| ☐ Extensive Sitting / Estar sentado largos ratos | ☒ Extensive Walking / Caminar por largos ratos |
| ☒ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas | ☒ Frequent Stooping / Inclinándose o agachándose con frecuencia |
| ☒ Lifting requirement / Levantar o Cargar **50** lbs./libras | ☐ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio |
| ☒ Repetitive Movements / Movimientos repetitivos | |

*See* Doc. 66-2, Defendant's 2019 Job Description in its H-2A Application and Agricultural

Clearance Order. As already argued persuasively at length in Plaintiffs' Motion for Summary

Judgment, there is no dispute that Plaintiffs never performed primary or secondary agriculture, or

any of the other agricultural tasks described in Defendant's job duties. Doc. 103-1 at 3–13; Doc.

103-2, Facts 130–31, 133. Furthermore, when read in context, Defendant's job description

sandwiches the term "haul sugarcane" between other job duties, such as "remove leaves from

crop," and "maintenance of farmland and farm equipment" (none of which Plaintiffs did), which,

when read as a whole, give the false impression of hauling activities being completed *on a farm*

by a prospective worker together and in conjunction with also performing primary agricultural

work. *See* Doc. 103-1 at 21–26. Despite that no workers performed harvesting (agricultural)

duties in 2018, and purportedly a small minority of workers may have done harvesting work in

2019-2021, though there is no direct evidence of that in the record, Defendant chose to describe

the work in a way that did not reveal to DOL that 1) the "hauling" duties took place mainly off

the farms, on public roads or at a sugar mill, or 2) the majority of workers *only* transported

sugarcane while doing none of the other listed activities.[6] *See* Doc. 103-2 Facts 18, 29–30, 132;

Doc. 103-1 at 10. That Defendant continues to represent that its H-2A job description truthfully

and sufficiently disclosed to DOL, and reasonably put U.S. workers on notice of, the true nature

of the job, which was driving heavy trucks on public highways back and forth between farms and

---

[6] Defendant cites Randall Romero's testimony for the proposition that "Sterling's employees completed job duties like operating combines, tractor-trailers, dump carts, and excavators to harvest, cut, load, unload, and haul sugarcane." Doc. 116-1, p. 1–2, n. 2. However, Mr. Romero has no personal knowledge of the job tasks performed by specific workers in 2018-2021 and when pressed, none of Defendant's designated representatives was able to identify any specific worker who completed the agricultural tasks disclosed in its job order. Doc. 103-2, Fact 132; Doc. 114 at 6–7.

*Pls.' Response to Motion for Partial Summary Judgment*                                    *4*

the non-agricultural sugar mill for most of its workforce, only further demonstrates Defendant's willingness to distort the facts to serve its own purposes and pocketbook.[7]

Similarly, Defendant's discussion of DOL's recent "Final Rule," 88 Fed. Reg. 12,760 (Feb. 28, 2023), is also a distraction that has no bearing on the outcome of this case. Defendant incorrectly claims that "Plaintiffs' view is that the Final Rule should be applied at this time to change the job classification and rates that applied," Doc. 116-1 at 10, but instead, Plaintiffs have argued that the Final Rule and related litigation does not affect the outcome of this case. *See* Doc. 115. The Final Rule affects wages paid to certain H-2A workers who perform some types of work, such as trucking, while also completing actual primary agricultural job tasks or for farm operations *such that their work is properly categorized as agricultural* (for example, workers employed by a farmer who personally harvest a crop and then transport that same crop to a storage location); whereas Defendant is not a farmer and Plaintiffs did not engage in any single agricultural work task, so their work was never agricultural. *See* Doc. 103-1 at 3–13; 20 C.F.R § 655.120 (referring consistently to "agricultural" activities).

## STANDARD OF REVIEW

The Court should grant a moving party's motion for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[7] Notably, Defendant has not argued in its motion that the work performed by Plaintiffs was agricultural under the law. Rather, Defendant tries to save itself somehow by suggesting the words "haul sugarcane" supposedly sufficiently disclosed to DOL the nature of the work. However, that the work was not agricultural in actuality should be enough for Plaintiffs to succeed. The H-2A program is simply not intended for non-agricultural work, period.

of law." *Citgo Petroleum Corp. v. Lake Charles Metal Trades Council*, 175 F. Supp. 3d 662, 667 (W.D. La. 2016) (citing Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, "[t]he non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law." *Citgo*, 175 F. Supp. 3d *at* 667 (citing *Celotex Corp*, 477 U.S. at 324). All justifiable inferences should be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT[8]

I. **All of Defendant's Arguments that Rely on Plaintiffs Having Purportedly "Accepted" the AEWR Rate Are Invalid Because, By Operation of Law, H-2A Rights Cannot Be Waived.**

Defendant argued in sections IV.A. (breach of contract), C. (unclean hands), D. (unjust enrichment) and E. (contract modification/*Auer* deference), that Plaintiffs "accepted" the terms of employment, referring apparently to the Agricultural Equipment Operators job classification and corresponding AEWR wage rate listed in Defendant's application and clearance order. Doc. 116-1 at 9–10. However, Defendant's argument that "[t]here is no legitimate dispute about whether the contracts at issue were performed according to their terms" is absurd because Plaintiffs filed a lengthy summary judgment motion detailing the ways in which Defendant did not fulfill its contractual obligations, including because Defendant assigned Plaintiffs to perform

---

[8] Throughout its brief, Defendant refers only to Plaintiffs' employment in 2019-2021. Doc. 116-1 at 2, 7. However, some Plaintiffs were also employed by Defendant in 2018. *See* Doc. 103-2 Facts 30, 42, 45, 66–67, 69, 72, 75–77, 80, 83–85, 87, 91–92. Given Defendant's failure to include the 2018 employment or reference the 2018 H-2A clearance order, Plaintiffs assume that Defendant filed its motion for summary judgment and makes its legal arguments only with regard to claims arising from the 2019-2021 seasons and corresponding H-2A contracts.

non-agricultural labor, so the disclosed AEWR wage that applied to agricultural work was not the highest applicable federal wage for the *non-agricultural* work that Plaintiffs actually performed, and because paying the AEWR for non-agricultural work violates the public policy interests underlying the entire H-2A statutory scheme. Doc. 103-1, Section III, at 18–32. Defendant uses the word "acceptance," but is really referring to some alleged consent to unlawful treatment. Moreover, acceptance by performance does not waive claims in the way Defendant has described. The concept of acceptance by performance is intended to protect the offeree, here Plaintiffs, by forming a contract when the requested obligation (here, to perform labor for Defendant) is performed and completed by the offeree (the undisputed actual hours of work that Plaintiffs completed for Defendant). *See* Doc. 118-1 at 7.[9]

Regardless of what terms Defendant claims Plaintiffs acquiesced to, without citing to factual record of such acquiescence, the fact remains that by operation of law, H-2A workers *cannot* waive (or agree to) any terms that are less than those minimally guaranteed by the H-2A

---

[9] Defendant cites numerous cases purporting to support its incorrect understanding of acceptance by performance. *See* Doc. 116-1 at 10 n. 38 and 39. However, the cases cited merely confirm that Louisiana law allows consent to a contract, offer and acceptance, including modification of a contract term, to be established by the actions of the parties. *See* La. Civ. Code art. 1927; Doc. 103-1 at 21. The cases cited by Defendant at Doc. 116-1 at 10 n. 38 and 39 are distinguishable, and include: *Ahner v. Hatfield*, 865 So. 2d 205, 208 (La. App. 4 Cir.), overruled by *Roundtree v. New Orleans Aviation Bd.*, 896 So. 2d 1078 (La. App. 4 Cir.) (finding insurance company bound by coverage of individual where it had accepted payment for changes to original policy); *Davis v. Laster*, 138 So. 2d 558, 564 (1962) ("silence or inaction of the lessor can result in the conclusion that he has consented to a different mode of execution"); *Whitehead v. Int'l Paper Co.*, No. CV 16-00176, 2018 WL 6186944, at *4 (W.D. La. Nov. 27, 2018) (assigning statutory employee status to contract laborer from whom contracting party accepted labor); *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F. Supp. 171, 182 (W.D. La. 1985), aff'd and remanded, 802 F.2d 160 (5th Cir. 1986) ("a written offer looking toward a construction contract may be accepted by the contractor's beginning work under the contract, particularly when the offeror promptly learns that work has begun"); *St. Romain v. Midas Expl., Inc.*, 430 So. 2d 1354, 1357 (La. Ct. App. 1983) (even where lessee did not sign lease, it is bound where its actions indicate intent to be bound); *Salim v. Louisiana State Bd. of Ed.*, 289 So. 2d 554, 558 (La. Ct. App.), writ denied sub nom. *Salim v. Louisiana State Bd. of Educ.*, 293 So. 2d 177 (La. 1974) (acceptance of lease implied where plaintiff began constructing warehouse, defendant was aware of the construction, and defendant later occupied the premises).

---

*Pls.' Response to Motion for Partial Summary Judgment*                                                   7

program regulations, and any attempt to do so is void as against public policy. *See* 29 C.F.R. § 501.5; Doc. 118-1 at 7; *Sarmiento v. Fresh Harvest, Inc.*, 573 F. Supp. 3d 1378, 1383–85 (N.D. Cal. 2021), petition for interlocutory appeal denied, *Sarmiento v. Fresh Harvest, Inc.*, No. 22-80006, DE 5 (9th Cir. Apr. 21, 2022); *cf. De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1319 (N.D. Ga. 2008) ("to the extent that Defendants argue that workers were aware of and acquiesced to the non-reimbursement policy and thus cannot now object to it, the Court finds that the AWPA [non-waiver provision] bars that argument.") Similarly, Plaintiffs' right to unpaid overtime under the FLSA cannot be waived, no matter what they purportedly agreed to. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703–14 (1945); *Mayhue's Super Liquor Store, Inc. v. Hodgson*, 464 F.2d 1196, 1197–98 (5th Cir. 1972).

Furthermore, it is not a worker's obligation to understand the nuances of what types of trucking work may or may not qualify as agriculture under U.S. labor laws. However, as the employer, it is Defendant's responsibility to comply with labor laws and ensure that the job position meets the qualifying criteria of the H-2A program.[10] For these reasons, all of Defendant's arguments, including acceptance by performance (Doc. 116-1 at 9–10) or that Plaintiffs in any way agreed to lesser terms or knew about the violation of their wage rights yet continued to work for Defendant, fail. H-2A workers cannot waive their rights and the H-2A program sets a floor for the minimum employment terms guaranteed to all H-2A workers. *See* Doc. 103-1 at 19–20. This protects both U.S. workers and H-2A visa recipients. That Plaintiffs are low-wage foreign workers with limited economic opportunities in their country of origin,

---

[10] *See* Ex. 2, https://foreignlaborcert.doleta.gov/about.cfm, ETA Home, Foreign Labor Certification, About Foreign Labor Certification ("The employer must ensure that the position meets the qualifying criteria for the requested program.")

such that they continued to work for Defendant at unlawfully low wages, does not mean that they have waived their rights to the lawfully guaranteed wages for the work Defendant assigned them.

## II.   Defendant's breach of contract and contract modification arguments fail.

Defendant's breach of contract arguments based on acceptance by performance misunderstand that legal concept for the reasons stated above in Section I. Defendant argues several theories of contract modification, in Sections IV.A. and E., all of which also fail. Defendant's contract arguments do not rely on material factual disputes compared to Plaintiffs' Statement of Undisputed Facts, Doc. 103-2—in fact, Plaintiffs and Defendant appear to agree that Plaintiffs performed labor for Defendant as a result of Defendant's approved H-2A labor certifications and that the minimum terms guaranteed by the H-2A regulations described in Defendant's H-2A applications and clearance orders created an employment contract—rather, Defendant incorrectly applies the facts to Louisiana contract law. Compare Doc. 103-2 Facts 42–44, 61, 63, 141–144, 148 to Doc. 116-2 Facts 2–4, 6–7.

### A.  Plaintiffs are not seeking to revoke or modify the terms of their contract.

Plaintiffs have not sought to modify or alter the terms of their contract. Plaintiffs plainly argued that the express terms of their H-2A employment required Defendant to pay "the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage," and that the "federal minimum wage" applicable to the non-agricultural work performed by Plaintiffs was the corresponding OEWS wage rate for the type of work they performed. *See* Doc. 103-1 at 18–28. Defendant attempts to argue that it only ever offered the AEWR wage rate, which it claims Plaintiffs accepted, but the express terms of the H-2A clearance order and application require Defendant to sign, under penalty of perjury, a certification that:

5. The employer understands that it must offer, recruit at, and pay a wage that is at least the highest of the adverse effect wage rate in effect at the time the job order is placed, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage, and, furthermore, that if a new Adverse Effect Wage Rate is published, or the employer is notified of a new prevailing wage rate during the contract period, and that new rate is higher than the wage determined by the NPC (except the CBA) during the application process the employer will increase the pay of all employees in the same job occupation to the higher rate. For employers subject to the requirements at 20 CFR 655.200-235, the employer understands that it must offer, recruit at, and pay a wage that is at least the highest of the adverse effect wage rate, the agreed-upon CBA, or the applicable minimum wage rate set by Federal or State law or judicial action, for each month, or portion thereof, during the job order period.

**I hereby acknowledge** that the agent or attorney identified in section E (if any) of the Form ETA-9142A and section A above is authorized to represent me for the purpose of labor certification and, by virtue of my signature in Block 5 below, **I take full responsibility** for the accuracy of any representations made by my agent or attorney.

**I declare** under penalty of perjury that I have read and reviewed this application and that to the best of my knowledge the information contained therein is true and accurate. *I understand that to knowingly furnish false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by a $250,000 fine or 5 years in the Federal penitentiary or both (18 U.S.C. 1001).*

| 1. Last (family) name | 2. First (given) name | 3. Middle initial |
|---|---|---|
| Patout | Rivers | M |

| 4. Title |
|---|
| President |

| 5. Signature | | 6. Date signed |
|---|---|---|
| DocuSigned by: *Rivers M. Patout* | | 7/17/2019 |

*See e.g.*, excerpts from 103-43 (Defendant's 2019 H-2A Application for Temporary Employment Certification). On its face, the certification swears that the information in the application is "true and accurate," and that Defendant understands it must pay the highest applicable wage rate. If anything, it was Defendant, not Plaintiffs, who changed the terms of H-2A employment by subsequently assigning Plaintiffs to non-agricultural work not properly disclosed or even eligible for H-2A certification. Because Plaintiffs held up their end of the bargain by performing the assigned work, Defendant must properly compensate Plaintiffs for that work in line with the H-2A program's explicit minimum terms and to avoid violating the public policies that underly the program, such as not adversely affecting U.S. wages. *See* Doc. 103-1 at 28–32.

## B. The Final Rule does not constitute contract modification.

For the reasons stated above, *see supra* p. 5, Defendant's reference to the DOL Final Rule is a misdirection. The Final Rule applies to properly categorized agricultural workers performing certain tasks, including trucking, but Plaintiffs were not "Agricultural Equipment Operators" or

any other class of agricultural laborers. As thoroughly laid out in Plaintiff's Motion for Partial Summary Judgment, Plaintiffs did not perform primary or secondary agricultural labor. *See* Doc. 103-1 at 3–13. They did not work on a farm or for a farmer. They drove heavy trucks to transport sugarcane to Defendant's parent corporation's mill, or worked exclusively within the mill. *See id*. Therefore, the AEWR or any other agricultural wage rate does not apply. *See id*. at 18–32.

### C. Auer deference does not apply to a labor certification determination.

*Auer* deference does not apply to a Certifying Officer's approval of Defendant's H-2A Application for Temporary Employment Certification. H-2A applications and job orders are approved by a "Certifying Officer" ("CO") within the Office of Foreign Labor Certification ("OFLC") of the Employment and Training Administration ("ETA") of USDOL. *See* 20 C.F.R. §§ 655.101, .103(b) (definitions of Certifying Officer, Employment and Training Administration, and Office of Foreign Labor Certification). Defendant's brief admits that *Auer* deference applies "to agencies' reasonable readings of genuinely ambiguous regulations." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019). Here, Defendant has not identified an ambiguous regulation or any interpretation of that regulation in issuing labor certification. Defendant cites 20 C.F.R. § 655.103(c)'s definition of "agricultural labor or services," *see* Doc. 116-1 at 17, but the regulation defines the term in relation to agriculture's definition under the FLSA and the IRC, *see* Doc. 103-1 at 4–5, and Defendant has not explained how it is "genuinely ambiguous." The CO's application of Defendant's stated job description to that definition is different than saying that the regulation itself is ambiguous.

Furthermore, *Auer* deference has limits, including when the Court determines that the agency interpretation "does not reflect an agency's authoritative, expertise-based, 'fair[, or] considered judgment,'" or when it is plainly erroneous. *Kisor*, 139 S.Ct. at 2414–15. As already

explained above, the CO makes its assessment *before* Plaintiffs' work was performed, relying on the truthfulness and completeness of Defendant's representations about the nature of the work to be performed. *See supra* p. 1–2. Defendant faults DOL for not categorizing the work under the Heavy Truck Driver classification. Doc. 116-1 at 9, 17. Yet, nothing in Defendant's job description signals that the nondescript term "haul sugarcane" should be intuited to mean driving a heavy tractor-trailer truck on public roads, while not performing *any* of the other numerous agricultural job duties listed in the job description. *See supra* at p. 3–5. To the contrary, Defendant's job description goes to much effort to make the work sound as if it is occurring in a sugarcane field. In any case, Plaintiffs' wage claims relate to damages they are owed due to the type of work they were actually assigned to perform *after* they arrived on the approved H-2A job order. DOL cannot predict, in certifying H-2A job orders, situations where employers later violate the law once workers arrive, which is why the H-2A regulations provide legal protections for workers to enforce their H-2A rights. Defendant has presented no evidence that DOL interprets the type of work *actually* performed by Plaintiffs to be agriculture under the regulation. *See* Pls.' Stmt. of Disputed Facts herewith, Fact 16. Even if DOL hypothetically were to approve a truthful H-2A application sufficiently describing the type of work Plaintiffs actually performed, such labor certification would not be entitled to *Auer* deference because Plaintiffs have already demonstrated that the work they performed does not qualify as agriculture under the FLSA or the IRC, *see* Doc. 103-1 at 3–13, making any such certification plainly erroneous.

**D.      The regulatory provision on clearance order revocation does not apply here.**

Similarly, Defendant's argument that the government has not revoked Defendant's clearance orders pursuant to 20 C.F.R. § 655.181 is neither here nor there. The parties have no way of knowing whether Defendant's improper use of the H-2A program was even brought to

OFLC's attention within the validity period of the certification, such that it could have timely revoked the certification. Labor certifications are valid only during the authorized period of employment and automatically expire on the last date of employment. *See* 8 C.F.R. § 214.2(h)(5)(vii); *cf.* 20 C.F.R. § 655.55 (H-2B "temporary labor certification is valid only for the period as approved on the Application for Temporary Employment Certification. The certification expires on the last day of authorized employment.") Thus, Defendant's labor certifications automatically expired on their last dates of employment, which were January 30, 2019, January 30, 2020, January 31, 2021, and January 31, 2022 respectively, for the 2018-2021 seasons. Doc. 103-2 Facts 45–48, 50. There would be no need for OFLC to belatedly revoke an already expired job order, nor does DOL have the capacity to investigate and act on every single violation of the law by H-2A employers. H-2A workers may also remedy any violations via private rights of action, as Plaintiffs have done here. *See* Doc. 103-1 at 19–20 (H-2A regulations routinely enforced as a contract); Doc. 144 at 9 n. 8 (DOL revocation operates independent of individual claims pursued by Plaintiffs here).

For the above reasons, Defendant failed to meet its burden because under the law acceptance by performance does not apply to the facts of this case in the way Defendant describes, Plaintiffs cannot waive their H-2A contractual rights no matter what Defendant claims they acquiesced to (nor has Defendant shown that they acquiesced to anything), and Plaintiffs have not sought to revoke or modify their contracts, as Defendant has alleged.

**III.    Plaintiffs have proven all the elements of unjust enrichment and Defendant's unclean hands defense is meritless.[11]**

---

[11] Plaintiffs have already conceded in their own Motion for Partial Summary Judgment that their claims for unjust enrichment only apply "[i]f the Court determines that there was no contract [and thus] there is no other remedy at law to correctly compensate Plaintiffs for the value of the work performed." Doc. 103-1 at 33.

Defendant's arguments as to unclean hands attempt to raise an equitable theory to reach an inequitable result. Sections IV.C. and D. of Defendant's Response conflate two distinct legal concepts: nullity of a contract and unclean hands, and essentially make the same argument that Plaintiffs are somehow blocked from recovery due to their "acceptance" of the contract by working for Defendant.[12] Unclean hands is a defense to claims brought in equity, such as unjust enrichment, and does not apply to contract claims, s*ee* La. Civ. Code art. 4, although La. Civ. Code art. 2033 provides a corollary to the unclean hands defense if a party *knew* of a nullity at the time of contracting. *See* Comments (c-d) to La. Civ. Code art. 2033. "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." La. Civ. Code art. 2030. Because Plaintiffs and Defendant agree an employment contract existed, the Court need not address Defendant's arguments as to unclean hands and unjust enrichment.[13] Defendant's arguments regarding nullity fail because: Plaintiffs actually seek to enforce, not nullify, Defendant's promise to pay the highest applicable wage; merely entering into a contract

---

[12] Defendant argues in Section IV.D. of its Response that Plaintiffs cannot show impoverishment, an element of unjust enrichment, because any impoverishment was the result of their own fault or negligence. *See* Doc. 116-1 at 15. This argument overlaps with Defendant's unclean hands argument in Section IV.C, addressed herein. Plaintiffs have already proven all elements of unjust enrichment in their Motion for Partial Summary Judgment. Doc. 103-1 at 32–35.

[13] Even were the Court to reach the unclean hands argument, it would not bar Plaintiffs' recovery for unjust enrichment. "A party has 'unclean hands' if he engaged in reprehensible conduct, an illegal or immoral act, or a course of conduct naturally calculated, if not deliberately intended, to cause the very conditions that led the other party to seek equitable relief." *Marshall v. Franklin,* 370 So.3d 486, 494 (La.App. 1 Cir. 2023), citing *H&E Equipment Servs, Inc. v. Sugar & Power Int'l, LLC*, 215 So.3d 446, 450 (La. App. 1st Cir. 2017). Plaintiffs' actions of receiving the H-2A visas for which Defendant had submitted a petition and performing the work assigned by Defendant do not rise to this level. Plaintiffs were merely beneficiaries of the H-2A visas Defendant had already obtained. *See supra* p.1-3. Thus, the actions of Defendant, not Plaintiffs, led to the misclassification of Plaintiffs' work, because Defendant applied for and obtained H-2A visas for Plaintiffs and then, once Plaintiffs traveled to Louisiana and began work for Defendant, Defendant assigned Plaintiffs to tasks that did not constitute agricultural labor. *See Palowsky v. Cork*, 337 So.3d 550 (La.App. 5th Cir. 2022) (declining to apply unclean hands doctrine as a complete bar to recovery because comparative fault rules applied).

---

does not estop a party from recovering for breach or at equity; and denying recovery to Plaintiffs for an employment relationship created and controlled by Defendant would lead to an unconscionable and inequitable result.

First, the entirety of the contracts between Plaintiffs and Defendant is not null, because they were formed for a valid object for lawful cause, providing labor in exchange for wages. *See* Doc. 103-1 at 36. Furthermore, nullity is an affirmative defense that Defendant failed to plead or carry its burden on, and thus it is waived.[14] Rather than invalidate an entire contract that is otherwise valid, a Court may find that just a provision is null. *See* La. Civ. Code art. 2034. Plaintiffs argued as much in their Motion for Partial Summary Judgment, that to the extent Defendant argues it only promised to pay the AEWR, as part of a broader H-2A employment contract, that wage rate provision is unenforceable, and the Court should supply instead the federal minimum wage, which was the OEWS rate, promised in the contract. *See* Doc. 103-1 at 36–42; La. Civ. Code Art. 2054. However, Defendant did not promise to only pay the AEWR. It promised to pay "the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage." *See supra* p. 9–10; Doc. 103-2 Fact 148. Plaintiffs accepted these minimum terms guaranteed in all H-2A contracts, and now pursue breach of contract claims because Defendant failed to pay the highest applicable wage rate for the work assigned.

---

[14] Nullity, or illegality of a contract, is an affirmative defense and the party asserting it carries the burden of proof. *See Maroulis v. Entergy Louisiana, LLC*, 314 So. 3d 1002, 1006, (La. App. 5 Cir. 2021), rev'd on other grounds, 317 So. 3d 316 (La 2021). Defendant did not assert nullity or illegality of contract as one of its 40 affirmative defenses, *see* Doc. 81, and thus it has waived the defense at this late stage. Nor has Defendant proven how this employment contract was illegal.

Second, Plaintiffs are not estopped from enforcing the contract because they "accepted" the terms of the contract. *See* Doc. 116-1 at 19. Although Defendant uses the terms interchangeably, acceptance does not mean waiver of rights or knowledge of the nullity of an accepted term. Defendant seems to illogically argue that because Plaintiffs accepted the terms of the work contracts, they cannot now sue for breach of that contract. This cannot be true, because claimants for breach of contract must always show acceptance of the contract. Doc. 103-1 at 35–36, citing La. Civ. Code art. 1927. As to each Plaintiff's knowledge of the nullity of the contracts' terms, Defendant cites deposition testimony of only one out of thirty-one Plaintiffs, and the testimony cited simply does not establish or even create a fact issue that any Plaintiff knew of the purported nullity, or illegality, of any term of the contract based on the nuanced legal determinations of what constitutes agricultural labor or the correct OEWS wage rate applicable to the labor actually assigned to Plaintiffs. Finally, and most importantly, as detailed in Section I above, pursuant to 29 C.F.R. § 501.5 (Waiver of Rights Prohibited), Plaintiffs cannot waive H-2A rights and, therefore, no "acceptance" or alleged knowledge of the defects of the contracts could bar Plaintiffs' claims for breach of contract. *Cf. Palowsky,* 337 So.3d at 555 ("[W]hen legislation exists to address the subject at hand, courts may not resort to equitable concepts to reach a decision."). Applying the equitable concepts raised by Defendant to bar Plaintiffs, who do not have control of the H-2A process or their actual terms and conditions of employment, from recovery would lead to an unconscionable result that also conflicts with clear public policy interests of the FLSA and H-2A program. *See* Doc. 103-1 at 28–32.

Third, and relatedly, even were the contracts null *and* Defendant could establish that Plaintiffs had knowledge of that nullity at the time the contracts were formed,[15] Louisiana law still provides for recovery of performance rendered "if denial of recovery would leave the object of that performance in the hands of one whose control of it would be contrary to the public interest." Comment (g) to La. Civ. Code art. 2033. In analogous cases, Louisiana courts award damages for services and material rendered to unlicensed construction contractors.[16] *See, e.g., Boxwell v. Department of Highways,* 203 La. 760 (La. 1943). Relevant factors include whether the purpose of the laws creating invalidity of the contract would be furthered by denying payment for services rendered and whether the party seeking to avoid payment is equally, or more, at fault. *See Hagberg v. John Bailey Contractor*, 435 So.2d 580, 586-87 (La. App. 3 Cir. 1983) ("The purpose of the licensing requirements is the protection of the general public 'against the incompetent, inexperienced, unlawful and fraudulent acts of contractors.'. . . Where incompetency or inexperience or fraudulence is not involved, the licensing statute can not be

---

[15] Short of proving a party knew of nullity, Louisiana law unequivocally provides for recovery. Comment (d) to La. Civ. Code art. 2033 ("Under this Article, a party who has performed in ignorance of the fact or facts giving rise to an absolute nullity may invoke it to recover either his performance or the equivalent of his performance.").

[16] Even in *Quaternary Resource Investigations, LLC v. Phillips*, 316 So.3d 448, 467-71 (La. App. 1 Cir. 2020), cited by Defendant, despite knowledge of the contract's nullity, the court *did award damages* to the homeowners to remedy the unlicensed construction contractor's defective work, (and, conversely, in denying additional recovery for the contractor, the court emphasized the substandard work, prevention of which is one of the purposes behind the Louisiana licensing law). While holding that the homeowners were not entitled to reimbursement of amounts already paid, the court noted that the homeowner was highly educated, possessing "an undergraduate degree in aeronautical engineering and a master's degree in industrial hygiene and environmental science," and was a "certified industrial hygienist and a certified safety professional." *Id.* at 468-70. Likewise, in *Bamburg Steel Buildings, Inc. v. Lawrence General Corp.*, 817 So.2d 427, 428-29 (La. App. 2 Cir. 2002), in which the construction company entered into a contract with a private party and then sought to invalidate the contract in order to recover from a public party, the court noted as a critical factor the construction company's experience in the industry. Moreover, in mixing together equity and contract arguments, *Bamburg*'s short discussion does not consider the public interest exception to La. Civ. Code art. 2033.

---

invoked to avoid payment of valid charges." and "It would, therefore, be unconscionable to permit Bailey to deny payment to Hagberg because Hagberg did not have a valid Louisiana contractor's license when it was Bailey who had the correlative responsibility of confirming that Hagberg was a licensed subcontractor.").

Here, the purpose of the H-2A regulations specifying minimum wages is to protect U.S. workers and H-2A visa recipients (and to protect other employers who pay workers the proper market rate from the unfair advantage gained by unscrupulous employers like Defendant profiting off of unlawfully low labor costs paid to foreign workers). Doc. 103-1, Section III, at 18–32. Denying Plaintiffs recovery of the correct applicable wage rate would not further these clear public policy goals. *Cf.* La. Civ. Code art. 2031 ("A contract is relatively null when it violates a rule intended for the protection of private parties . . . Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own."). As in *Hagberg*, it would be unconscionable and inequitable for Defendant to avoid liability for payment of the correct wage rates when it solely created and controlled the terms of employment that determined whether Plaintiffs work constituted agricultural labor. *See Hagberg,* 435 So.2d at 587 ("The crux of our consideration is that the licensing rules are not intended to permit the impoverishment-enrichment presented by the case at bar. For us to mechanically apply the general rule would result in inequity.").  While Defendant attempts to put Plaintiffs in the place of two business or property owners contracting for the performance of large projects, they are not. They are the construction workers on those jobs, and it is precisely because of their limited bargaining position that waiver of their rights under the FLSA or H-2A program is prohibited.

## CONCLUSION

For the reasons stated herein, the Court should deny Defendant's motion for partial summary judgment [Doc. 116], and should grant Plaintiffs' motions for partial summary judgment [Docs. 103 and 118].

Respectfully submitted,

*/s/ Caitlin Berberich*
Caitlin Berberich, TN Bar No. 025780
*Trial Attorney
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org

*/s/ Nicole Bucheri*
Nicole Bucheri, TX Bar No. 24095388
*Admitted Pro Hac Vice*
TEXAS RIOGRANDE LEGAL AID, INC.
316 S. Closner Blvd.
Edinburg, TX 78539
Telephone: (956) 982-5552
Facsimile: (956) 591-8752
nbucheri@trla.org

*/s/ Daniel Davis*
Daniel Davis, LA No. 30141
*Admitted to Practice in W.D. La.*
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
dan@estesdavislaw.com

ATTORNEYS FOR PLAINTIFFS