UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Artemio Alvarez Barron, et. al.,<br>Plaintiffs | Civil No.   6:21-cv-03741 |
| VS.<br>Sterling Sugars Sales Corporation<br>Defendant | Judge   Summerhays<br>Magistrate Judge   Ayo |

**PRETRIAL ORDER**

Trial Date:                                    Monday, March 4, 2024

Pretrial Conference Date:              Tuesday, February 20, 2024 1:30 PM

Type of Trial:                               Bench

Estimated Length of Trial:            5 days if Plaintiffs' testimony is presented by deposition transcript; 3 weeks with each of 31 Plaintiffs' live testimony. Defendant anticipates a 3-5 day bench trial regardless of how Plaintiffs' testimony is presented.

| Trial Attorney Attending: | Party/Claim Represented: |
|---|---|
| Caitlin Berberich | All Plaintiffs/All Claims |
| Nicole Bucheri | All Plaintiffs/All Claims |
| Brandon E. Davis | Defendant/All Defenses to All Claims |
| Marcellus D. Chamberlain | Defendant/All Defenses to All Claims |

1.      **Jurisdictional Basis**

Jurisdiction is conferred by 29 U.S.C. §216(b), this action arising under the Fair Labor Standards Act ("FLSA"); by 28 U.S.C. §1331, this action arising under the laws of the United States; and 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law claims.

2.      **Claims and Responses**

**Count I (FLSA Overtime Claims)**

Plaintiffs allege that Defendant failed to pay Plaintiffs the federally mandated overtime pay of time and a half of the regular rate for hours worked in excess of 40 hours a workweek under the Fair Labor Standards Act (FLSA), 29 U.S.C. §207(a). Plaintiffs seek compensatory damages for their unpaid overtime wages and an equal amount in liquidated damages, as well as attorney's fees, pursuant to 29 U.S.C. § 216(b).

An employee bringing an action for unpaid overtime compensation must demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

Plaintiffs are not exempt from receiving overtime compensation. The work Plaintiffs performed for Defendant does not qualify as "agriculture" under the FLSA, which exemption is Defendant's burden to prove. The work Plaintiffs performed is not primary agriculture under the FLSA, because they were not cultivating or tilling soil, or cultivating, growing, or harvesting an agricultural commodity. *See* 29 U.S.C. § 213(f); 29 C.F.R. § 780.105(b); *Wirtz v. Osceola Farms Co.*, 372 F.2d 584, 587–90 (5th Cir. 1967); *Bayside Enterprises, Inc. v. N.L.R.B.*, 429 U.S. 298, 300–01 (1977); *Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 398 (1996). Nor was the work secondary agriculture, because it was not performed for a farmer, on a farm, or incidental to or in conjunction with such farming operations. *See* 29 C.F.R. § 780.105(c); *Osceola Farms*, 372 F.2d at 586–89.

Plaintiffs are entitled to a 3-year statute of limitations for their FLSA claims because Defendant's failure to pay overtime was willful pursuant to 29 U.S.C. § 255. A violation is "willful" if the employer either "knew or showed reckless disregard" for "whether its conduct was prohibited by the statute." *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Further legal support for this claim is included in the attached Exhibit, Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

**Defendant's Response:** In rebuttal, Defendants submit the United States Department of Labor ("DOL") issued temporary employment certification to Defendant during the time periods relevant to this case and determined Defendant's job duties warranted temporary employment certification pursuant to the Labor Certification Process for Temporary Agricultural Employment in the United States pursuant to 20 C.F.R. 655.100 *et seq.* A temporary agricultural labor certification issued under that subpart reflects a determination by the Secretary of Labor, pursuant to 8 U.S.C. 1188(a), that (i) there are not sufficient able, willing, and qualified United States workers available to perform the agricultural labor or services of a temporary or seasonal nature for which an employer desires to hire temporary foreign workers (H–2A workers); and (ii) the employment of the H–2A worker(s) will not adversely affect the wages and working conditions of workers in the United States similarly employed. Subpart B of Title 20 of the Code of Federal Regulations sets forth the procedures governing the Labor Certification Process for the temporary employment of foreign workers in the H–2A nonimmigrant classification, as defined in 8 U.S.C. 1101(a)(15)(H)(ii)(a). It also establishes standards and obligations with respect to the terms and conditions of the temporary agricultural labor certification with which H–2A employers must comply, as well as the rights and obligations of H–2A workers and workers in corresponding

-3-

employment. Additionally, Subpart B sets forth integrity measures for ensuring employers' continued compliance with the terms and conditions of the temporary agricultural labor certification.

Defendant denies Plaintiffs' factual allegations concerning liability for Plaintiffs' FLSA overtime claims. It is Defendant's position that Plaintiffs worked in occupations classified by the Secretary of Labor and were each paid according to the Temporary Employment Certifications the Secretary of Labor issued after Defendant complied with the Labor Certification Process for Temporary Agricultural Employment in the United States pursuant to 20 C.F.R. 655.100 *et seq*. As such, any alleged violation of FLSA that post-dates the performance of employment agreements at issue was neither willful, nor in bad faith. Defendant contends Plaintiffs lack sufficient evidence to establish a violation of 29 U.S.C. § 216(b).

Defendant acted in good faith with respect to its efforts to comply with the Fair Labor Standards Act. Notably, Defendant has never been subjected to a Department of Labor investigation for violating H-2A regulations or the FLSA. *See, e.g.*, *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018 (5th Cir. 1993). And the Department of Labor has never revoked any of the job clearance orders at issue in this litigation. *See* 20 C.F.R. § 655.181 ("Revocation") (outlining procedure to revoke a temporary labor certification obtained by means of "fraud or misrepresentation in the application process"). Further, before the Department of Labor issued its Final Rule, codified at 20 C.F.R. § 655.120(b), the Department of Labor consistently determined that the job duties described in the job clearance orders at issue were to be classified under the "Agricultural Equipment Operator" SOC.

Further legal support for this position is included in Defendant's Proposed Findings of Fact and Conclusions of Law, attached as Exhibit "D-1."

**Count II (Breach of Employment Contract)**

Under Louisiana law, "the 'elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages.'" *Payphone Connection Plus, Inc. v. Wagners Chef*, LLC, 276 So. 3d 589, 595 (La. App. 2019) (quoting *S. Jefferson Davis Parkway, LLC v. Williams*, 165 So.3d 1211, 1216 (La. App. 2015). Defendant obtained Plaintiffs' employment through the federal H-2A program, *see* 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47, by filing temporary employment certification applications and accompanying clearance orders. 20 C.F.R. § 655.130 and 655.121(a)(1). Plaintiffs allege these documents constituted a valid employment contract containing the material terms of Plaintiffs' employment for Defendant, *see* 20 C.F.R. §§ 655.120, 655.122 and 655.135, and that Defendant breached these contracts, for which Plaintiffs seek compensatory damages.

In the clearance orders, which served as the employment contracts, Defendant promised to pay Plaintiffs the highest of the prevailing wage, AEWR, or federal or state minimum wage. *See* 20 C.F.R. § 655.120. The clearance orders, which were approved for agricultural work through the H-2A agricultural program, did not specify the wage rate to be paid for *non*-agricultural work. Plaintiffs allege that because Defendant assigned them to perform non-agricultural work, the Court must supply the wage term for non-agricultural work with the fair value of Plaintiffs' labor, sufficient to fulfill the public purposes of the federal H-2 programs. *See e.g., Tallulah Const., Inc. v. Ne. Louisiana Delta Cmty. Dev. Corp.*, 2007-1029 (La. App. 4 Cir. 4/23/08), 982 So. 2d 225, 233. This wage rate was the federal minimum wage for guestworkers employed in temporary non-agricultural jobs, which would be the OEWS prevailing wage rate as calculated by the Bureau of Labor Statistics. 20 C.F.R. § 655.10(b). Between 2018-2022 the AEWR rate that Defendant paid Plaintiffs ranged from $10.73-$12.45 per hour. Because the applicable OEWS wage rates were

higher than the AEWR each year, Defendant is in breach of the employment contract with Plaintiffs by failing to pay the higher wage applicable to *the type of work performed*. An H-2A contractual term purporting to only pay the AEWR, an agricultural wage rate, for non-agricultural work is void as contrary to the explicit public policy interests of the federal H-2A and H-2B programs. 29 C.F.R. § 501.5; 20 C.F.R. §§ 655.100, 655.0(a), and 655.103(a).

Further legal support for this claim is included in the attached Exhibit, Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

**Defendant's Response**: Plaintiffs cannot carry their burden of establishing breach of contract because they "accepted the terms of their contract[s] by traveling to the United States and working for Defendant in the jobs authorized by their H-2A visas." ECF No. 66, at ¶ 178. Thus, Plaintiffs' breach of contract claims fail as a matter of law pursuant to the doctrine of acceptance by performance. *See Whitehead v. Int'l Paper Co.*, No. 16-00176, 2018 WL 618944, at *4 (W.D. La. Nov. 27, 2018) (citing *Broussard v. Arthur Dooley & Son, Inc.*, 484 So.2d 795, 798 (La. App. 1 Cir. 1986) ("[u]nder Louisiana law, applicable to the contract at issue here, acceptance by performance is a sound theory of contract law, reflected in jurisprudence."); *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F. Supp. 171, 182 (W.D. La. 1985) ("Louisiana specifically allows acceptance by performance.") (citing La. C.C. art. 1939)).

This case concerns employment contracts that were lawfully entered and performed according to their terms and according to Plaintiffs' judicial confessions. Defendant complied with regulatory protocols when obtaining Temporary Employment Certification from the United States Department of Labor to employ Plaintiffs in H-2A status. At the time periods relevant to this case, the Secretary of Labor issued Temporary Labor Certification(s) permitting Defendant to employ Plaintiffs to complete job duties like operating combines, tractor-trailers, dump carts, and

-6-

excavators to harvest, cut, load, unload, and haul sugarcane to its mill-site. The application for temporary labor certification described Plaintiffs' job duties as follows: "job duties include harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop, loading pieces of sugarcane into wagons, loading/unloading sugarcane, **haul sugarcane**, repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment." The Secretary of Labor certified that these job duties warranted Approval of Temporary Labor Certification for the time periods at issue in this case and for the job clearance orders that had been presented.

Plaintiffs accepted the terms and conditions of employment certified by the Secretary of Labor and relied on those agency determinations when applying for H-2A visas to work for Defendant in the United States between 2019 and 2021. Plaintiffs allege breach and (somehow) claim that they were hired to complete different work than described in the job orders. As described in the job clearance orders, Plaintiffs were engaged to "operate…tractor-trailers…to haul sugarcane" to Defendant's mill-site, and Plaintiffs do not dispute that they worked hauling sugarcane to and from the various additional places of employment at issue in this case with respect to the "haul sugarcane" term.

On February 28, 2023, after the contracts at issue in this case were already performed, the United States Department of Labor issued a Final Rule, 88 Fed. Reg. 12,760 (Feb. 28, 2023), codified at 20 C.F.R. § 655.120(b) (the "Final Rule") and increased the minimum wages that must be paid to seasonal migrant guestworkers who engaged in hauling duties. "Under this final rule, if the job duties on the H-2A application (including the job order) constitute a combination of SOC codes that do not all fall within the field and livestock worker (combined) occupational grouping, the Department will determine the applicable adverse effect wage rate ("AEWR") based on the

-7-

highest AEWR among the SOCs assigned to the job opportunity." *Id.* at 12783. Further, "under this final rule the Department uses the AEWR methodology set forth in the 2010 Final Rule, *i.e.*, setting the annual AEWRs using the gross average hourly wage rate for field and livestock workers (combined) in the State or region, as reported by the FLS, when that data is available, for the following SOC codes: 45-2041--Graders and Sorters, Agricultural Products; 45-2091--Agricultural Equipment Operators; 45-2092--Farmworkers and Laborers, Crop, Nursery, and Greenhouse; 45-2093--Farmworkers, Farm, Ranch, and Aquacultural Animals; 53-7064--Packers and Packagers, Hand; and 45-2099-Agricultural Workers, All Other.

According to the Final Rule, the United States Department of Labor is now of the view that "where an employer's job opportunity involves a variety of duties, some of which are consistent with higher paid SOC codes in the State, territory, or equivalent area, the Department would not satisfy its statutory obligation if it were to establish the required wage floor for H-2A employers at a lower rate than the AEWR applicable to workers in the United States who perform work in the higher paid SOC code." Ultimately, "the AEWR methodology adopted in the Final Rule provides a minimum wage rate threshold that an employer must offer and pay a worker for performing the H-2A job opportunity, including those H-2A job opportunities that require a worker to perform a combination of tasks that cannot reasonably be classified within a single SOC code." 88 Fed. Reg. 12,760, at 12,778. Before the Final Rule became effective on March 30, 2023, the Department of Labor classified the combination of duties Defendant described under the "Agricultural Equipment Operator" Standard Occupational Classification code at rates that applied before the Final Rule was effective and changed the methodology. The United States Department of Labor has not revoked any of Sterling's ETA Form-790(s) (*i.e.*, the employment contracts) since the Final Rule was enacted.

PD.44451245.1

Further legal support for this position is included in Defendant's Proposed Findings of Fact and Conclusions of Law, attached as Exhibit D-1.

**Count III (Louisiana Wage Payment Act)**

Plaintiffs allege Defendant failed to pay Plaintiffs, as described in Counts I and II above, within 15 days of their resignation or discharge from employment the amounts due each of them under the terms of their employment, in violation of the Louisiana Wage Payment Act, La. Rev. Stat. 23:631(A)(1)(b). Plaintiffs allege Artemio Alvarez Barron and Carlos Pereyra Vidaña notified Defendant in writing of the amounts of unpaid wages owed to them and other similarly employed workers under the LWPA and demanded payment via a letter dated September 9, 2021. Defendant has not made any payments to Plaintiffs for the amounts of unpaid wages they are owed under the LWPA. As a result of Defendant's alleged violations of the LWPA, Plaintiffs are each entitled to recover their unpaid wages, as described in Counts I and II, along with penalty wages as prescribed by La. Rev. Stat. 23:632(A).

Further legal support for this claim is included in the attached Exhibit, Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

**Defendant's Response:** Defendant timely paid each Plaintiff the full wages they were legally entitled to under the terms and conditions of that alleged contract. Defendant further contends it timely paid each Plaintiff all amounts legally required under the job clearance orders, and any post-performance dispute concerning wages is bona fide. Courts cannot award penalty wages where a "bona fide dispute exists over the amount of wages due." *Kaplon v. Rimkus Consulting Grp., Inc., of La.*, 39 So. 3d 725, 733 (La. Ct. App. 4th Cir. 2010); La. R.S. 23:632 B; *Martco Partnership v. Frazier*, 01–72 (La. App. 3 Cir. 6/6/01), 787 So.2d 1196. Good faith is also an equitable defense to a claim for penalty damages under the LWPA, which protects employers

-9-

from owing penalty wages "[w]hen the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute." *See Carriere v. Pee Wee's Equip. Co.*, 364 So.2d 555, 557 (La. 1978); La. R.S. § 632.B. Accordingly, Plaintiffs' claims under the LWPA fail for the same reasons as their claims for willful FLSA violations.

Further legal support for this position is included in Defendant's Proposed Findings of Fact and Conclusions of Law, attached as Exhibit D-1.

**Count IV (Unjust Enrichment)**

Plaintiffs bring claims of unjust enrichment against Defendant pursuant to La. Civ. Code art. 2298 and seek a remedy of compensatory damages in the form of payment of the fair value of their labor, which they allege to be the OEWS wage rates paid to temporary foreign workers imported to perform non-agricultural H-2B jobs.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888 (La. 1995). Defendant was enriched, and Plaintiffs were correspondingly impoverished, by Defendant paying Plaintiffs the lower agricultural AEWR applicable to agricultural workers instead of the higher OEWS prevailing wage rate by occupational code for non-agricultural work they actually performed, as described in Count II above. There is a direct connection between the financial enrichment of Defendant in paying wages lower than the going rate for heavy truck drivers, light truck drivers, and mechanics in the area in Louisiana and Plaintiffs' impoverishment by being denied payment for the actual value of the

skilled, non-agricultural labor that they performed. There is no justification for Defendant having misrepresented the description of the work to be performed in their H-2A applications to USDOL.

Further legal support for this claim is included in the attached Exhibit, Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

**Defendant's Response:** Plaintiffs are precluded from recovery on their unjust enrichment claims because they have conceded that a "valid employment contract" existed between the parties and that the contract "contain[ed] all material terms of Plaintiffs' employment for Defendant." ECF No. 66, at ¶ 177. Under Louisiana law, "[N]o unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (citing *Edwards v. Conforto*, 636 So.2d 901, 907 (La. 1993)); *see also Ferrara Fire Apparatus, Inc. v. JLG Inds., Inc.*, 581 Fed. Appx. 440, 443-44 (5th Cir. 2014)); *see also* La. C.C. art. 2298 ("The remedy [of unjust enrichment] is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.").

Further, Plaintiffs cannot recover for unjust enrichment because they have unclean hands. *See* La. C.C. art. 2033 ("[A] party who knew or should have known at the time of contracting of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the illegal contract has been accomplished."). As a matter of law, Plaintiffs are estopped from recovering unjust enrichment damages because they admit that they applied for agricultural visas to enter the United States to work for Defendant for multiple years in the "Agricultural Equipment Operator" job classification. *Id.* All parties performed in accordance with the terms of the governing job clearance orders as contemplated and enjoyed the full benefit of their employment arrangement, and Defendant was not unjustly enriched by this employment arrangement.

-11-

PD.44451245.1

Further legal support for this position is included in Defendant's Proposed Findings of Fact and Conclusions of Law, attached as Exhibit D-1.

**3.      Issues of Fact and Issues of Law**

The disputed legal issues addressed in the parties' cross-motions for summary judgment— Docs. 103, 116, and 118— remain unresolved as of the filing of the pretrial order and are thus included here. Also unresolved are the parties' competing statements of undisputed material fact. A ruling on these motions would narrow the issues for trial. Regardless of whether an issue is characterized below as one of law or fact, the issue may be mixed.

Plaintiffs have suggested that the parties submit a revised statement of true issues of law and fact once the Court has ruled upon their cross-motions for summary judgment and the issues for trial have been narrowed.  Defendant does not agree to this proposal.  Accordingly, Defendant's "Issues of Fact" and "Issues of Law" are provided below.

**Plaintiffs' Issues of Fact**

Plaintiffs' position is that, with one exception, there are no genuine issues of material fact and that Defendant has not presented evidence to dispute any of the material facts contained in Plaintiffs' Statements of Undisputed Material Facts, Docs. 103-2 and 118-2, thereby failing to meet the requirements of Local Rule 56.2.

The one exception is whether Defendant consulted attorney Ashley Foret Dees regarding whether Plaintiffs were employed in "agriculture" within the meaning of the FLSA and were exempt from overtime and, if Defendant did so consult, whether it relied on the advice of Dees in electing not to pay Plaintiffs overtime. This issue is the subject of pending motions to quash and to compel. *See* Docs. 62, 68, 69, 80, and 88.

**Defendant's Issues of Fact**

There are two primary questions of fact in this lawsuit: (1) whether Defendant complied with the overtime provisions of the FLSA, and (2) whether Defendant willfully violated the FLSA.[1] No evidence supports Plaintiffs' assertions of perjury concerning the various Approval(s) of H-2A Temporary Labor Certification at issue in this case.  The Plaintiffs worked according to the job duties described in the Temporary Employment Certification(s) issued in this case.  The only wage rates applicable to Sterling were those determined by the Secretary of Labor in the job clearance order(s) approved in this case.

**Plaintiffs' Issues of Law**

1. Whether the work performed by Plaintiffs for Defendant qualifies as "agriculture" as defined by the FLSA, 29 U.S.C. § 203(f).

2. Whether the work performed by Plaintiffs for Defendant qualifies as "agricultural labor or services" under the H-2A program. 20 C.F.R.§ 655.103(c).

3. Whether Defendant violated the FLSA, 29 U.S.C. § 207(a), by failing to pay Plaintiffs overtime as required by the FLSA.

4. Whether Defendant knew or showed reckless disregard for whether its failure to pay overtime to Plaintiffs was prohibited by law, i.e., whether Defendant's failure to pay overtime was "willful" within the meaning of the FLSA, 29 U.S.C. § 255(a).

5. Whether Defendant, to mitigate liability for liquidated damages under 29 U.S.C. § 260, has met its substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.

6. Whether Defendant breached its H-2A contracts with Plaintiffs by assigning Plaintiffs to perform non-agricultural work as heavy truck drivers, light truck drivers, and mechanics.

7. Whether Defendant breached its H-2A contracts with Plaintiffs by failing to pay them the required wage under 20 C.F.R. § 655.122(l) and 20 C.F.R. § 655.120(a).

---

[1] Defendant's Proposed Findings of Fact and Conclusions of Law are attached hereto as Exhibit D-1, and Defendant incorporates by reference its Statement of Undisputed Material Facts, attached as Exhibit "A" to Defendant's Motion for Partial Summary Judgment [ECF No. 116-2].  All other issues are either legal issues or mixed issues of fact and law.

-13-

8. Whether Defendant breached its H-2A contracts with Plaintiffs by failing to pay them overtime as required by the FLSA, 20 C.F.R. § 655.135(e).

9. What wage rate is the fair value of Plaintiffs' labor in an employment contract governed by the H-2A program that did not specify a wage rate for non-agricultural work.

10. Whether the Louisiana Wage Payment Act (LWPA) required Defendant to pay Plaintiffs overtime compensation and the fair value of their labor, the highest applicable minimum wage under federal law for the type of work actually performed, within 15 days of the end of Plaintiffs' employment.

11. Whether Plaintiffs are entitled to penalty damages under the LWPA, La. Rev. Stat. 23:632(A).

12. If the Court finds that there was no valid contract between the parties, whether under Louisiana law, Defendant failed to pay Plaintiffs the fair value of their labor, causing Defendant to be unjustly enriched.

13. Whether the certification by the U.S. Department of Labor, in reliance upon job descriptions and other information drafted by Defendant, of Plaintiffs' jobs as "agricultural equipment operators" relieves Defendant of any liability to Plaintiffs.

14. Whether Defendant has met its burden of proving the defense that equitable estoppel bars any of Plaintiffs' claims.

**<u>Defendant's Issues of Law</u>**

1. Whether Plaintiffs have met their burden for proving breach of contract under Louisiana law in light of their judicial confession that they "accepted the terms of their contract[s] by traveling to the United States and working for Defendant in the jobs authorized by their H-2A visas."  ECF No. 66, at ¶ 178.

2. Whether the Final Rule, 88 Fed. Reg. 12,760 (Feb. 28, 2023), codified at 20 C.F.R. § 655.120(b) (the "Final Rule"), applies prospectively.

3. Whether principles for computing overtime pay based on the "regular rate" apply to Plaintiffs' FLSA claim.  29 C.F.R. § 778.107.

4. Whether overtime must be compensated at a rate not less than one and one-half times the "regular rate" at which the employee is employed.

5. Whether the "regular rate" of pay can "be left to a declaration by the parties as to what is to be treated as the 'regular rate' for an employee."  29 C.F.R. § 778.108 ("The 'regular rate' of pay under the Act cannot be left to a declaration by the parties as to what is to be

-14-

treated as the regular rate for an employee."); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945) ("Once the parties have decided upon the amount of wages and the amount and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts.").

6. Whether the regular hourly rate of pay for an employee is determined by dividing his "total renumeration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (providing that "overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek[…]").

7. Whether Defendant complied with the Labor Certification Process for Temporary Agricultural Employment in the United States.

8. Whether Plaintiffs are estopped from modifying employment agreements that they have already performed. *See* La. C.C. art. 1939.

9. Whether job clearance orders should be revoked outside of the regulatory scheme set forth in 20 CFR § 655.100 *et seq*.

10. Whether Plaintiffs' application for admission to the United States in H-2A status precludes post-admission claims of breach concerning the job clearance orders relied upon for admission.

11. Whether Plaintiffs raised a bona fide dispute concerning wages during the time period(s) when the job clearance orders were being performed.

12. Whether the Secretary of Labor determined and certified wage rates for Plaintiffs' employment according to methodologies applicable during time periods relevant to the Complaint, First Amended Complaint, and Second Amended Complaint.

13. Whether Plaintiffs' FLSA claims are subject to a two-year statute of limitations. 29 U.S.C. § 255.

14. Whether Defendant is liable to compensate Plaintiffs for wages allegedly due and owing for post-joinder time periods.

-15-

4.      **Stipulations**

Plaintiffs provided Defendant with proposed stipulations on January 22, 2024. The parties

discussed some of them at the January 22, 2024 meeting of counsel to complete the pretrial order.

Defendant sent its proposed stipulations to Plaintiffs today, February 13, 2024.  As the parties have

not had the opportunity to review or reach agreement on these proposed stipulations, the parties

have instead attached hereto each of their separate proposed stipulations.


5.      **Will Call Witnesses**

For Plaintiffs:

| Witness | Subject |
|---|---|
| Randall Romero | All claims and defenses of the parties |
| Rivers Patout | All claims and defenses of the parties |
| Desiree Lange | Terms and conditions of Plaintiffs' and similarly situated employees' employment with Defendant and Defendant's employment policies and practices, including administrative, pay, and recordkeeping practices |
| Tim Soileau | Terms and conditions of Plaintiffs' and similarly situated employees' employment with Defendant and Defendant's employment policies and practices, including pay and recordkeeping practices and supervision of H-2A workers |
| Ashley Foret Dees | Content and processing of Defendant's H-2 applications and job orders, and related communications, including those concerning compliance with the law |
| John Dees | Defendant's business relationship with Great Labor, LLC, recruitment, transportation of workers for Defendant's operations, and communications with government agencies regarding H-2A workers |
| Jose Santos Maldonado | Recruitment, hiring, and transportation of Plaintiffs and other workers; communications with workers regarding their employment by Defendant and this lawsuit |
| Melchor Maya | Recruitment, hiring, and transportation of Plaintiffs and other workers; communications with workers regarding their employment by Defendant and this lawsuit |
| All Plaintiffs: | the factual basis of their claims and Defendant's defenses in this lawsuit, including the terms and conditions of their |

PD.44451245.1

| | |
|---|---|
| Artemio Alvarez Barron | employment such as the hours worked and type of work performed, Defendant's employment policies and practices, Defendant's pay practices, and the damages they suffered as a result of Defendant's actions |
| Carlos Ernesto Pereyra Vidaña | |
| Miguel Martinez Villalobos | |
| Jesus Lamberto Ramirez Lopez | |
| Carlos Alfredo Ramírez Fernández | |
| Daniel Valenzuela Chavez | |
| Alfredo Valdez Rodriguez | |
| Julio Santiago Villegas Sifuentes | |
| Felipe de Jesus Suarez Palafox | |
| Pedro Abel Jiménez González | |
| Jesus Ivan Ramirez Fernandez | |
| Jesús Pedro Zazueta Ochoa | |
| Arnulfo Villegas Miranda | |
| Jesús Alfredo Parra Martínez | |
| Felipe de Jesús Meza Dimas | |
| Francisco Javier Chaires Mendoza | |
| Hector Martinez Arellano | |
| Hibys Alberto Vega Guerrero | |

-17-

| | |
|---|---|
| Israel Diaz Meza | |
| Javier Avila Soto | |
| Jesús Antonio Rodríguez Penuelas | |
| Jesús Ignacio Diaz Castro | |
| Oscar Rene Velez Sandoval | |
| Ricardo Guadalupe Arce Ruiz | |
| Teresa de Jesus Sanchez Gonzalez on behalf of Valentin Valenzuela Flores | |
| Margarita Valenzuela Urias on behalf of Jesus Adulfo Lopez Osuna | |
| Oscar Javier Ruiz Pacheco | |
| Pedro Daniel Romero Ruelas | |
| Fabian Flores Garcia | |
| Julian Cristobal Francisco Mendez | |
| Juan Alejo Hernández Canela | |
| Cynthia Farias | Process for creating summary spreadsheets consolidating voluminous payroll information, including those attached as Exhibit 4 to Plaintiffs' Motion for Partial Summary Judgment, Docket Entry 103-5 |

6. **May Call Witnesses**

For Plaintiffs:

-18-

| Witness | Subject |
|---|---|
| Aracely Zamorano | Terms and conditions of Plaintiffs' and similarly situated employees' employment with Defendant and Defendant's employment policies and practices, including pay and recordkeeping practices |
| London Crochet | Defendant's administrative, pay, and recordkeeping practices |
| Soraya Macias | Defendant's administrative, pay, and recordkeeping practices |
| Kimberly Broussard | Defendant's administrative, pay, and recordkeeping practices |
| Michelle Prados | Defendant's administrative, pay, and recordkeeping practices |
| Jamie Robinson | Terms and conditions of Plaintiffs' and similarly situated employees' employment with Defendant and Defendant's employment policies and practices, including supervision of H-2A workers |
| Roddy Patout | Terms and conditions of Plaintiffs' and similarly situated employees' employment with Defendant and Defendant's employment policies and practices, including supervision of H-2A workers |
| Jovanna Perez | Defendant's business relationship with Great Labor, LLC, recruitment, transportation of workers for Defendant's operations, and communications with government agencies regarding H-2A workers |

For Defendants:[2]

| Witness | Subject |
|---|---|
| All Plaintiffs | Terms and conditions of Plaintiffs' employment with Defendant and Plaintiffs' admission to enter the United States to work for Defendant in H-2A status |
| Randall Romero | All claims and defenses of the parties |
| Rivers Patout | All claims and defenses of the parties |
| Desiree Lange | Terms and conditions of Plaintiffs' employment with Defendant and Defendant's employment policies and practices, including administrative, pay, timekeeping, and wage record-keeping practices |
| Tim Soileau | Terms and conditions of Plaintiffs' and similarly situated |

---

[2] Given Plaintiffs' presentation of fact and law and the posture of the case at present, Defendant is only able to anticipate witnesses that it may call.

-19-

| | employees' employment with Defendant and Defendant's employment policies and practices, including pay and recordkeeping practices and supervision of H-2A workers |
|---|---|

## 7.   Exhibits

See separate attachments for each of Plaintiffs' proposed trial exhibits and Defendant's proposed trial exhibits.

## 8.   Objections to Witness and Exhibit Lists

Defendant objects to the following exhibits to be proposed by Plaintiffs:

a. P-12.     SSSC Field Worker Lists, Bates SSSC 4309– 4311 (see Doc. 103-48) (Fed. R. Evid. 401, 402, and 403(b)).

b. P-15.     Prevailing Wages printed from OEWS Database, for Southwest Louisiana nonmetropolitan areas for SOC 53-3032 for July 2018-June 2022; SOC 53-3033 for July 2018-June 2022; and SOC 49-3031 for July 2020-June 2022. (Fed. R. Evid. 801(c) and 901).

c. P-22.     SSSC Updated Privilege Log (Fed. R. Evid. 401, 402, 403(b), and 502).

d. P-31.     Audio File, Jose Santos Maldonado, Bates P2093 & P3509 (Fed. R. Evid. 602, 801(c), and 901).

e. P-32.     Audio File, Jose Santos Maldonado, Bates P3511 (Fed. R. Evid. 602, 801(c), and 901).

f. P-39.     Emails between Tim Soileau and Ashley Foret Dees, Bates SSSC 1880-81 (Fed. R. Evid. 403(b) and 502).

g. P-41.     Email from Dees to Patout, July 26, 2019 (Fed. R. Evid. 403(b) and 502).

h. P-42.     Correspondence between Great Labor/John Dees and Melchor Maya, Sept. 10, 2021, Bates GL0528 (Fed. R. Evid. 401, 402, and 403(b)).

i. P-43.     Text message from Melchor Maya to WhatsApp Group, Bates P2091 (Fed. R. Evid. 401, 402, and 403(b)).

PD.44451245.1

j.  P-44.        Audio File, Bates P2094 (Fed. R. Evid. 401, 402, 403(b), 602, and 801(c)).

k.  P-47.        Email from Soileau to Dees, Sept. 6, 2019, Bates SSSC 1482 (Fed. R. Evid. 401, 402, 403(b), and 502).

l.  P-48.        Email from Jovanna Perez to Maldonado, Aug. 11, 2021, Bates GL 0279–80 (Fed. R. Evid. 401, 402, 403(b)).

m.  P-49.        Email from Dees to Maldonado, Aug. 21, 2019, Bates GL 077-78 (Fed. R. Evid. 401, 402, 403(b), and 502).

n.  P-50.        Email from Dees to Maldonado, Sept. 12, 2019, Bates GL 077–78 ((Fed. R. Evid. 401, 402, 403(b), and 502).

o.  P-51.        Email from Dees to Maldonado, Oct. 4, 2019, Bates GL0056–57 (Fed. R. Evid. 401, 402, 403(b), and 502).

p.  P-57.        Plaintiffs' Licencias Federal (Fed. R. Evid. 401, 402, 403(b)).

q.  P-69        Chubb Insurance Policy, SSSC2141-2232 (Fed. R. Evid. 401, 402, and 403(b)).

r.  *Will Call Witness*:        Ashley Foret Dees (Fed. R. Evid. 401, 402, 403(b), and 502).

s.  *May Call Witness.*        Aracely Zamorano (Fed. R. Evid. 401, 402, 403(b) and 602).

t.  *May Call Witness:*        London Crochet (Fed. R. Evid. 401, 402, and 403(b)).

u.  *May Call Witness:*        Soraya Macias (Fed. R. Evid. 401, 402, and 403(b)).

v.  *May Call Witness:*        Jamie Robinson (Fed. R. Evid. 401, 402, 403(b), and 1002).

w.  *May Call Witness:*        Jovanna Perez (Fed. R. Evid. 401, 402, and 403(b)).

Plaintiffs only received Defendant's witness list and exhibit lists today, on February 13, 2024. Accordingly, Plaintiffs have not had the opportunity to review and prepare objections. Defendant has agreed to allow Plaintiffs through February 19, 2024 to prepare and file their objections, and Plaintiffs request that the Court allow them this extra time to provide these

-21-

PD.44451245.1

objections under the circumstances. Upon initial review, Plaintiffs do not anticipate objections to Defendant's witness list. Having not seen or had the opportunity to review Defendant's exhibit P-18 (Defendant's Quantum Analysis), Plaintiffs are not in a position to know whether they object, but anticipate that they may have objections. Plaintiffs may have objections to use of Plaintiffs' Deposition testimony, Exhibits D-13 through D-16, depending on which portions Defendant intends to use. However, Plaintiffs anticipate that their objections to the deposition testimony would primarily relate to relevance, Fed. R. Evid. 401, which issues can be resolved at trial.

Plaintiffs only provided Defendant with Plaintiffs' new Exhibit P-70 today, and likewise agree to providing Defendant through February 19, 2024 to identify its objections to this Exhibit.

**9.      Counsel Affirmations**

Counsel for all parties affirm that:

a.   They are aware that exhibits are to be published to the jury by use of the Visual Presenter or a portable data storage device (e.g., flash drive, CD-ROM, etc.) unless consent of this Court is obtained upon a showing of impracticality or prejudice.

b.   They are familiar with the operation of the electronic equipment available in the courtroom, or will schedule a training with the Electronic Coordinator for the Western District of Louisiana for training. Plaintiffs already received said training on January 26, 2024.

c.   Good faith settlement negotiations have been engaged in within one week prior to the pretrial conference.

d.   There is no need for handicap provisions that are provided by the Court.

-22-

PD.44451245.1

February 13, 2024          /s/ Caitlin Berberich_____
(Date)                        (Signature of Counsel)


February 13, 2024          /s/ Nicole Bucheri_____
(Date)                        (Signature of Counsel)


February 13, 2024          /s/ Daniel Davis_____
(Date)                        (Signature of Counsel)


February 13, 2024          /s/ Brandon E. Davis_____
(Date)                        (Signature of Counsel)


February 13, 2024          /s/ Marcellus D. Chamberlain_____
(Date)                        (Signature of Counsel)


Respectfully submitted,

/s/ Caitlin Berberich
Caitlin Berberich, TN Bar No. 025780
*Trial Attorney
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org


 /s/ Nicole Bucheri
Nicole Bucheri, TX Bar No. 24095388
*Admitted Pro Hac Vice*
TEXAS RIOGRANDE LEGAL AID, INC.
316 S. Closner Blvd.
Edinburg, Texas 78539
Telephone: (956) 982-5552
Facsimile: (956) 591-8752
nbucheri@trla.org


-23-

*/s/ Daniel Davis*
Daniel Davis, LA No. 30141
*Admitted to Practice in W.D. La.*
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
dan@estesdavislaw.com


ATTORNEYS FOR PLAINTIFFS


*/s/ Brandon E. Davis*
BRANDON E. DAVIS (#29823)
PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email: brandon.davis@phelps.com

*/s/ Marcellus D. Chamberlain*
MARCELLUS D. CHAMBERLAIN (#917498)
*Admitted Pro Hac Vice*
4270 I-55 North
Jackson, Mississippi 39211-6391
Telephone:  601-352-2300
Facsimile: 601-360-9777
Email: marcellus.chamberlain@phelps.com


ATTORNEYS FOR DEFENDANT


-24-