UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ARTEMIO ALVAREZ BARRON,** et al., and others similarly situated,<br><br>    **Plaintiffs,**<br><br>*v.*<br><br>**STERLING SUGARS SALES CORPORATION,**<br><br>    **Defendant**. | CIVIL ACTION No. 6:21-cv-03741<br><br>JUDGE ROBERT T. SUMMERHAYS<br><br>MAGISTRATE JUDGE DAVID J AYO |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs submit the following Proposed Findings of Fact and Conclusions of Law in accordance with the Court's scheduling order. *See* Doc. 71.

## PROPOSED FINDINGS OF FACT

1.      This case arises from a wage dispute involving Mexican nationals admitted to assist with four recent sugarcane grinding seasons in and around St. Mary Parish, in south central Louisiana.

2.      The south-central Louisiana sugar harvest and grinding season ordinarily extends from mid-September through mid-January. During this period, sugarcane is harvested from area fields and loaded into trucks for transport to sugar mills for processing. The sugarcane is transported from the fields to the mills in "heavy trucks," *i.e.*, those with a gross vehicle weight in excess of 26,001 pounds.

3.      Sugarcane is a perishable crop. The sugar content in the sugarcane diminishes with the passage of time. Ideally, sugarcane should be pressed in a sugar mill within 24 hours of being harvested.

1

4.      Sterling Sugars, LLC operates a sugar mill in Franklin, Louisiana where the harvested sugarcane from many area farms is milled and processed. Sterling Sugars, LLC is the sole owner of Defendant Sterling Sugars Sales Corporation. Sterling Sugars, LLC and Sterling Sugars Sales Corporation have the same officers. At all times relevant to this litigation, employees of Sterling Sugars, LLC managed Sterling Sugars Sales Corporation on a day-to-day basis.

5.      From at least 2017 up until January 2022, Defendant Sterling Sugars Sales Corporation ("SSSC") contracted with local sugarcane growers to transport their harvested sugarcane in heavy trucks from the fields to the Sterling Sugars, LLC mill for milling and processing. Most of this travel occurred over public highways rather than on farm property.

6.      SSSC has never itself been a sugarcane grower. SSSC did not plant, grow, cultivate, or own any of the sugarcane that its employees transported from the sugarcane fields to the Sterling Sugars, LLC sugar mill. SSSC did not obtain an ownership interest in any of the sugarcane it transported. During the four grinding seasons at issue in this litigation, SSSC was registered with the United States Department of Labor (DOL) as a farm labor contractor pursuant to the Migrant and Seasonal Agricultural Worker Protection Act.

7.      During the 2017-18 sugarcane grinding season, SSSC relied on U.S. workers to drive the heavy trucks carrying the harvested sugarcane from the growers' fields to the Sterling Sugars, LLC mill. SSSC paid these U.S. workers overtime wages, *i.e.,* 1.5 times their regular wage rate, for any hours worked in excess of 40 in a workweek.

8.      Beginning with the 2018-19 grinding season, SSSC began hiring foreign workers through the Immigration and Nationality Act's temporary agricultural worker program, commonly referred to as the "H-2A program," based on the provision of the INA authorizing the admission of

2

such guestworkers. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a). SSSC employed only H-2A workers during the 2018-19, 2019-20, 2020-21 and 2021-22 sugarcane grinding seasons.

9.    The H-2A program was created by the Immigration and Nationality Act, 8 U.S.C. § 1188, and is implemented through DOL regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of foreign workers to perform agricultural labor or services of a seasonal or temporary nature.

10.    To be able to hire H-2A workers, SSSC was required to file Applications for Temporary Employment Certification with the DOL. 20 C.F.R. § 655.130. SSSC filed Applications for Temporary Employment Certification to hire H-2A workers for employment as agricultural equipment operators during the 2018-19 (75 workers requested), 2019-20 (169 workers), 2020-21 (200 workers), and 2021-22 (203 workers on one clearance order and 6 workers on a separate clearance order) grinding seasons. These applications were prepared on SSSC's behalf by its agent, Ashley Foret Dees.

11.    As required by the H-2A regulations, 20 C.F.R. § 655.121(a)(1), each of these H-2A applications included a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. Applicants must certify that the job offer describes the actual terms and conditions of the employment being offered and contains all material terms of the job. 20 C.F.R. § 655.121(a)(3); 20 C.F.R. § 653.501(c)(3)(viii).  H-2A applications filed by labor contractors seeking to hire H-2A workers must also include a list of the fixed-site employers to which the contractor expects to provide H-2A workers. 20 C.F.R. § 655.132(b).

12.    The temporary labor certification applications filed by or on behalf of SSSC seeking agricultural equipment operators for employment during the 2018-19 sugarcane grinding season

stated that the job duties included repair/maintain/continued maintenance of hauling equipment; haul/load/unload sugarcane.

13.     The temporary labor certification applications filed by or on behalf of  SSSC seeking agricultural equipment operators for employment during the 2019-20, 2020-21, and 2021-22 grinding seasons stated that the job duties included harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment.

14.     In each of these H-2A applications filed by or on its behalf, SSSC identified itself as a labor contractor. As required by 20 C.F.R. § 655.132(b)(1), each of these applications included a list of the fixed-site agricultural businesses to which SSSC expected to provide H-2A workers obtained through the temporary labor certification.

15.     SSSC also filed a temporary labor certification application for the period from June 15, 2021 to January 31, 2022 for six agricultural equipment operators to perform the job duties including "diagnose, adjust, repair, wash, maintain, and/or overhaul farm and hauling equipment/machinery used for sugarcane season."

16.      As required by 20 C.F.R. §§ 655.120 and 655.122(l), each of the H-2A applications submitted by or on behalf of SSSC contained a promise that workers would be paid at least the hourly adverse effect wage rate, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, whichever is highest, for every hour or portion thereof worked during a pay period.

17.     Each of the H-2A applications submitted by or on behalf of SSSC also included an assurance, as mandated by 20 C.F.R. § 655.135(e) and 20 C.F.R. § 653.501(c)(3)(iii), that during the

4

employment periods encompassed in the applications, SSSC would comply with all applicable Federal and State laws and regulations, including the overtime provisions of the Fair Labor Standards Act.

18.    The DOL ultimately approved the H-2A applications filed by or on behalf of SSSC seeking agricultural equipment operators for employment during the 2018-19, 2019-20, 2020-21 and/or 2021-22 sugarcane seasons. Based on these temporary labor certifications, SSSC hired Mexican nationals to help fill the manpower demands described in its H-2A applications.

19.    Plaintiffs are among the Mexican nationals who were hired by SSSC as agricultural equipment operators at various points for employment during the 2018-19, 2019-20, 2020-21, or 2021-22 sugarcane seasons.

20.    Two Plaintiffs, Teresa de Jesus Sanchez Gonzalez and Margarita Valenzuela Urias, bring this action on behalf of their deceased husbands, Valentin Valenzuela Flores and Jesus Adulfo Lopez Osuna, respectively. In accordance with Louisiana Revised Statutes § 9:1515, these widows have established that no divorce proceedings had been initiated between the widows and their deceased spouses.

21.    Because there was no separate written contract between Plaintiffs and SSSC, the required terms of SSSC's job orders and certified H-2A applications served as Plaintiffs' employment contracts during their employment with SSSC. 20 C.F.R. § 655.122(q).

22.    Although SSSC's H-2A applications and job orders included a number of job duties, most Plaintiffs who were employed by SSSC worked exclusively driving heavy trucks to transport harvested sugarcane from growers' fields to Sterling Sugars, LLC's sugar mill for milling and processing. These heavy trucks were owned or leased by SSSC and each truck had a gross vehicle

weight of greater than 26,001 pounds. It was not unusual for Plaintiffs to transport multiple loads of sugarcane between independent growers' fields and the Sterling Sugars, LLC mill in a single day.

23. SSSC did not have an ownership interest in any of the farms that grew the sugarcane that Plaintiffs transported to the Sterling Sugars, LLC mill.

24. The heavy trucks driven by Plaintiffs were loaded in or adjacent to the independent growers' property with harvested sugarcane. The loading process usually took from 30 to 40 minutes, although it sometimes lasted shorter, or longer because of equipment breakdowns or other factors. This loading time constituted a small fraction of the drivers' time, with the vast majority of each driver's workday spent off farm property, transporting the sugarcane to Sterling Sugars, LLC's mill.

25. Defendant presented no evidence that Plaintiffs, or any other H-2A worker, was employed harvesting, cutting, or loading sugarcane while employed by SSSC.

26. While employed by SSSC, Plaintiff Jesus Alfredo Parra Martinez worked at the site of the Sterling Sugars, LLC mill. His job duties consisted of driving light trucks (less than 26,001 pounds gross vehicular weight) to move unloaded sugarcane within the mill premises.

27. Although their primary job duties were transporting sugarcane in heavy trucks from the fields of the independent growers to the Sterling Sugars, LLC mill, several other Plaintiffs worked for short periods performing tasks similar to those of Plaintiff Parra Martinez, *i.e.*, using light trucks to shuttle sugarcane within the mill's premises. This group of Plaintiffs consisted of Hector Martinez Arellano, Javier Avila Soto, Jesus Ignacio Diaz Castro, Oscar Rene Velez Sandoval, Fabian Flores Garcia, Arnulfo Villegas Miranda, Artemio Alvarez Barron, Daniel Valenzuela Chavez, Jesus I. Ramirez Fernandez, Jesus Pedro Zazueta Ochoa, Julio Santiago Villegas Sifuentes, and Miguel Martinez Villalobos.

28.     While employed by SSSC during the 2021-22 sugarcane season, Plaintiffs Jesus Antonio Rodriguez Penuelas and Pedro Daniel Romero Ruelas worked as mechanics at the Sterling Sugars, LLC sugar mill. Their job duties consisted of maintaining and repairing heavy trucks or other trucks used within the mill. They did not work repairing or maintaining the equipment used to harvest sugarcane delivered to the mill.

29.     SSSC compensated Plaintiffs for their work at the adverse effect wage rate in effect at the time. The Louisiana AEWR was $10.73 per hour from January 4, 2018 to January 8, 2019; $11.33 per hour from January 9, 2019 through January 1, 2020; $11.83 per hour for the period from January 2, 2020 through February 22, 2021; $11.88 per hour from February 23, 2021 through December 28, 2021; and $12.45 per hour from December 29, 2021 through December 31, 2022.

30.     SSSC did not pay Plaintiffs any premium or overtime wages for those workweeks during which any of them was employed in excess of 40 hours.

31.     Although it had previously paid its heavy truck drivers overtime wages, SSSC elected not to pay overtime to its H-2A workers. SSSC could not explain the basis of its decision to stop paying overtime. Defendant used an H-2A agent, Ashley Foret Dees, but while Ms. Dees is an attorney, her practice is limited to immigration law and she does not practice employment law. Furthermore, because SSSC represented to Ms. Dees that the work to be performed by its H-2A workers included harvesting (which work Plaintiffs did not perform), Ms. Dees could not have provided adequate advice, as she never knew the true nature of Plaintiffs' work exclusively transporting harvested sugarcane in heavy trucks or other tasks performed within the mill.

32.     SSSC's understanding of agriculture also relied on information SSSC President Rivers Patout gleaned from fellow sugar industry figures during his years serving on the board of directors of the American Sugar Cane League. There was no evidence presented that the American Sugar

7

Cane League board sought or obtained information from the DOL or an attorney regarding the entitlement of heavy truck drivers to overtime pay for transporting harvested sugarcane from the farms of independent growers to a sugar mill.

33.    Although the FLSA contains special overtime provisions relating to workers providing certain services related to sugarcane processing, 29 U.S.C. § 213(h), SSSC did not pay any overtime or other premium pay to those Plaintiffs who were employed operating light trucks at Sterling Sugars, LLC's mill. Instead, like all of the other H-2A workers, these Plaintiffs were paid straight time at the then-current agricultural adverse effect wage rate, with no premium or overtime pay for work in excess of 48 hours during a workweek.

34.    Each Plaintiff obtained an H-2A visa to work for Defendant. Defendant's H-2A employees, including Plaintiffs, were required to have heavy truck driver's licenses, similar to a U.S. Commercial Driver's License ("CDL"), to authorize them to drive heavy trucks.

35.    Pursuant to 20 C.F.R. § 655.10(b)(2), in the absence of a collective bargaining agreement, the prevailing wage for temporary labor certification of non-agricultural occupations is the arithmetic mean of the wages of workers similarly employed in the area of intended employment using the wage component of the Bureau of Labor Statistics' Occupational Employment Wage Statistics Survey (OEWS).

36.    At no time from 2018 through 2022 was there was a collective bargaining agreement between SSSC and its employees.

37.    Between 2018-2022 the Occupational Employment and Wage Statistics ("OEWS") wage rate applicable to H-2B workers driving heavy trucks (SOC 53-3032) in St. Mary Parish, Louisiana ranged from $19.52 to $20.42 per hour.

38.    Between 2018-2022 the OEWS wage rate applicable to H-2B workers driving light trucks (SOC 53-3033) in St. Mary Parish, Louisiana ranged from $14.47 to $18.26 per hour.

39.    Between 2018-2022 the OEWS wage rate applicable to H-2B workers employed as bus and truck mechanics (SOC 49-3031) in St. Mary Parish, Louisiana ranged from $19.46 to $19.62 per hour.

40.    By letter dated September 9, 2021, over a month before the initiation of this action, Plaintiffs' counsel sent a written demand to SSSC's registered agent as well as the company's president. The September 9, 2021 letter advised SSSC, *inter alia*, of its failure to pay Plaintiffs Alvarez Barron and Pereya Vidana wages due them and similarly situated H-2A workers under both the FLSA's overtime provisions and their employment contracts. The letter demanded that SSSC tender the unpaid wages. SSSC failed to tender the wages demanded, resulting in Plaintiffs filing this litigation.

## PROPOSED CONCLUSIONS OF LAW

1.    This Court has jurisdiction over the Parties to this action.

2.    This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act, 29 U.S.C. § 216. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because these claims form part of the same case or controversy at issue.

3.    All Plaintiffs claim that Defendant SSSC (1) violated the FLSA by failing to pay overtime wages at the applicable regular rate; (2) breached its employment contract with Plaintiffs, or was unjustly enriched, by failing to pay the highest applicable wage rate for their work as guaranteed in their H-2A employment agreements; and (3) violated the LWPA by failing to pay Plaintiffs their wages when due.

4.     Plaintiffs seek unpaid wages, liquidated damages under the FLSA, penalty wages under the LWPA, reasonable attorney's costs and fees, and pre- and post-judgment interest as is allowed by law.

### Claims for Overtime Pay Under the Fair Labor Standards Act

5.     All Plaintiffs allege that Defendant SSSC failed to pay them the federally mandated overtime pay of time and a half of the regular rate for hours worked in excess of 40 hours a workweek under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a).

6.     Plaintiffs seek compensatory damages for their unpaid overtime wages and an equal amount of liquidated damages, as well as attorney's fees, pursuant to 29 U.S.C. § 216(b).

7.     During the 2018-19, 2019-20, 2020-21 and 2021-22 sugarcane grinding seasons, Defendant SSSC was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A) and was subject to the FLSA's requirements.

8.     The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *see also Faludi v. U.S. Shale Solutions, LLC*, 950 F.3d 269, 272-73 (5th Cir. 2020); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

9.     An employee bringing an action for unpaid overtime compensation must demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *See Johnson*, 758 F.3d at 630.

10.     There is no dispute that Plaintiffs were employed at various times by Defendant SSSC during the 2018-19, 2019-20, 2020-21 and 2021-2022 sugarcane grinding seasons and were engaged in activities within the coverage of the FLSA.

11.     Plaintiffs frequently worked more than 40 hours per workweek and were paid straight time at the AEWR rate in effect at the time for all hours worked, including for those hours worked above 40 in a workweek. Defendant SSSC never paid Plaintiffs overtime pay.

12.     Defendant SSSC asserts that it did not violate the FLSA's overtime wage requirements because Plaintiffs are exempt agricultural employees. The FLSA expressly exempts from the Act's overtime provisions workers "employed in agriculture." 29 U.S.C. § 213(b)(12). The burden of proof on establishing exempt status is on the employer. *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017), and the employer must show that it is "plainly and unmistakably" within the exemption's terms and spirit. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Defendant SSSC fails to satisfy this burden.

13.     The FLSA, 29 U.S.C. § 203(f), defines "agriculture" as:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

14.     This definition has since been interpreted by the U.S. Supreme Court and incorporated into U.S. Department of Labor ("USDOL") regulations as including "primary" and "secondary" agriculture. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949); 29 C.F.R. § 780.105(b) and (c).

15.     Under the FLSA regulations, primary agriculture "includes farming in all its branches," 29 C.F.R. § 780.105(b), such as, among other things, "cultivation and tillage of the soil, dairying the production, cultivation, growing and harvesting of any agricultural or horticultural commodities and the raising of livestock, bees, fur-bearing animals or poultry." *Id*. An employee engaged in any of these activities is engaged in agriculture for purposes of the FLSA.

16.     Plaintiffs were not employed in primary agriculture. None of the Plaintiffs cultivated or tilled soil, produced, grew, or harvested sugarcane (or any other agricultural commodity), nor did they work in the fields of any independent farm. Instead, Plaintiffs were employed as heavy truck drivers transporting harvested sugarcane from independent sugarcane farms to the Sterling Sugars, LLC sugar mill for processing, or to perform work exclusively within the mill.

17.     Secondary agriculture "includes operations other than those which fall within the primary meaning of the term. It includes any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations." 29 C.F.R. § 780.105(c). Plaintiffs were not employed by the independent farmers, nor did they work on the independent growers' farms. Defendant SSSC did not plant, grow, or cultivate sugarcane, nor did it have any direct ownership interest in the independent farms for whom it provided labor or the crops those farms harvested. The status of the independent sugarcane farms for which SSSC provided contracting services is not determinative. It is the work performed *for the employer*, and not the work performed by the independent farmer, that determines whether the worker was engaged in secondary agriculture. *See Bayside Enters., Inc. v. N.L.R.B.*, 429 U.S. 298, 303 (1977)[1] ("[s]ince the status of the drivers is determined by the character of the work which

---

[1] The National Labor Relations Act excludes from coverage any individual employed as an agricultural laborer. *See* 29 U.S.C. § 152(3) (defining "employee") and § 157 (rights of employees). The NLRA does not define "agricultural laborer," but Congress has tied the definition to Section 3(f) of the FLSA. *Bayside Enters.* 335 F.3d at 300 n.6.

they perform for their own employer, the work of the contract farmer cannot make the drivers agricultural laborers."); *accord Sanderson Farms, Inc. v. N.L.R.B.*, 335 F.3d 445, 450–51 (5th Cir. 2003) ("Consistent with the Board's decisions affirmed by the Supreme Court, Sanderson Production is not a farmer when it sends its live-haul drivers to retrieve chickens from independent farms and take them to slaughter. The drivers also cannot derive their status from the work of the independent farms, because these farms do not employ the drivers.").

18.    In addition, Plaintiffs' work transporting sugarcane between the independent farms and Sterling Sugar, LLC's mill is not work performed "on a farm." *See, e.g., Bayside*, 429 U.S. at 301 (drivers transporting products to or from a farm do not work "on a farm"); *Chapman v. Durkin*, 214 F.2d 360, 363 (5th Cir. 1954). In fact, the DOL's regulations defining "on a farm" explicitly consider a similar arrangement, and state that "employees of an alfalfa dehydrator engaged in hauling chopped or unchopped alfalfa away from the farms to the dehydrating plant are not employed in a practice performed 'on a farm.'" 29 C.F.R. § 780.134. *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1360 (11th Cir. 2021) ("So even work that begins on a farm but is mostly performed away from a farm ordinarily falls outside the exemption.").

19.    Plaintiffs' work operating heavy trucks is legally indistinguishable from that performed by the truck drivers in *Wirtz v. Osceola Farms Co.*, 372 F.2d 584 (5th Cir. 1967), where a sugar mill's employees drove semi-tractor trailers to transport harvested sugarcane from the fields of independent growers to the employer's mill. *Id*. at 586. The Fifth Circuit held that "in transporting cane of the independent growers, the [semi-trailer tractor truck] drivers are exempt under neither primary nor secondary meaning of 'agriculture.'" *Id.* at 589.

20.    The DOL's regulations underscore that Plaintiffs' work transporting sugarcane to Sterling Sugars, LLC's mill was not agriculture under the FLSA. *See* 29 C.F.R. § 780.138 (employees of a

13

sugar mill transporting to the mill harvested sugarcane produced by independent growers are not engaged in agriculture).

21.     The fact that Plaintiffs on occasion spent a short time at the fields of the independent farmers as the harvested sugarcane was loaded into the heavy trucks does not relieve SSSC of its obligation to pay overtime wages. *See Osceola Farms Co.*, 372 F.2d at 588 (finding that the transport work was not "work done on a farm," even when "the original movements in picking up loads are on farm property."). Plaintiffs' work transporting the harvested sugarcane from the fields to the Sterling Sugars, LLC mill was not within FLSA's agriculture exemption.

22.     During the 2021-22 sugarcane grinding season, Plaintiffs Jesus Antonio Rodriguez Penuelas and Pedro Daniel Romero Ruelas worked as mechanics at the Sterling Sugars, LLC sugar mill maintaining and repairing heavy trucks or other mill vehicles. These activities also did not constitute primary agriculture. *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074, 2022 WL 1927007 at *11 (W.D. Tex. June 3, 2022) ("Mechanic work on vehicles…separate from any purpose for which the vehicles would be utilized, certainly would not constitute 'agricultural' work under 'primary farming'"). Nor was the mechanic work of these Plaintiffs secondary agriculture, because it was neither in the employ of a farmer nor on a farm. 29 C.F.R. § 780.129 ("No matter how closely related it may be to farming operations, a practice performed neither by a farmer nor on a farm is not within the 'secondary' meaning of 'agriculture.'"); *Osceola Farms Co.*, 372 F.2d at 590 (mechanic work that takes place at "the repair shop is not within the primary meaning of § 3(f) and it cannot fall within the secondary meaning since it is done neither by a farmer nor on a farm").

23.     Similarly, the work of Plaintiff Jesus Alfredo Parra Martinez and others driving light trucks to shuttle sugarcane on the premises of the Sterling Sugars, LLC mill was not agriculture

14

within the meaning of the FLSA. It plainly was not primary agriculture and because the work was not performed as farm employees or on a farm, it did not constitute secondary agriculture.

24. All of Plaintiffs' overtime claims are governed by the general overtime provisions of 29 U.S.C. § 207. The partial exemption of 29 U.S.C. § 213(h) is not applicable to Plaintiffs' work. First, most of the Plaintiffs who worked at the Sterling Sugars, LLC mill, did not do so "exclusively," as required by 29 U.S.C. 213(h)(1)(D). They drove light trucks at the mill site only occasionally, with their primary job duties remaining transporting sugarcane from the fields to the mills. Second, while during the 2021-22 grinding season, Plaintiffs Pedro Daniel Romero Ruelas and Jesus Antonio Rodriguez Penuelas were employed as mechanics on the mill premises, their work was on heavy trucks used to transport the sugarcane, rather than on the mill machinery used to process the harvested crop. Finally, although Plaintiff Jesus Alfredo Parra Martinez worked exclusively at the sugar mill, he also is not exempted because "[t]he provisions of Section 207…shall not apply to an employee who is employed by such employer exclusively to provide services necessary and incidental to the processing of sugar cane…*and receives for such employment which is in excess of forty-eight hours in any workweek …compensation at a rate not less than one and one-half times the regular rate*. 29 U.S.C. §§ 213(h)(1)(D) and (2)(B) (emphasis added). Having never paid Parra Martinez the overtime rate required for sugarcane processing workers, SSSC cannot now claim the exemption under 29 U.S.C. § 213(h), which is applicable only for those employees who have *received* the rate mandated by the statute. 29 U.S.C. § 213(h)(2)(B).

25. Because their work was not exempt from the FLSA's maximum hours provisions, 29 U.S.C. § 207, Plaintiffs are entitled to recover the overtime wages due them for their work for SSSC during the 2019-20, 2020-21 and 2021-22 grinding seasons. In accordance with Louisiana Revised Statutes § 9:1515, Plaintiffs Teresa de Jesus Sanchez Gonzalez and Margarita Valenzuela Urias, are

15

entitled to recover the overtime wages due their late husbands, Valentin Valenzuela Flores and Jesus Adolfo Lopez Osuna, respectively.

26.    Plaintiffs also seek overtime wages under the FLSA with respect to their work during the 2018-19 grinding season. Ordinarily, FLSA claims are subject to a two-year limitations period, but a three-year statute of limitations applies to willful violations. 29 U.S.C. § 255(a); *Mohammadi v. Nwabuisi*, 605 Fed.Appx 329, 332 (5th Cir. 2015). Because this action was filed in October, 2021, FLSA claims arising out of the 2018-19 sugarcane grinding season, which concluded in January, 2019, are also timely if SSSC's violations are determined to be willful.

27.    Plaintiffs state that the evidence supports a 3-year statute of limitations for their FLSA claims because Defendant's failure to pay overtime was willful pursuant to 29 U.S.C. § 255. A violation is "willful" if the employer either "knew or showed reckless disregard" for "whether its conduct was prohibited by the statute." *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

28.    An employee must demonstrate that his employer's violation was more than negligent to achieve the three-year statute of limitations. *McLaughlin*, 486 U.S. at 134–35; *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018). Reckless disregard of the Act means failure by the employer to make adequate inquiry into whether its conduct complies with the FLSA. 5 C.F.R. § 551.104. An employer acts willfully not only when it knows its pay structure violates the FLSA, but also when it simply "disregard[s] the possibility that it might be violating the FLSA" or turns a "blind eye" to an egregiously disproportionate ratio between hours worked and wages paid. *Ramos v. Al-Bataineh*, 599 F. App'x 548, 551 (5th Cir. 2015). An employer has a duty to make itself aware of the laws applicable to its business. *York v. Advocates for Juvenile and Adult Rights*, No. CIV-16-12487, 2018 WL 438196 at *5 (E.D. La. January 16, 2018). It is not enough for an employer to do nothing to

16

determine whether its practices complied with FLSA and simply engage in a practice because "everyone else was doing it." *Schulke v. Isbaz Corp.*, No. H-20-2571, 2023 WL 5002452 at *5 (S.D. Tex. Aug. 4, 2023).

29.     The evidence demonstrated that Defendant SSSC was aware of overtime laws, had always paid overtime, and affirmatively *changed* its overtime practices between 2017 and 2018. SSSC failed to cite the source or basis for its stated belief in the lawfulness of that change, and SSSC cannot rely on any consultation with Ashley Foret Dees, if any occurred, to support its claim of good faith or lack of willfulness, because SSSC opted instead to assert attorney-client privilege with regard to the nature of those communications. While SSSC engaged an H-2A processing agent, Ashley Foret Dees, attorney Dees' limits her practice to immigration matters and has no expertise in employment law. An employment law attorney almost certainly would have been aware of the governing *Osceola Farms Co.* binding precedent, as well as the provisions of 29 C.F.R. § 780.138, both of which directly address whether heavy truck drivers transporting sugarcane are engaged in "agriculture" within the meaning of the FLSA. Yet, SSSC affirmatively represented to Ms. Dees that the type of work to be performed by its H-2A workers included harvesting and field work. SSSC did not seek guidance from the DOL on the issue or attend any training regarding the FLSA. And while SSSC President and manager Rivers Patout discussed the agriculture issue with his fellow board members of the American Sugar Cane League, there is no evidence that any of the board members had any expertise on the question; instead, SSSC's decision to not pay overtime to its H-2A heavy truck drivers appears to be based on nothing more than the company's decision to start hiring foreign workers. For these reasons, SSSC failed to make adequate inquiry regarding its decision to cease paying overtime wages following the 2017-18 grinding season, and thereby recklessly disregarded

17

its obligations under the FLSA. SSSC's FLSA violations were therefore willful and Plaintiffs are entitled to recover the overtime wages due them for work performed in the 2018-19 grinding season.

30.    SSSC asserts that it is not liable for the unpaid overtime wages owed Plaintiffs, nor a corresponding award of liquidated damages, because of its good faith, relying on 29 U.S.C. § 259 and 29 U.S.C. § 260. However, neither one of these statutory defenses applies to SSSC in this case.

31.    A showing of "good faith" under 29 U.S.C. § 259 provides a complete defense to FLSA liability in narrow circumstances. *See* 29 C.F.R. §§ 790.13–.19. The employer carries the burden of pleading and proving each element of this defense. *See* 29 C.F.R. § 790.13(a).

32.    To succeed in establishing the "good faith" defense under 29 U.S.C. § 259, an employer must establish *all* of the following: (1) that its actions were in actual conformity with "any written administrative regulation, order, ruling, approval, or interpretation [of the Department of Labor's Wage and Hour Administrator] or any administrative practice or enforcement policy [of the Administrator]" with respect to the class of employers to which the employer belongs; (2) that its actions were taken in reliance on that ruling or policy; and (3) that it acted in good faith. 29 U.S.C. § 259; 29 C.F.R. §§ 790.13(a), 790.14, 790.16. The regulation, order, ruling, approval, interpretation, practice, or enforcement policy relied on must come from the *Administrator of the Wage and Hour Division*, who is exclusively "vested with final authority under the statutes involved," and not merely from "an individual officer or employee of an agency." *See* 29 C.F.R. §§ 790.13, 790.19; 29 C.F.R. § 259(b).

33.    SSSC failed to produce any evidence that it relied on any regulation, order, ruling, approval, interpretation, practice, or enforcement policy from the Administrator of the Wage and Hour Division. Indeed, the DOL's regulation at 29 C.F.R. § 780.138 expressly rejects the position

18

SSSC asserted in this litigation. As a result, SSSC is not entitled to assert a good faith defense under 29 U.S.C. § 259.

34.     Neither can SSSC successfully invoke a good faith defense under 29 U.S.C.§ 260 to the award of liquidated damages. Plaintiffs are entitled to their unpaid overtime wages and "an additional equal amount as liquidated damages" pursuant to 29 U.S.C. § 216(b), unless Defendant "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA, a court may reduce the amount of liquidated damages, or determine that a defendant need not pay any liquidated damages. 29 U.S.C. § 260; *see also King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 725–26 (5th Cir. 2011) (liquidated damages are mandatory under 29 U.S.C. § 216(b) unless the employer can meet its burden of showing it acted in "good faith."). There is a strong presumption in favor of liquidated damages, and the doubling of an award "is the norm, not the exception." *Shea v. Galaxie Lumber & Const. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998).

35.     The burden is on the employer to show "that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. This is a substantial burden. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990); *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003). Good faith requires the employer to investigate potential liability under the FLSA. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016). Ignorance cannot be the basis for reasonable belief. *Id.* It must show that it undertook active or affirmative steps to investigate and verify their FLSA compliance; "[a]pathetic ignorance is never the basis of a reasonable belief." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). SSSC has failed to make a showing of good faith. Prior to the 2018-19 sugarcane grinding season, when it began employing H-2A workers,

19

SSSC had always paid its employees overtime for performing the exact same job as the Plaintiffs performed. SSSC entered the H-2A program beginning with the 2018-19 grinding season and hired foreign workers, including Plaintiffs, and stopped paying overtime for the same type of work for which it had previously paid overtime. SSSC took no steps to affirmatively ascertain whether its change in pay practices (from paying to not paying overtime) was lawful. Even a cursory review of the applicable law would have revealed the Fifth Circuit's *Osceola Farms Co.* decision, one directly on point to SSSC's operations, and the DOL regulation at 29 C.F.R. § 780.129, also addressing work performed by heavy truck drivers transporting sugarcane to mills for processing.

36.    Defendant is liable to Plaintiffs for compensatory damages in the form of unpaid overtime wages and an equal amount of liquidated damages. Plaintiffs may calculate damages based on a 3-year statute of limitations. Further discussion of damages calculations is included below.

### Plaintiffs' Claims under state law

37.    In addition to their claims for unpaid overtime wages under the FLSA, Plaintiffs present claims for violations of the Louisiana Wage Payment Act, Louisiana Revised Statutes 23:631, *et seq.*, the law of contracts, La. Civ. Code art. 1906, *et seq*, and for unjust enrichment, La. Civ. Code art. 2298

38.    Plaintiffs' state law claims under the LWPA are governed by the three-year limitations period established by Louisiana Civil Code article 3494(1).

39.    Plaintiffs filed their original complaint in October 2021, within the three-year statute of limitations of Louisiana Civil Code article 3494(1). However, since that time, a number of additional individuals have been added as Plaintiffs to this litigation. Some of these recently-joined Plaintiffs are pursuing state law claims arising out of the 2018-19 sugarcane grinding season. Those claims relate back to the date of the original filing of this case. *F.D.I.C. v. Conner,* 20 F.3d 1376, 1385 (5th

20

Cir. 1994). Federal Rule of Civil Procedure 15(c)(1)(A) permits relation back to the date of the original pleading if the law providing the applicable statute of limitations allows it. *Turnage v. McConnell Technologies*, 671 Fed. Appx. 307, 309 (5th Cir. 2016).

40.     Because the applicable statute of limitations for Plaintiffs' state law claims is Louisiana Civil Code 3494(1), Louisiana law determines whether relation back applies in this instance. Louisiana Code of Civil Procedure 1153 allows for relation back when the asserted claim "arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Relation back should be allowed so long as there is a factual connexity between the original and amended assertions. *Winford v. Conerly Corp.*, 897 So.2d 560, 566 (La. 2005). The doctrine of relation back under Louisiana law is to be liberally applied, particularly in the absence of prejudice. *Newton v. St. Tammany Fire District No. 12*, 318 So.3d 206, 211 (La. App. 1 Cir. 2021); *Oliver v. Orleans Parish School Board*, 133 So.3d 38, 58 (La. App. 4 Cir. 2014). SSSC had notice that H-2A workers beyond the original Plaintiffs had similar claims, because the lawsuit was filed as a collective action on behalf of Plaintiffs, some of whom alleged claims for the 2018 season, and others similarly situated, and therefore SSSC is not prejudiced by the application of the doctrine of relation back. *Newton*, 318 So.3d at 211-12.

41.     Relation back is appropriate here. The claims of the recently-joined Plaintiffs are based on the same facts and rely on the same legal theories as those presented by their co-workers who initiated this litigation.

## Claims for Breach of Contract

42.     Plaintiffs bring claims against Defendant SSSC for breach of contract under Louisiana law for failing to pay them overtime and federal minimum wages as required under their employment contracts. Under Louisiana law, a breach of contract claim requires that the plaintiff

21

establish that a contract exists, that the contract was breached, and that the plaintiff suffered damages as a result. *Ross v. State through University of Louisiana System*, 358 So.2d 162 (La. App. 4 Cir. 2023). The party claiming rights under the contract bears the burden of proof. *Id.*

43.     Plaintiffs claim that SSSC failed to compensate them at the minimum wage rate required under their employment contracts. Plaintiffs seek to have SSSC pay them the difference between wages paid and the wages that should have been paid had Defendant paid the appropriate wage rate.

44.     Federal regulations require that employers must provide each H-2A worker with "a copy of the work contract and "[i]n the absence of a separate, written work contract entered into between the employer and the worker, the required terms of the job order and the certified Application for Temporary Employment Certification will be the work contract." 20 C.F.R. § 655.122(q).

45.     SSSC's H-2A applications and clearance orders satisfy the elements required for a valid contract under Louisiana law. "In Louisiana, the four elements of a valid contract are 'capacity, consent, a lawful cause, and a valid object.'" *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 401 (5th Cir. 2022) (quoting *Granger v. Christus Health C. Louisiana*, 144 So. 3d 736, 760 (La. 2013). All of these elements are satisfied here, making the H-2A applications filed by or on behalf of SSSC and the job orders contained therein the employment contracts between the Plaintiffs and SSSC.

46.     At a minimum, an H-2A contract must contain all the provisions and obligations required by the H-2A regulations, including compliance with applicable Federal and State laws, "including. . . payment of overtime." (20 C.F.R. § 655.135(e)) and payment of the regulatory required wage (20 C.F.R. §§ 655.120(a) and 655.122(l)).  *Sandoval Cervantes v. Spring Meadow Nursery, Inc.*, No. 1:20-cv-1132, 2021 WL 5310914, at *2 (W.D. Mich. 2021). Defendant SSSC breached its employment contracts with Plaintiffs in two ways, both involving the payment of wages.

22

47.     First, because their employment was not within the Act's agricultural exemption, as discussed above, Plaintiffs were entitled under their employment contracts to receive all wages due them under the FLSA, including overtime wages due under Section 7, 29 U.S.C. § 207, albeit without the liquidated damages available in actions brought under the FLSA itself, 29 U.S.C. § 216. Accordingly, recovering overtime wages based on the employer's contractual promise to pay employees in compliance with the FLSA is not identical to a FLSA claim, nor does it constitute a FLSA claim in disguise. *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1219 (11th Cir. 2007) (H-2B reforestation workers permitted to recover unpaid FLSA overtime wages under wage payment provisions of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1822(a)). Independent of any claim under the FLSA, SSSC was contractually required to pay overtime wages due under that statute, without any liquidated damages, to each Plaintiff.

48.     Second, to ensure that use of foreign workers would not adversely affect the wages and working conditions of similarly employed U.S. workers *in agricultural work* (20 C.F.R. §§ 655.100, 655.0(a), and 655.103(a)), the wage term incorporated into Plaintiffs' employment contracts obligated SSSC to pay a wage that was the highest of the AEWR, the prevailing wage, the agreed-upon collective bargaining wage, or "the Federal or State minimum wage." 20 C.F.R. §§ 655.120(a) and 655.122(l)(1). There was no agreed collective bargaining wage for SSSC employees, nor has a prevailing wage been calculated pursuant to 20 C.F.R. § 655.103(b).

49.      Defendant SSSC paid each Plaintiff the applicable AEWR for every hour worked. The AEWR is a wage rate uniquely applicable within the H-2A framework to ensure that use of foreign workers will not depress wages of similarly employed U.S. workers *in agricultural work*.

50.     Under the INA, as revised by the Immigration Reform and Control Act of 1986, H-2A workers may be admitted to perform agricultural labor and services as defined by the FLSA or

Section 3121(g) of the Internal Revenue Code. 8 U.S.C. §1101(a)(15)(H)(ii)(a); 29 C.F.R. §

501.3(b), and 20 C.F.R. § 655.103(c).

51.     As discussed previously, Plaintiffs did not perform agricultural work within the meaning

of the FLSA. Plaintiffs' employment also was not agricultural under the Internal Revenue Code, 26

U.S.C. § 3121(g).

52.     Under the Internal Revenue Code, agricultural services must be performed "on a farm" in

connection with cultivation of the soil or the raising or harvesting agricultural commodities or

livestock, or in the employ of the farm owner in connection with the operation of the farm. 26 U.S.C.

§ 3121(g)(1) and (2). SSSC satisfies neither of these definitions.

53.     Almost none of Plaintiffs' work took place on a farm. Plaintiffs drove to the independent

growers' fields to have the harvested sugarcane loaded and then transported this cargo to Sterling

Sugars, LLC's mill, traveling over public roadways. The time spent at the fields loading the

sugarcane represented a tiny fraction of Plaintiffs' workdays. Any connection Plaintiffs had with

sugarcane harvesting activities ceased once Plaintiffs left the farm sites. *Everglades Harvesting &

Hauling, Inc. v. Scalia,* 427 F.Supp.3d 101, 113 (D.D.C. 2019).[2]

54.     Neither is Defendant SSSC the owner or operator of a farm, and therefore Plaintiffs'

employment is not agricultural labor under 26 U.S.C. § 3121(g)(2).

---

[2] Plaintiffs' work is very different from that of the H-2A heavy truck drivers employed by
Everglades Harvesting & Hauling. An estimated 60 percent of the worktime of Everglades' drivers was
spent on farm property. *Everglades Harvesting & Hauling, Inc.*, 427 F.Supp.3d at 115. This is in marked
contrast to the small portion of the workday Plaintiffs spent at the farms of the independent growers.

55.      Because the work performed by Plaintiffs was not agricultural under the FLSA or IRC definitions, it was not agricultural labor or services so as to be subject to the agricultural AEWR applicable to jobs qualifying as agricultural under the H-2A program, 20 C.F.R. § 655.103(c).[3]

56.      Because Plaintiffs did not perform agricultural work, the AEWR cannot be the highest lawful, applicable wage. The Court must now determine whether there is an applicable "federal of state minimum wage" that applies to the non-agricultural work performed by the Plaintiffs. Even setting this term aside, the H-2A employment contract did not specify a wage rate for non-agricultural work (since the AEWR only applies to agricultural work), so the Court must supply a wage rate that fairly compensates Plaintiffs for the value of their work, and which fulfills the congressional purposes of the H-2 guestworker programs as required by federal law. *See Tallalulah Const., Inc. v. Ne. Louisiana Delta Cmty. Dev. Corp.*, 2007-1029 (La. App. 4 Cir. 4/23/08), 982 So. 2d 225, 233 ("Because a valid contract existed between the parties, but no agreement as to price, equity principles mandate that [Plaintiff] receive compensation for a reasonable value of goods and/or services rendered."); *see also Mencia v. Allred*, 808 F.3d 463, 472 (10th Cir. 2015) (where H-2A worker performed work different than was disclosed in H-2A application and clearance order, H-2A employer's contractual wage term of $750 per month was "illegal and the wage term of the contract was accordingly invalid," and the Court must substitute a reasonable price, which "must be

---

[3] The fact that USDOL approved the H-2A job order, which included the annual AEWR rates, is immaterial because Defendant's description of the work to be performed by Plaintiffs misrepresented the nature of the work to be performed, leading USDOL to believe that the work was agricultural when it was not. Furthermore, when a State Workforce Agency puts an H-2 clearance order into interstate commerce to advertise the job, it must contain the language "neither the ETA nor the SWAs are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the ES constitute a contractual job offer to which the ETA or a SWA is in any way a party." 20 CFR § 653.501(c)(1)(i). Thus, it is the employer who is ultimately responsible for providing complete, truthful, and accurate information in its H-2A applications and clearance orders and for complying with applicable laws.

at least as high as the lowest wage" the H-2A worker could lawfully be paid for the work actually performed as a ranch hand.").

57.     Plaintiffs point out that the text of 20 C.F.R. § 655.120(a) does not limit the term "federal minimum wage" to the minimum wage rates established by the FLSA and offer significant authority indicating that this phrase should be interpreted broadly, beyond what is commonly understood to be the federal minimum wage.

58.     For instance, in proposing the language now codified at § 655.120(a), USDOL emphasized that "[i]f the employment is covered under *any* federal or State minimum wage law, the employer must comply with that law," citing the FLSA minimum wage provisions and regulatory wage requirements for interstate job orders as examples. 52 Fed. Reg. 16770, 16774 (May 5, 1987) (emphasis added). Had the DOL intended to refer exclusively to the FLSA minimum wage, there would have been no need to cite these examples. Furthermore, one of the examples referenced by the DOL was *Limoneira Co. v. Wirtz*, 225 F. Supp. 961, 963 (S.D. Cal. 1963), *aff'd* 327 F.2d 499 (9th Cir. 1964), which concerned the agency's establishment of "minimum wages" during the Bracero agricultural guestworker program. At the time *Limoneira* was decided, agricultural workers were not covered by the FLSA, *Buero v. Amazon.Com Services, Inc.*, 61 F.4th 1031, 1038 (9th Cir. 2023) (FLSA coverage was first extended to farmworkers in 1966), and therefore any discussion of "minimum wage" could not have been limited to wages set by the FLSA.

59.    A broad reading of "Federal minimum wage" in 20 C.F.R. § 655.120(a) to include minimum wage rates contained in many federal statutes and regulations, is consistent with the use of that term by the Executive Branch,[4] the Congress,[5] the federal courts,[6] and the DOL itself.[7]

60.    Next, Plaintiffs explain that the "federal minimum wage" applicable to the type of non-agricultural work performed by Plaintiffs for Defendant would be the minimum wage rates applicable to H-2B guest workers.

61.    For well over 50 years, minimum wages have been an integral part of federal "guestworker" programs. The Immigration and Nationality Act of 1952 created a single H-2 program that permitted employers to import workers from abroad to fill temporary jobs both within and outside agriculture, provided that certain conditions were met. *Bayou Lawn & Landscape Services v. Johnson*, 173 F.Supp.3d 1271, 1276 (N.D. Fla. 2016). H-2 workers were to be paid a wage rate that would not adversely affect the wages of similarly employed U.S. workers; to accomplish this objective, the DOL imposed minimum wage requirements through an hourly AEWR. *See AFL-CIO v. Brock*, 835 F.2d 912, 913 (D.C. Cir. 1987); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1338 (the H-2 regulations establish minimum job terms, including "a special wage known as the adverse effect wage rate," "[t]o ensure that the employment of aliens under H–2 will not adversely affect the working conditions of similarly employed U.S.

---

[4] Executive Order 14026, April 27, 2021, entitled "Increasing the Minimum Wage for Federal Contractors."

[5] 40 U.S.C. § 3142(a) (referring to "minimum wages" to be paid laborers and mechanics under the Davis-Bacon Act).

[6] *See, e.g., Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620 (8th Cir. 2015) (obligation to pay workers at least the OEWS prevailing wage is imposed on H-2B workers "[l]ike a minimum-wage law"), and *Louisiana Forestry Association v. Solis,* 889 F.Supp.2d 711, 715 (E.D. Pa. 2012), *aff'd sub nom. Louisiana Forestry Association, Inc. v. Secretary, U.S. Department of Labor*, 745 F.3d 653 (3d Cir. 2014) (describing the OEWS wage as the minimum wage that an employer must pay in order to participate in the H-2B program.)

[7] 86 Fed. Reg. 62126, "Increasing the Minimum Wage for Federal Contractors."

workers."); *Shoreham Cooperative Apple Producers, Inc. v. Donovan*, 764 F.2d 135, 137 (2d Cir. 1985) (the AEWR is "the hourly minimum wage to be paid to both foreign and domestic employees."); *Florida Sugar Cane League, Inc. v. Usery*, 531 F.2d 299, 301 (5th Cir. 1976) ("[DOL] insures that domestic workers will not be adversely affected, by means of setting an annually revised 'adverse effect wage rate'").

62.     As part of the Immigration Reform and Control Act of 1986, Congress divided the former H-2 program into two separate components: the H–2A program for agricultural workers and the H–2B program for non-agricultural workers. *Bayou Lawn & Landscape Services v. Johnson*, 173 F. Supp. 3d 1271, 1276 (N.D. Fla. 2016). Both programs continued to use regulatorily-established minimum wages to avoid depression of the earnings of U.S. workers. For agricultural workers, the AEWR remained the minimum wage. *AFL-CIO v. Dole*, 923 F.2d 182, 184 (D.C. Cir. 1991); *Arriaga v. Florida Pacific Farms, LLC* 305 F3d 1228, 1233 (11th Cir. 2002) (the AEWR is the "minimum wage" that must be paid by all H-2A employers); *Tijerina-Salazar v. Venegas*, No. PE:19-cv-74, 2022 WL 1927007, at *5 (W.D. Tex. June 3, 2022); *Perez-Benites v. Candy Brand, LLC*, No. 1:07-cv-1048, 2011 WL 1978414, at *6 (W.D. Ark. May 20, 2011); *Espinoza v. West Coast Tomato Growers, LLC*, No. 14-CV-2984, 2016 WL 4468175, at *3 (S.D. Cal. Aug. 24, 2016); *Hernandez v. Siri & Son Farms, Inc.*, No. 6:20-cv-669, 2021 WL 4999022, at *1, n.1 (D. Ore. Sep. 20, 2021).

63.     The minimum wage for temporary workers employed through the H-2B program is the arithmetic mean of the Occupational Employment and Wage Statistics survey (OEWS) prevailing

28

wage[8] as calculated by the Bureau of Labor Statistics.[9] 20 C.F.R. § 655.10(b); *Louisiana Forestry Ass'n, Inc. v. Sec. of Labor*, 745 F.3d 653, 661-62 (3d Cir. 2014). And, as with the AEWR for agricultural workers, "[t]he purpose of the prevailing wage requirement is to prevent foreign workers from adversely affecting American workers seeking to perform the same work." *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 617 (8th Cir. 2015).

64.    It is Plaintiffs position that for workers employed to do the type of non-agricultural work that Plaintiffs performed for SSSC, the applicable federal minimum wage was the rate required to be paid guestworkers employed in temporary non-agricultural jobs, codified at 20 C.F.R. § 655.10(b).[10]

65.    The "Federal minimum wage" in 20 C.F.R. § 655.120(a) should be interpreted to encompass the applicable federal minimum wage required to be paid guestworkers employed in temporary non-agricultural jobs, codified at 20 C.F.R. § 655.10(b). Because it was higher than the AEWR for each season at issue, under the terms of the employment contract, SSSC was obligated to pay Plaintiffs this federal minimum wage applicable to non-agricultural guestworkers; its failure to do so was a breach of the employment contract between Defendant and Plaintiffs.

66.    However, even if the Court is not persuaded as to the interpretation of "federal minimum wage," the outcome would remain the same. Absent a specified legal wage rate for non-agricultural work, the Court must supply a wage rate that fairly compensates Plaintiffs for the value of their work. The rate required to be paid guestworkers employed in temporary non-agricultural jobs

---

[8] This H-2B "prevailing wage" is separate and distinct from the "prevailing wage" referenced in 20 C.F.R. § 655.103, and discussed in footnote 10, supra.

[9] Prior to 2021, the reported data were referred to as the "OES" survey. Since then, these data are referred to as the "OEWS" survey. *See* https://www.bls.gov/opub/hom/oews/history.htm; *USA Farm Labor, Inc. v. Su*, No. 1:23-cv-00096, 2023 WL 6283333 at *5, n.7 (W.D.N.C. Sep. 26, 2023).

[10] Subsequent to the commencement of this litigation, the DOL amended it regulations to require payment of this same wage to H-2A heavy truck drivers who are engaged in agricultural labor and services under 20 C.F.R. § 655.103(c). 20 C.F.R. § 655.120(b)(1)(ii)(A); *USA Farm Labor, Inc.*, 2023 WL 6283333 at *5.

represents the fair value of Plaintiffs' labor, because in enacting the wage requirements of the H-2A and H-2B systems, congress already determined that the OEWS prevailing wage as calculated by the Bureau of Labor Statistics is the most accurate labor survey available of the wage rate paid to similarly situated workers for the same type of work and in the same geographic area.

67.    It is imperative that the wage paid Plaintiffs be comparable to that paid to U.S. workers performing similar non-agricultural work in southwest Louisiana. The policy that "permeates the immigration statutes" is "that domestic workers rather than aliens be employed wherever possible." *Elton Orchards, Inc. v. Brennan*, 508 F.2d 493, 500 (1st Cir. 1974) (under the INA, New Hampshire apple grower was required to hire less experienced Louisiana workers over more experienced H-2 Caribbean workers); 20 C.F.R. § 655.0(a)(3) ("the purpose of the INA" is "that U.S. workers be employed wherever possible."). Unless competitive wages are offered, it is unlikely that U.S. workers will accept these jobs. 20 C.F.R. § 655.0(a)(2) ("U.S. workers cannot be expected to accept employment" under substandard wages and conditions).

68.    Allowing Defendant's interpretation of the H-2A contract, which proposes permitting it to pay the agricultural AEWR rate for non-agricultural work, would incentivize widespread abuse by employers of the H-2A program, and would eviscerate the congressional intent of creating two separate guestworkers programs, the H-2A program for agricultural work, and the H-2B program for non-agricultural work, both designed to protect against the depression of U.S. wages and working conditions. This is an outcome contrary to clear public policy interests that is disallowed by law. *See e.g. Preis, PLC v. Daily*, 2019-700 (La. App. 3 Cir. 3/25/20), 297 So. 3d 853, 859; *Tech. Indus., Inc. v. Banks*, 419 F. Supp. 2d 903, 908 (W.D. La. 2006); 29 C.F.R. § 501.5; *Saenz Mencia v. Allred*, 808 F.3d 463, 472 (10th Cir. 2015).

69.     Payment of the OEWS prevailing wage rate for the type of non-agricultural work actually performed is consistent with USDOLS's own enforcement policies and federal case law. *See* Field Assistance Bulletin 2022-3 p. 7-8 (Apr. 13, 2022) (instructing that when H-2B workers are certified for jobs with lower prevailing wages than the work they actually end up performing, USDOL identifies the highest applicable wage under the SOC code applicable to the job duties performed and calculates back wages owed on that higher wage); *Saenz Mencia,* 808 F.3d at 472. The Tenth Circuit adopted the same approach when addressing an H-2A worker who had been misclassified as a sheepherder and paid a corresponding wage rate considerably lower than that required for the ranch hand job he actually performed. *Id*.

70.     Between 2018 and 2022 the Occupational Employment and Wage Statistics ("OEWS") wage rates applicable to H-2B workers driving heavy trucks (SOC code 53-3032) in St. Mary Parish, Louisiana were as follows:

| Time period | OEWS wage rate for heavy truck drivers |
|---|---|
| July 1, 2018 – June 30, 2019 | $20.42 per hour |
| July 1, 2019 – June 30, 2020 | $19.52 per hour |
| July 1, 2020 – June 30, 2021 | $20.33 per hour |
| July 1, 2021 – June 30, 2022 | $19.76 per hour |

71.     Between 2018 and 2022 The Occupational Employment and Wage Statistics ("OEWS") wage rates applicable to H-2B workers driving light trucks (SOC code 53-3033) in St. Mary Parish, Louisiana were as follows:

| Time period | OEWS wage rate for light truck drivers |
|---|---|
| July 1, 2018 – June 30, 2019 | $18.26 per hour |
| July 1, 2019 – June 30, 2020 | $15.15 per hour |
| July 1, 2020 – June 30, 2021 | $14.47 per hour |
| July 1, 2021 – June 30, 2022 | $15.54 per hour |

72.      Between July 1, 2020 to June 30, 2021, the OEWS wage rate applicable to H-2B workers employed as bus and truck mechanics (SOC-49-3031) in St. Mary Parish, Louisiana was $19.46 per hour. Between July 1, 2021 and June 30, 2022 the OEWS wage rate applicable to H-2B workers employed as bus and truck mechanics (SOC 49-3031) in St. Mary Parish, Louisiana was $19.62 per hour.

73.      By paying Plaintiffs the AEWR for the non-agricultural work they performed, rather than the higher OEWS wage rate, Defendant SSSC is in breach of its employment contract with Plaintiffs and is liable for backpay.

<strong>Plaintiffs' Claims for Unjust Enrichment</strong>

74.      Plaintiffs also bring claims against Defendant SSSC on a theory of unjust enrichment, as an alternate theory of liability to their breach of contract claim.

75.      The requisite elements of a claim for unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995).

76.      As discussed above, Defendant SSSC was enriched, and Plaintiffs were correspondingly impoverished, by Defendant paying Plaintiffs the lower AEWR applicable to agricultural workers instead of the higher OEWS prevailing wage rate for the non-agricultural work they actually performed.

77.      There is a direct connection between the financial enrichment of Defendant SSSC in paying wages lower than the going rate for heavy truck drivers, light truck drivers, and mechanics in southwest Louisiana and Plaintiffs' relative impoverishment by being denied payment for the actual value of the skilled, non-agricultural labor that they performed.

78. There is no justification for Defendant SSSC having misrepresented the description of the work to be performed in their H-2A applications to the DOL. SSSC abused the H-2A process to secure skilled labor entitled to higher wages at a much lower agricultural AEWR, thereby harming Plaintiffs, U.S. heavy truck drivers, light truck drivers and mechanics, and competitors who either followed the law or did not participate in the H-2A program. There can be no legitimate justification for a practice that violates the explicit public policy mandates of the H-2 visa programs and that relied on Defendant SSSC's fraudulent applications.

79. If the Court determines that there was no actionable contractual breach, then there is no other remedy at law to correctly compensate Plaintiffs for the value of the work performed.

80. The most appropriate remedy is for Defendant SSSC to pay Plaintiffs the difference between the agricultural AEWR and the appropriate OEWS wage rate for each hour worked. Besides being the mandatory rate to be paid temporary foreign workers imported to perform non-agricultural temporary jobs through the H-2B program, the OEWS wage rates represent the best and most accurate measure of the fair value of Plaintiffs' labor because it is the most accurate labor survey available of the wage rate paid to similarly situated workers for the same type of work and in the same geographic area. 73 Fed. Reg. 77173 (Dec. 18, 2008) (the OEWS is among the largest on-going statistical survey programs of the federal government, is based on a collection of occupational employment and wage data in every State in the U.S. and is used by the DOL for determining comparison wages in other temporary worker programs).

**Claims Under the Louisiana Wage Payment Act**

81. The Louisiana Wage Payment Act, Louisiana Revised Statutes 23:631 and 23:632 ("LWPA"), requires employers to pay their employees any unpaid wages due by the employee's next regular payday and not later than 15 days after employment ends.

33

82.     Defendant SSSC was Plaintiffs' employer and more than 15 days have passed since each Plaintiff's fixed term of employment pursuant to their H-2A contracts for each season has ended.

83.     Because Plaintiffs are owed unpaid wages pursuant to the terms of their employment, as discussed above, Defendant is also liable to Plaintiffs under the LWPA for failing to pay these wages due within 15 days of their employment ending.

**Damages**

84.     For their FLSA claims, Defendant SSSC is liable to Plaintiffs for unpaid overtime pay at a rate not less than one and one-half times the workers' "regular rate" 29 U.S.C. § 207(a)(1).

85.     Although Plaintiffs did not perform agricultural work, Plaintiffs are due overtime wages even if a portion of their work could be characterized as agricultural. *See* 29 C.F.R. § 780.11. Because Plaintiffs unquestionably performed non-agricultural activities in every workweek, Plaintiffs are entitled to payment of overtime wages for all of their labor for SSSC. *See id.*; *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 411 (5th Cir. 1975).

86.     Under the FLSA, the "regular rate" of pay refers to the minimum rate of pay guaranteed to a worker by the terms of his contract or to comply with various federal, state, or local laws. *See* 29 C.F.R. § 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is *lawfully* employed.") (emphasis added). Thus, the contracted "regular rate" can never be an unlawfully low rate. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 291 (S.D.N.Y 2011) ("it is inconsistent with the purposes of the FLSA and 29 C.F.R. § 778.5 to allow defendants to use an illegal 'irregular rate' to calculate overtime pay"); *Portillo Saravia v.*

34

*Yuan Profit, Inc.,* No. 20-232, 2023 WL 2585675 at *5 (D.D.C. Mar. 17, 2023) ("This of course makes good sense; an employee's overtime pay should not be a function of an unlawfully low rate of pay for regular hours.").

87.     In an analogous situation, the Fifth Circuit confirmed the lower court's finding that the "straight time wage" rate listed in an employment contract was not the "regular rate" for purposes of calculating FLSA overtime wages due, in part because the contractual wage rate was so far out of step with the prevailing wage rate published by the DOL for the type of work performed. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1039 fn. 2 (5th Cir. 2010) (comparing the contract wage rate to "the minimum hourly wage rate for aircraft painters at the relevant time and area" as listed by USDOL). An employer cannot "artificially lower an employee's regular rate by mischaracterizing a portion of it." *Id.* at 1042; *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1305 (10th Cir. 2011) (contract cannot designate an artificially low wage rate to evade the purposes of the FLSA overtime wages due) (citing *Walling v. Wall Wire Prods. Co.*, 161 F.2d 470, 473 (6th Cir.1947)). *See also Grochowski v. Ajet Construction Corp.*, No. 97-CIV-6269, 2000 WL 1159640 at *6 (S.D.N.Y. Aug. 15, 2000) (because plaintiffs were entitled to the Davis-Bacon Act prevailing wage, that rate must be used in computing the overtime pay due them).

88.     The "regular rate" of pay for purposes of Plaintiffs' FLSA claims is the minimum lawful rate at which Plaintiffs could have been paid under their contracts and the H-2A regulations for the non-agricultural work they performed.  This is the prevailing wage required by 20 C.F.R. § 655.10, corresponding to the arithmetic mean of the wages of workers similarly employed in the area of intended employment, as published by the Bureau of Labor Statistics' OEWS, which for the relevant periods for southwest Louisiana was:

35

a.  $20.42 per hour for driving heavy trucks (SOC code 53-3032) for the period from July 2018 to June 2019;

b.  $19.52 per hour for driving heavy trucks (SOC code 53-3032) for the period from July 2019 to June 2020;

c.  $20.33 per hour for driving heavy trucks (SOC code 53-3032) for the period from July 2020 to June 2021;

d.  $19.76 per hour for driving heavy trucks (SOC code 53-3032) for the period from July 2021 to June 2022;

e.  $18.26 per hour for driving light trucks (SOC code 53-3033) for the period from July 2018 to June 2019;

f.  $15.15 per hour for driving light trucks (SOC code 53-3033) for the period from July 2019 to June 2020;

g.  $14.47 per hour for driving light trucks (SOC code 53-3033) for the period from July 2020 to June 2021;

h.  $15.54 per hour for driving light trucks (SOC code 53-3033) for the period from July 2021 to June 2022;

i.  $19.46 per hour for work as bus and truck mechanics (SOC 49-3031) for the period from July 2020 to June 2021; and

j.  $19.62 per hour for work as bus and truck mechanics (SOC code 49-3031) for the period from July 2021 to June 2022.

89.     In calculating the amount of overtime owed under the FLSA, Plaintiffs are also entitled to include in their damages the unpaid prevailing wage rates for their regular, non-overtime, hours (i.e. for hours *below* 40). *See* 29 C.F.R. § 778.315 ("compensation for the excess hours of overtime work

under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid."); *see also Conner v. Cleveland County, N. Carolina*, 22 F.4th 412, 422 (4th Cir. 2022) (holding that a "gap time" claim, a claim for back pay for underpaid straight time hours in a workweek in which the employee works overtime, is cognizable under the FLSA); *Valcho v. Dallas Cty. Hosp. Dist.*, 658 F. Supp. 2d 802, 811 (N.D. Tex. 2009).

90.    The Louisiana Wage Payment Act requires that the employer or any laborer or other employee pay the amount due them under the terms of employment within 15 days of their discharge or resignation. La. R.S. § 631.A(1)(a), (b). As applicable here, an employer who fails to comply with this obligation is liable to the employee for 90 days of wages at the employee's daily rate of pay if the court determines that the employer did not act in good faith in refusing to pay the wages owed. *Id.* §632.A & .B. Because the parties' contract required Defendant to comply with all applicable laws and regulations, *see* 20 C.F.R. § 655.135(e), Defendant's duty under the FLSA to pay overtime was also a contractual term of Plaintiffs' employment.[11] The LWPA does provide that an employer is not liable for penalty wages "[w]hen the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute." La. R.S. § 632.B. The term "good faith' here means "a good-faith non-arbitrary defense to liability for unpaid wages"—that is to say, "a reasonable basis for resisting liability"—and is an equitable defense. *Carriere v. Pee Wee's Equip. Co.*, 364 So. 2d 555, 557 (La. 1978); *see also Metrailer v. Cameron Cable & Cordage, Inc.*, 440 So. 2d 976, 980 (La. Ct. App. 1983) (holding that the term "defense" here does not mean a defense in the strict sense of the word, but rather the application of equitable considerations to achieve the more just result).

---

[11] Even if Plaintiffs were not entitled to penalty wages, they would be entitled to judicial interest from the date on which suit was filed. La. R.S. § 632.B.

91.     The Court has received into evidence detailed charts using the payroll data from Defendant to compute the unpaid wages due to the Plaintiffs for their FLSA claims, contract claims, and LWPA claims. The Court finds Plaintiffs' computations credible and adopt their findings as the measure of the unpaid wages due Plaintiffs.

## Interest

92.     Because they have been awarded liquidated damages, Plaintiffs are not entitled to an award of prejudgment interest with respect to their FLSA claims. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 715 (1945) (interest customarily is allowed as compensation for delay in payment and to allow an employee to recover both prejudgment interest and liquidated damages "would have the effect of giving an employee double compensation for damages arising from the delay in the payment of the basic minimum wages"); *Knowlton v. Greenwood Independent School District*, 957 F.2d 1172, 1183 (5th Cir. 1992) ("prejudgment interest may not be awarded for FLSA damages.").

93.     Although they are being awarded penalty wages under the Louisiana Wage Payment Act, they are entitled to prejudgment interest on their state law claims. *Henry v. Baton Rouge Sewer & Drain Service, Inc.*, No. 2015-CA-1385, 2016 WL 1545661 at *2, n.2 (La. App. 1 Cir. 2016).

94.     Plaintiffs are entitled to an award of post-judgment interest on the FLSA judgment entered in their favor. *Reeves v. International Telephone & Telegraph Corp.*, 705 F.2d 750, 751-52 (5th Cir. 1983); *Serrano v. Progressive Waste Solutions of Texas, Inc.*, No. 2:17-cv-00100, 2017 WL 11684678 at *5 (Dec. 4, 2017).

## Attorney's Fees

95.     The FLSA provides that "[t]he court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The FLSA "make[s] fee awards mandatory

38

for prevailing plaintiffs." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 416 & n.5 (1978).

"[A]n employer who violates the [FLSA] is . . . required to pay attorney's fees." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

96.     Similarly, under the LWPA, the Court "shall" award the plaintiffs reasonable attorney's fees to be paid by the defendant. La. Stat. Ann. § 23:632.

97.     Because Plaintiffs have established liability under these statutes, Defendant SSSC is ordered to pay reasonable attorney's fees.

Respectfully submitted,

*/s/ Caitlin Berberich*
Caitlin Berberich, TN Bar No. 025780
*Trial Attorney
*Admitted Pro Hac Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org


*/s/ Nicole Bucheri*
Nicole Bucheri, TX Bar No. 24095388
*Admitted Pro Hac Vice*
TEXAS RIOGRANDE LEGAL AID, INC.
316 S. Closner Blvd.
Edinburg, Texas 78539
Telephone: (956) 982-5552
Facsimile: (956) 591-8752
nbucheri@trla.org


*/s/ Daniel Davis*
Daniel Davis, LA No. 30141
*Admitted to Practice in W.D. La.*
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394

39

Facsimile: (225) 384-5419
dan@estesdavislaw.com


ATTORNEYS FOR PLAINTIFFS