## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

ARTEMIO ALVAREZ BARRON ET AL          CASE NO.  6:21-CV-03741

VERSUS                                JUDGE ROBERT R. SUMMERHAYS

STERLING SUGARS SALES CORP            MAGISTRATE JUDGE DAVID J. AYO


### MEMORANDUM RULING

Plaintiffs[1] are 31 migrant workers from Mexico employed by Sterling Sugars Sales Corporation ("Sterling") under the federal H-2A temporary agricultural worker visa program for the 2018 through 2022 sugarcane harvesting seasons. Plaintiffs contend that Sterling obtained their H-2A visas by falsely representing that Plaintiffs would be employed as agricultural workers; however, they were allegedly employed solely as heavy truck drivers, resulting in Sterling's payment to Plaintiffs at a wage rate below the prevailing wage for truck drivers. They further allege that they were never paid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. section 201, et seq., and Louisiana law. Plaintiffs seek declaratory and injunctive relief, money damages, interest, and attorney's fees. A bench trial was held on this matter and

---

[1] Artemio Alvarez Barron, Carlos Ernesto Pereyra Vidana, Miguel Martinez Martinez Villalobos, Jesus Lamberto Ramirez Lopez, Carlos Alfredo Ramirez Fernandez, Daniel Valenzuela Chavez, Alfredo Valdez Rodriquez, Felipe de Jesus Suarez Palafox, Julio Santiago Villegas Sifuentes, Pedro Abel Jimenez Gonzalez, Jesus Ivan Ramirez Fernandez, Jesus Pedro Zazueta Ochoa, Arnulfo Villegas Miranda, Jesus Alfredo Parra Martinez, Teresa de Jesus Sanchez Gonzalez, Ricardo Guadalupe Arce Ruiz, Oscar Rene Velez Sandoval, Jesus Ignacio Diaz Castro, Jesus Antonio Rodriguez Penuelas, Javier Avila Soto, Israel Diaz Meza, Hibys Alberto Vega Guerrero, Hector Martinez Arellano, Francisco Javier Chaires Mendoza, Felipe De Jesus Meza Dimas, Margarita Valenzuela Urias, Oscar Javier Ruiz Pacheco, Pedro Daniel Romero Ruelas, Fabian Flores Garcia, Juan Alejo Hernandez Canela, and Julian Cristobal Francisco Mendez.

the parties have now submitted post-trial briefing. The following will constitute the Court's findings of fact and conclusions of law.

## I.
### THE TRIAL RECORD AND THE COURT'S FINDINGS OF FACT

Sterling Sugars, LLC, operates a sugar mill in Franklin, Louisiana, (the "Sterling Mill" or "Mill") where sugarcane harvested from nearby farms is milled and processed.[2] Sterling Sugars, LLC, is the sole owner of Sterling.[3] Sterling Sugars, LLC, and Sterling have the same officers.[4] The officers and employees of Sterling Sugars, LLC manage and operate Sterling on a day-to-day basis.[5] Randall Romero has been the CEO of both Sterling Sugars, LLC and Sterling since 2013.[6] Rivers Patout has been the President and General Manager of both Sterling Sugars, LLC and Sterling for the past 21 years.[7] Mr. Patout's duties include overseeing the day-to-day work at the Sterling Mill, including supervision of employees at the Mill and those employed by Sterling.[8] Since 2014, Tim Soileau has been the office manager employed by Sterling Sugars, LLC, and primarily oversees the H-2A workers employed by Sterling.[9] Since 1983, Desiree Lange has been the administrative assistant employed by Sterling Sugars, LLC, and she oversees processing of payroll for both Sterling Sugars, LLC and Sterling.[10]

---

[2] Stipulations, ECF No. 164 ¶¶ 4, 7; Romero 86:10-16; 920:12-13; Patout, 834:3-835:12; 836:12-14; 839:3-6. The trial transcript in this matter can be found at ECF Nos. 219, 220, 221, 222, 223, and 224. For ease of reference, the Court will cite the witness name along with page and line numbers.
[3] ECF No. 13 (Corp. Disclosure); Romero, 86:7-9; Patout, 835:8-9.
[4] Romero, 85:21-23; 86:1-5.
[5] Patout, 142:13-143:8; Soileau, 120:1-7; 120:23-121:2; 814:4-9; Romero 88:3-11.
[6] Romero, 84:12-17; 85:24-25.
[7] Romero 86:1-5; Patout, 142:14-24; 834:2-11.
[8] Patout, 142:25-143:8; 834:9-835:12.
[9] Romero, 88:7-11; Soileau, 119:14-120:3; 120:23-121:2; 813:2-11, 814:2-9; 817:3-14.
[10] Lange, 109:7-19; 111:6-8; Romero, 88:3-6.

Sterling contracts with local sugarcane growers to transport their harvested sugarcane in heavy tractor-trailer trucks from the growers' farms to the Sterling Mill for processing.[11] Sugarcane is a perishable crop because the sugar content in the sugarcane diminishes with time. Ideally, sugarcane should be pressed in a sugar mill within 24 hours of harvest.[12] Since sugarcane is perishable, it is loaded onto "heavy trucks"—18-wheelers with gross weight exceeding 26,001 pounds—soon after harvesting and transported to a sugar mill for processing into raw sugar or molasses.[13] Due to the perishability of sugarcane and the limited harvesting season, Sterling drivers work long hours, regularly averaging 12 hours per day, seven days per week during each season.[14] Sterling obtained an exemption from the state to transport raw sugarcane in excess of the weight limits typically permitted by law for heavy trucks.[15] Sterling has never itself been a sugarcane grower. Sterling does not plant, grow, cultivate, or own any of the sugarcane that its employees transport from the sugarcane fields to the Sterling Mill.[16]

Prior to 2018, Sterling relied on U.S. workers to drive the heavy trucks that transport the harvested sugarcane to local mills and processing facilities.[17] During the 2017-18 sugarcane season, Sterling paid its U.S. drivers overtime wages, which were calculated as one and a half times their regular hourly wage rate for all hours worked in excess of 40 in each work week.[18] In 2018, Mr. Romero and Mr. Patout decided that Sterling would begin using H-2A workers to drive the heavy trucks that were used to transport harvested sugarcane.[19] Sterling filed

---

[11] Romero, 90:14-21; Soileau, 120:4-6; 125:18-20; 814:18-815:12; Patout, 837:13-838:7.
[12] Stipulations, ECF No. 164 ¶ 6.
[13] Stipulations, ECF No. 164 ¶ 5; Soileau, 828:25- 829:8; 830:15-831:1; Patout, 839:3-6; 863:17-19.
[14] Soileau, 121:7-16; 138:24-139:4; Patout, 863:17-19.
[15] Soileau, 828:25-829:10.
[16] Soileau, 832:13-17; Patout, 837:24-838:2, 902:10-15.
[17] Romero, 88:19-22; 89:19-22; 90:9-13; Lange, 110:10-12; 110:17-19; Patout, 847:11-13; 847:18-20.
[18] Romero, 89:23-90:1; Lange, 110:20-22.
[19] Romero, 90:2-8; Patout, 143:9-17; 847:8-10.

applications as an H-2A labor contractor and was registered as a farm labor contractor each season during the period from 2018-2022.[20] Sterling employed only H-2A workers during the four sugarcane seasons at issue in this lawsuit between 2018 and 2022.[21] Sterling filed H-2A Applications for Temporary Employment Certification seeking "agricultural equipment operators" during the relevant seasons: 2018-19 (75 workers requested), 2019-20 (169 workers), 2020-21 (200 workers), and 2021-22 (203 workers on one application and 6 workers on a separate application).[22] In the description of the activities to be performed by the requested workers, Sterling's H-2A application for the 2018-19 season stated that "Job duties include repair/maintain/continued maintenance of hauling equipment; haul/load/unload sugarcane."[23] Included under the heading entitled "List specific skills, licenses/certifications, and requirements of the job opportunity," Sterling stated "Must be able to lift/carry 50 lbs."[24]  The job order that accompanied the 2018 H-2A application provided that a "Class D Chauffeur's driver's license" was required for the job.[25] The H-2A applications for the 2019-20, 2020-21, and 2021-22 seasons stated that the job duties included "harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment."[26] None of the applications listed any driver's license requirement for the job.[27] For the 2021-22 season, Sterling filed a second H-2A application for

---

[20] Stipulations, ECF No. 164 ¶¶ 9-10; Romero 90:22-91:7; Exhibits P-6, Page 0002; P-7, Page 0002; P-8, Page 0004; P-9, Page 0004.
[21] Lange, 111:18-20; Soileau, 814:4-5; Patout, 845:24-846:1.
[22] Exhibits P-06, P-07, P-08, P09, and P-10.
[23] Exhibit P-6 at 0003, 0015.
[24] Id. at 0004.
[25] Id. at Page 0032; Patout, 149:24-150:3; 152:9-25.
[26] Exhibits P-7, Pages 0003, 0020; P-8, Page 0025; P-9, Page 0025; Patout, 149:24-150:3; 155:10-19.
[27] Exhibits P-7, Pages 0004, 0020; P-8, Page 0010; P-9, Page 0010; P-10, Page 0011; Patout, 155:7- 157:4.

the period from June 15, 2021 to January 31, 2022, seeking six additional agricultural equipment operators to "diagnose, adjust, repair, wash, maintain, and/or overhaul farm and hauling equipment/machinery used for sugarcane season."[28]

Sterling's H-2A applications stated that the anticipated number of hours of work per week, and the daily work schedule, would be 40 hours per week, from 7:00 a.m. to 4:00 p.m. Monday through Friday.[29] These applications also included an Employer Declaration or Assurances section in which Sterling stated that its H-2A workers would be paid at least the hourly "adverse effect wage rate" ("AEWR"),[30] the prevailing hourly or piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, whichever was highest, for every hour or portion thereof worked during a pay period; this statement was made under penalty of perjury by Sterling's president, Rivers Patout.[31] The U.S. Department of Labor ("DOL") approved each of Sterling H-2A applications.[32]   DOL's approval of each H-2A application permitted Sterling to submit a Form I-129 Petition for Nonimmigrant Workers to the U.S. Department of Homeland Security ("DHS") seeking issuance of H-2A visas for "beneficiary" H-2A employees chosen and identified by Sterling.[33] DHS granted each of Sterling's I-129 petitions, which authorized Sterling to hire Mexican nationals for agricultural

---

[28] Exhibit P-10, Page 0010; Patout, 162:15-163:6.

[29] Exhibits P-6, Pages P0003, 0013; P-7, Pages 0003, 0016; P8, Page 0009; P-9, Page 0009; P-10, Page 0010.

[30] The AEWR is defined in the applicable H-2A regulations and is discussed below.

[31] Exhibits P-6, Page 0010; P-7, Page 0013; P-8, Page 0015; P9, Page 0015; P-10, Page 0016; Patout, 149:24-150:3; 157:18-160:24.

[32] Exhibits P-38, Page 0001 (indicating that the 2018 H-2A application was approved because it "is timely and contains the required assurances" that the wages and working conditions of similarly employed U.S. workers will not be adversely affected.); P-6, Page P0009 (Sterling 2018 H-2A application addendum listing farm site places of employment); P-7, Pages 0008-0012, 0026-0030 (same for 2019); P-8, Pages 0018-0023 (same for 2020); P-9, Page 0018-0023 (same for 2021); P-11 (Plaintiffs' H-2A visas); Patout, 875:23-876:1, 876:9-11; 882:3-10; 894:25-895:6; 897:3-8.

[33] Exhibit P-63, Pages 0001-2, 0009, 0011, 0016-17, 0024, 0026, 0031-32, 0041, 0043, 0048-49, 0056; Patout, 164:18-166:2; 850:9-15; 851:2-7.

employment and those designated Mexican national "beneficiaries" of Sterling's I-129 petitions obtained H-2A visas to work for Sterling.[34]

All 31 Plaintiffs are Mexican nationals who received H-2A visas to work only for Sterling during one or more of the 2018, 2019, 2020, and 2021 sugarcane seasons.[35] Sterling required that Plaintiffs possess heavy truck driver's licenses similar to a U.S. Commercial Driver's License ("CDL"), authorizing them to drive heavy trucks with a gross weight of greater than 26,001 pounds on Louisiana roads.[36] Sterling assigned 30 of the 31 Plaintiffs to drive heavy trucks transporting sugarcane from farms to the Sterling Mill over public highways.[37] Plaintiffs

---

[34] Exhibit P-11 (Plaintiffs' H2A visas).

[35] Stipulations, ECF No. 164 ¶¶ 11-18; Exhibits P-11 (H-2A visas); P-03 (Payroll); P-04 (Timecards); P-6, P-7, P-8, P-9, P-10; P-17, Pages 20-29, RFA 47-60; P-18, Pages 0007-017, RFAs 116-136, 138; Rodriguez Penuelas, 427:15-25; 428:1-3; 432:2-19; Romero Ruelas, 329:12-20; 332:19-333:15; Vega Guerrero 179:4-5; 179:21:180:1 183:20-22; Valenzuela Chavez 199:22-25; 200:13-21 ; 205:13-22; Ruiz Pacheco 224:14-15; 225:5-17; Flores Garcia 256:9-11; 256:25-257:5; Parra Martinez 284:12-13; 285:1-6; Diaz Castro 304:18-21; 305:9-11; 307:20-25; 308:1-3; Romero Ruelas 308: 20-23; 329:12-20; 332:19-333:15; Zazueta Ochoa 356:21-24; 357:12- 14; 360:21-361:1-10; Villegas Sifuentes 370:7-10; 370:13-21; Martinez Arellano 386:10-11; 386:22- 387:5; Carlos Alfredo Ramirez Fernandez 403:6-9; 403:22-404:2; 406:13-21; Jesus Ivan Ramirez Fernandez 415:22-25; 416:9-20; 419:20-420:11; Rodriguez Penuelas 427:5-6; 427:15-428:3; 432:2- 19; Francisco Mendez 438:16-18; 439:6-11; 441:22-442:8; Pereyra Vidana 450:13-14; 450:23-451:3; 452:13-453:11; Ramirez Lopez 466:23-24; 467:12-14; 467:18-20; Alvarez Barron 495:4-5; 495:14- 19; 500:11-14; Valdez Rodriguez 515:10-13; 515:22-516:3; Velez Sandoval 537:2-3; 537:16-21; 540:3-8; Diaz Meza 548:13-14; 548:25-:549:5; 552:15-553:4; Chaires Mendoza 561:7-8; 561:17-22; 564:1-9; Arce Ruiz 569:24-570:2; 570:15-20; 573:5-13; Jimenez Gonzalez 579:7-8; 579:17-22; 582:12-25; Exhibits P-25 Martinez Villalobos 9:22-10:1; 16:25-18:5; P-26 Avila Soto 9:23-25; 18:11-17; 53:7-10; 54:11-16; 54:20-55:4; P-27 Suarez Palafox 8:9-10; 13:1-17; 13:22-14:8; 105:16-23; P-28 Villegas Miranda 7:17-20; 13:14-14:9; 82:20-83:4; 118:17-25; P-29 Hernandez Canela 10:8-9; 13:21-14:20; 63:7-15.

[36] Soileau, 126:4- 127:4; 129:21-130:6; 130:21-132:7.

[37] Vega Guerrero 180:2-4; 182:17-20; 194:14-22; Valenzuela Chavez 200:22-24; 203:22-204:3; Ruiz Pacheco 225:18-22; 226:25-227:9; 236:23-237:3; 249:24-250:7; 253:7-10; Flores Garcia 257:6-13; 259:21-23; Diaz Castro 305:12-15; 321:4-6; Romero Ruelas 329:21-330:5; 330:21-331:4; 334:5-11; 335:15-18; 3356:1-3; 337:9-12; 337:25-338:14; Zazueta Ochoa 357:17-22; Villegas Siguentes 370:22-371:1; 371:11-13; 372:2-6; 384:19-385:2; Martinez Arellano 387:6-19, 388:25-389:8; Carlos Alfredo Ramirez Fernandez 404:3-405:12; 405:18-20; 407:24-408:4; 411:18-23; Jesus Ivan Ramirez Fernandez 416:21-25, 417:19-22, 418:10-14); Rodriguez Penuelas 428:4-25; 429:20-25; Francisco Mendez 439:12-440:12; 440:23-441:5; Pereyra Vidana 451:4-6; 451:21-24; Ramirez Lopez 467:21- 468:16; Artemio Alvarez Barron 495:20-496:1; 509:23-24; Velez Sandoval 537:22-538:7; Diaz Meza 549:6-8; Chaires Mendoza 561:23-562:11; 562:24-563:5 ; 565:4-9; Arce Ruiz 570:21-24; 571:23-25; Jimenez Gonzalez 579:23-580:14; 581:2-14; Admitted Exhibits P-25, Martinez Villalobos 37:8-14; 107:19-110:4; 110:24-111:18; 112:13-16; 127:15-128:1; 584:1-9; P-26 Avila Soto 56:22-58:15; 62:16-19; 65:16-66:9; 164:6-9; P-27 Suarez Palafox 28:6-8; 28:14-16; 41:21-25; 43: 14-44:1; 44:17- 20; 45:23-46:11; 47:8-15; 78:6-11; 109:23-110:8; P-28 Villegas Miranda 25:20-25; 26:8-27:21; 31:1- 3; 48:13-23; 59:10-20; 116:23-118:16; 120:12-21; P-29 Hernandez Canela 37:8-20; 44:6-11; 65:11- 20; Ruiz Pacheco 229:12-230:9 (regarding Lopez Osuna); Diaz Meza 551:17-552:5 (regarding Lopez Osuna); Parra Martinez 287:5-288:21 (regarding Valenzuela Flores); Villegas Sifuentes 372:19-373:9 (regarding Valenzuela Flores); Alvarez Barron 497:23-498:17 (regarding Valenzuela

began their workday at the Sterling Mill by locating their assigned trucks each morning, driving their trucks to the assigned farms where sugarcane was to be loaded, and transporting the harvested sugarcane to the Sterling Mill.[38] Plaintiffs transported multiple loads of sugarcane between farms and the Sterling Mill in a single day.[39] The distance of each trip that Plaintiffs made between the farm and the Sterling Mill was between five and 100 miles, and the trips could take multiple hours each way due to the weight of the load.[40] The trucks driven by Plaintiffs were owned by Sterling and stored at the Sterling Mill each night.[41] Each truck had a gross vehicle weight of greater than 26,001 pounds.[42]

---

Flores); Diaz Meza 551:3-16 (regarding Valenzuela Flores) Arce Ruiz 572:11-21 (regarding Valenzuela Flores); Exhibits P-13; P-17, Pages 0020-30, RFAs 47-60, 63; P-18, Pages 0007-15, 0017, RFAs 116-132, 138.

[38] Soileau, 123:21-124:5; Vega Guerrero 180:5-15; Valenzuela Chavez 201:5-10; 201:14-19; 213:4-15; Ruiz Pacheco 225:23-226:5; 236:23-237:3; Flores Garcia 257:14-24; 258:7-16, 259:2-9; Diaz Castro 305:21-306:10; Romero Ruelas 330:2-7; Zazueta Ochoa 357:23-358:13; Villegas Sifuentes 371:14-18; 371:25-372:1; Martinez Arellano 387:20-388:14; Carlos Alfredo Ramirez Fernandez 404:3-405:12; Jesus Ivan Ramirez Fernandez 417:1-10; Rodriguez Penuelas 428:4-25; Francisco Mendez 439:12-440:12; Pereyra Vidana 451:7-14; Ramirez Lopez 467:21-468:16; Alvarez Barron 495:20-496:1; 497:3-6; 510:5-9; Valdez Rodriguez 516:4- 517:3; Velez Sandoval 538:2-3; Diaz Meza 549:9-25; 554:15-555:3; Chaires Mendoza 562:1-6; 565:4-9; Arce Ruiz 570:2-571:25; 574:2-5; Jimenez Gonzalez 579:23-580:14; 584:1-9; Exhibits P-25 Martinez Villalobos 107:19-110:4; P-26 Avila Soto 60:16-18; 64:10-16; 64:25-65:2.

[39] Soileau, 124:24-125:5; Vega Guerrero 180:16-21; Valenzuela Chavez 201:20-21; Ruiz Pacheco 226:18-20; Flores Garcia 259:14-16; Diaz Castro 306:11-12; Romero Ruelas 330:11-13; Villegas Sifuentes 371:19-21; Martinez Arellano 388:20-21; Carlos Alfredo Ramirez Fernandez 405:7-8; Jesus Ivan Ramirez Fernandez 417:17-18; Rodriguez Penuelas 428:21-22; Francisco Mendez 440:13-15; Pereyra Vidana 451:17-18; Ramirez Lopez 468:12-18; Alvarez Barron 497:9-10; Valdez Rodriguez 517:4-5; Velez Sandoval 538:11-13; Diaz Meza 550:1-3; Chaires Mendoza 562:16-19; Arce Ruiz 571:9-14; Jimenez Gonzalez 580:18-20; Exhibits P-25 Martinez Villalobos 38:22-39:2; P-26 Avila Soto 60:19-21; P-28 Villegas Miranda 32:17-20.

[40] Exhibits P-06, 0009, 0021; P-07, 0008-11, 0026-29; P-08, 0018-23; P-09, 0018-23; Romero, 942:20-25; Vega Guerrero 180:25-181:2 (70 to 100 miles); Valenzuela Chavez 201:25- 202:2 (two and a half to three hours); Ruiz Pacheco 226:11-14 (two hours from mill to farm); Flores Garcia 259:10-13(70-80 miles away); Diaz Castro 306:13-17 (over an hour each way); Romero Ruelas 330:14-16 (100 miles); Zazueta Ochoa 358:1-2 (farms two hours and fifteen minutes away); Villegas Sifuentes 371:22-24 (one to two and a half hours); Martinez Arellano 388:22-24 (three hours); Carlos Alfredo Ramirez Fernandez 404:20-21 (one hour); Jesus Ivan Ramirez Fernandez 417:11-15 (one to three hours); Rodriguez Penuelas 428:23-25 (two hours each way); Francisco Mendez 440:6-7 (40 to 70 miles); Pereyra Vidana 451:15-16 (150 to 200 miles); Ramirez Lopez 468:6-8 (drove two hours away); Alvarez Barron 497:7-8 (up to 60 miles); Valdez Rodriguez 517:6- 10 (two to three hours to farms), 518:15-23 (weight puts limits on how fast you can go); Velez Sandoval 538:8-10 (60 miles); Diaz Meza 550:4-6 (100 miles); Chaires Mendoza 562:12-15 (two hours each way); Arce Ruiz 571:15-17 (150 miles); Jimenez Gonzalez 580:15-17 (two and a half to three hours away); Exhibits P-25 Martinez Villalobos 108:4-7; 111:4-18 (forty minutes to four hours); P-26 Avila Soto 57:25-58:3 (Franklin, LA to Bunkie); P-27 Suarez Palafox 49:3-12; 49:20-50:2 (twenty minutes to two hours); P-28 Villegas Miranda 27:9-12; 51:3-12 (three hours each way).

[41] Romero, 93:2-11.

[42] Stipulations, ECF No. 164 ¶ 5; Soileau, 125:18-20; 828:25-829.

Plaintiffs did not load the harvested sugarcane—workers on each farm where sugarcane was grown loaded the harvested sugarcane onto the trucks driven by Plaintiffs.[43] This loading process generally took between 30 and 40 minutes.[44] Plaintiff Jesus Alfredo Parra Martinez worked at the Sterling Mill itself, driving light trucks weighing less than 26,001 pounds to shuttle unloaded sugarcane within the mill premises.[45] Plaintiffs Jesus Antonio Rodriguez Penuelas and Pedro Daniel Romero Ruelas worked as mechanics at the Sterling Mill during the 2021-22 season, and their job duties consisted of maintaining and repairing only those heavy trucks used to transport sugarcane and other trucks used within the Sterling Mill.[46] They did not repair or maintain the equipment used to harvest sugarcane delivered to the mill. Mechanic work was performed at the Sterling Mill, within the facility, or, on a rare occasions, on public highways.[47]

Sterling compensated Plaintiffs for their work at the hourly AEWR in effect at the time the work was performed.[48] Plaintiffs usually worked well in excess of 40 hours per week.[49] Plaintiffs typically worked 12 hours per day, seven days per week.[50] Sterling did not pay any premium or overtime wages for those workweeks during which a Plaintiff worked in excess of 40 hours.[51] Sterling paid Plaintiffs every two weeks, with the work week being from Wednesday to Tuesday.[52] Workers typically received their paychecks on the Monday following the close of

---

[43] Soileau 821:21-822:7; Villegas Sifuentes, 383:12-23.
[44] Soileau, 832:18-21; Ruiz Pacheco 233:25-234:10 (around 30 minutes).
[45] Parra Martinez 285:7-286:4; 286:9-10; Soileau, 120:8-21 (description of within-mill mules and Volvos).
[46] Romero Ruelas 331:5-24 (maintenance to brake systems, suspension, lighting systems on same trucks that drove in previous seasons), Rodriguez Penuelas 430:1-22; changing tires and parts in same types of trucks driven in previous seasons); Exhibit P-18, Pages 0015-17.
[47] Soileau, 136:21-137:9; Rodriguez Penuelas 431:2-8; Romero Ruelas 354:8-14; Exhibit P-18, Page 0017.
[48] Stipulations, ECF No. 164 ¶¶ 12, 14, 16, 18; Exhibit P-17, Page 0033-37; P-18, Page 0019-22.
[49] Exhibits P-02 (Column D); P-04 (timecards).
[50] Soileau, 121:7-16.
[51] Stipulations, ECF No. 164 ¶¶ 12, 14, 16, 18; Exhibits P-17, Page 0034; P-18, Page 0020; P-3; Romero, 927:11-14; Lange, 111:18-23; 115:11-14; Patout, 146:10-14.
[52] Lange, 109:24-110:4.

the payroll period.[53] Sterling's pay and time records did not distinguish between time spent transporting sugarcane from farms to the Mill and time spent in the Mill yard shuttling sugarcane within the mill, nor did Sterling maintain records tracking the days these Plaintiffs were temporarily assigned to stay at the mill driving light trucks.[54]

Plaintiffs allege that (1) Sterling violated the FLSA by failing to pay overtime compensation to Plaintiffs between 2018 and 2022; (2) Sterling's FLSA violations were willful; (3) Sterling breached its work contracts by failing to pay Plaintiffs overtime at the hourly wage rate that Louisiana and federal law require for truck drivers; (4) Sterling violated the Louisiana Wage Payment Act; and (5) Plaintiffs are entitled to costs and attorney fees.

At the trial of this matter, five (5) Plaintiffs[55] testified by deposition and twenty-five (25) Plaintiffs[56] testified live by remote access regarding their job duties and the facts surrounding the case. One Plaintiff, Felipe De Jesus Meza Dimas, did not present any testimony at the trial.

## II.
### CONCLUSIONS OF LAW AND APPLICATION OF FACTUAL FINDINGS TO THE LAW

The Court has subject matter jurisdiction over this action under the Fair Labor Standards Act "FLSA."[57] This Court has supplemental jurisdiction over Plaintiffs' state law claims under

---

[53] Lange, 110:5-7.
[54] Exhibits P-3 and P-4.
[55] Miguel Martinez Villalobos, Javier Avila Soto, Felipe de Jesus Suarez Palafox, Arnulfo Villegas Miranda, and Juan A. Hernandez Canela.
[56] Artemio Alvarez Barron, Carlos Ernesto Pereyra Vidana, Jesus Lamberto Ramirez Lopez, Carlos Alfredo Ramirez Fernandez, Daniel Valenzuela Chavez, Alfredo Valdez Rodriquez, Julio Santiago Villegas Sifuentes, Pedro Abel Jimenez Gonzalez, Jesus Ivan Ramirez Fernandez, Jesus Pedro Zazueta Ochoa, Jesus Alfredo Parra Martinez, Teresa de Jesus Sanchez Gonzalez, Ricardo Guadalupe Arce Ruiz, Oscar Rene Velez Sandoval, Jesus Ignacio Diaz Castro, Jesus Antonio Rodriguez Penuelas, Israel Diaz Meza, Hibys Alberto Vega Guerrero, Hector Martinez Arellano, Francisco Javier Chaires Mendoza, Margarita Valenzuela Urias, Oscar Javier Ruiz Pacheco, Pedro Daniel Romero Ruelas, Fabian Flores Garcia, and Julian Cristobal Francisco Mendez
[57] 29 U.S.C. § 216.

28 U.S.C. § 1367 because these claims form part of the same case or controversy.[58] Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in St. Mary Parish, Louisiana.[59]

### A. Plaintiffs Employed as Mechanics.

Defendants continue to assert that two Plaintiffs who joined the case, Jesus Antonio Rodriguez Penuelas and Pedro Daniel Romero Ruelas should be excluded from the case because they are not similarly situated to the collective class based upon their job duties. Specifically, they were employed as mechanics, rather than truck drivers. However, Mr. Penuelas and Mr. Ruelas were added to the case as named Plaintiffs based upon a motion filed back in 2022.[60] These two plaintiffs participated in the case and testified at trial as named plaintiffs. As such, they will not now be excluded from the case. To the extent that the differences in their employment are relevant to any of the claims or defenses in this case, the Court will address those differences.

### B. FLSA Overtime Claims.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[61] An employee bringing an action for unpaid overtime compensation must demonstrate by a preponderance of the evidence that: (1) there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) the employee

---

[58] Stipulations, ECF No. 164 ¶ 2.
[59] Stipulations, ECF No. 164 ¶ 3.
[60] *See* ECF No. 49, Plaintiffs' Partially Unopposed Motion for Leave to Amend Complaint; and ECF No. 65, Order granting motion for leave to amend.
[61] 29 U.S.C. § 207(a)(1); *see also Faludi v. U.S. Shale Solutions, LLC*, 950 F.3d 269, 272-73 (5th Cir. 2020); *Johnson v. Heckmann Water Res. (CVR), Inc.,* 758 F.3d 627, 630 (5th Cir. 2014).

engaged in activities within the coverage of the FLSA; (3) the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.[62]

The FLSA exempts workers "employed in agriculture" from its requirement that employers pay overtime for all hours worked over 40 in a workweek.[63] Employers bear the burden of proving each claimed FLSA exemption.[64] The FLSA defines "agriculture" as:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.[65]

This definition encompasses both "primary" and "secondary" agriculture.[66] Primary agriculture "includes farming in all its branches,"[67] such as "cultivation and tillage of the soil, dairying the production, cultivation, growing and harvesting of any agricultural or horticultural commodities and the raising of livestock, bees, fur-bearing animals or poultry."[68] Employees engaged in any of these activities are "employed in agriculture," and thus exempt from the FLSA's overtime requirement. Secondary agriculture "includes operations other than those which fall within the primary meaning of the term. It includes any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with such farming operations."[69]

---

[62] *Johnson*, 758 F.3d at 630.
[63] 29 U.S.C. § 213(b)(12).
[64] *Dewan v. MI, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017).
[65] 29 U.S.C. § 203(f).
[66] *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949); 29 C.F.R. § 780.105(b) and (c).
[67] 29 C.F.R. § 780.105(b).
[68] *Id*.
[69] 29 C.F.R. § 780.105(c).

The Fifth Circuit has addressed the application of the FLSA's agricultural exemption to drivers of semi-trailer tractor trucks used to haul sugarcane from the field of independent growers over public highways to a sugar mill in the case of *Wirtz v. Osceola Farms Co.*[70] In the *Osceola Farms* case, the court held that drivers of tractors and semitrailer tractor trucks hauling sugar cane from the fields of independent growers to processing mills, and personnel who worked in a repair shop on employer's equipment used in fields of independent growers did not fall within the agriculture exemption.

Plaintiffs were employed by Defendant Sterling during the 2018-19, 2019-20, 2020-21 and 2021-2022 sugarcane seasons and were engaged in activities within the coverage of the FLSA.[71] During the 2018-19, 2019-20, 2020-21 and 2021-22 sugarcane seasons, Defendant Sterling was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A) and was subject to the FLSA's requirements.[72]

Sterling has argued throughout this case that the agricultural exemption applied to the Plaintiffs. However, Sterling does not address this issue at all in its post-trial briefing; instead, it relies primarily on its contention that any FLSA violation was not willful. Because Sterling has not explicitly abandoned the argument, the Court must first address this exemption.

The Court has reviewed the testimony of the thirty Plaintiffs who testified at trial. Based on their description of the duties that they performed, the Court finds that the agricultural exemption does not apply to these Plaintiffs. Plaintiffs were not employed in primary agriculture. None of the Plaintiffs cultivated or tilled soil, produced, grew, or harvested sugarcane (or any other agricultural commodity), nor did they work on the fields of any independent farm. Rather,

---

[70] 372 F.2d 584 (5th Cir. 1967).
[71] Stipulations, ECF No. 164 ¶¶ 12, 14, 16, 18, 20.
[72] *Id*. at ¶ 20; Answer, Doc. 81 ¶ 119.

Plaintiffs were employed as heavy truck drivers transporting harvested sugarcane from independent sugarcane farms to the Sterling Mill for processing, and two worked as mechanics at the Mill in 2021. The transportation of crops is not part of "harvesting" as defined by the FLSA.[73]

Plaintiffs were also not employed in secondary agriculture. Transporting sugarcane between one location—the farm where it is harvested—to a second location—the sugar mill where it is processed—is not work performed in conjunction with farming activities.[74] In this regard, it is work performed for the *employer*, and not the work performed by the independent farmer, that determines whether a worker is engaged in secondary agriculture.[75] Plaintiffs were employed by Sterling, and Sterling did not plant, grow, or cultivate sugarcane; nor did it have any direct ownership interest in the independent farms for whom it provided labor or the crops those farms harvested. Moreover, the transportation of harvested sugarcane in heavy trucks over public roads between the farms and the Sterling Mill was not work performed "on a farm." To the contrary, the transportation of harvested sugarcane is analogous to the transportation of harvested alfalfa, which is discussed in the applicable regulations as an example of activity that is *not* performed "on a farm"— "employees of an alfalfa dehydrator engaged in hauling chopped or unchopped alfalfa away from the farms to the dehydrating plant are not employed in a practice performed 'on a farm.'"[76]

More importantly, this case falls squarely within the holding of the *Osceola Farms* case and Sterling has provided no persuasive basis to distinguish that case. The *Osceola Farms* case

---

[73] *Osceola Farms*, 372 F.2d at 588; *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300-01 (1977).
[74] 29 C.F.R. § 780.138.
[75] *See Bayside*, 429 U.S. at 303 ("Since the status of the drivers is determined by the character of the work which they perform for their own employer, the work of the contract farmer cannot make the drivers agricultural laborers.")
[76] 29 C.F.R. § 780.134.

holds that those who haul sugarcane on heavy trucks as well as those who worked in a repair shop on employer's equipment used in fields of independent growers do not fall within the agricultural exemption. Accordingly, the two plaintiffs who were employed as mechanics—Mr. Penuelas and Mr. Ruelas—like the other plaintiffs who testified, are not subject to the agricultural exemption.

In sum, the agricultural exemption does not apply to the thirty Plaintiffs who testified at trial and, with respect to these plaintiffs, the Court concludes that the FLSA required that they be paid overtime compensation. As to Plaintiff Felipe Meza Dimas, who failed to appear at trial and provide any testimony as to his job duties, the Court concludes that Mr. Dimas has not met his burden of proof and cannot recover.

As to the calculation of the overtime wages due to each of the Plaintiffs, prior to trial, the parties had agreed to the calculation of damages based upon different scenarios. The Court will thus request that counsel submit the amount of specific damages due to each Plaintiff based upon the Court's ruling in their proposed judgment.

### C. Willful Violation of FLSA.

Plaintiffs argue that a three-year statute of limitations applies to their FLSA claims because Defendant's failure to pay overtime was willful pursuant to 29 U.S.C. § 255. A violation is "willful" if the employer either "knew or showed reckless disregard" for "whether its conduct was prohibited by the statute."[77] Plaintiffs have the burden of demonstrating willfulness.[78] A negligent violation is not a willful violation, and an unreasonable violation does not "necessarily

---

[77] *Reich v. Bay, Inc*., 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)).
[78] *See Ikossi–Anastasiou v. Bd. of Supervisors of La. State. Univ*., 579 F.3d 546, 552 (5th Cir. 2009).

constitute a willful violation."[79] Further, "[s]imply failing to seek legal advice concerning its pay practice does not evidence a willful violation" of the FLSA."[80] "A finding that the defendant failed to show good faith…does not mean that the plaintiffs showed that the defendant willfully violated the statute."[81]

The Court has reviewed the evidence in the record—specifically the testimony of the representatives of Sterling—and concludes that Plaintiffs have failed to carry their burden of proving that Sterling's violation of the FLSA was willful. Timothy Soileau, Sterling's office manager who was directly responsible for supervising H-2A workers, testified regarding the wide variety of job duties that H-2A employees performed for Sterling.[82] Mr. Soileau testified that the H-2A workers performed a variety of operations, including driving farm equipment, combine harvester, loaders, tractor and trucks.[83] Rivers Patout, the general manager Sterling Sugars, LLC, testified that when Sterling switched to using H-2A workers, they did not believe they were owed overtime compensation because Sterling believed they were exempt.[84] Mr. Patout explained that when Sterling used U.S. workers in prior years, the job duties of these workers were different from the work of H-2A workers—specifically, the H-2A workers performed more agricultural-type duties.[85] Accordingly, he believed them to be exempt from overtime compensation.[86]

---

[79] *Mireles v. Frio Foods, Inc*, 899 F.2d 1407, 1416 (5th Cir. 1990).
[80] *Mireles*, 899 F.2d at 1416.
[81] *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. Appx. 324, 326 (5th Cir. 2011) (holding that district court committed reversible error by misplacing the burden of proof regarding willful FLSA violation claim on the employer).
[82] Soileau, 822-823.
[83] *Id*.
[84] Patout, 848-850.
[85] *Id*.
[86] *Id*.

The Court found the testimony of both Mr. Soileau and Mr. Patout to be credible. Their testimony demonstrates that Sterling believed that the Plaintiffs were not entitled to overtime compensation. Further, their testimony demonstrates that Sterling was not intentionally hiring a group of H-2A workers to perform duties that did not qualify as agricultural in nature. Sterling employed hundreds of H-2A workers who did in fact qualify as agricultural workers and were exempt from overtime compensation. Only a small percentage of those workers did, in fact, qualify for overtime compensation due to the job duties which they ultimately performed. While the Court has determined that Sterling was incorrect as to the applicability of the agricultural exemption and Plaintiffs' entitlement to overtime compensation, the record does not support Plaintiffs' claim that Sterling acted intentionally. Plaintiffs' claims and damages are therefore limited by a two-year statute of limitations.

### D.  FLSA Liquidated Damages.

Plaintiffs also argue that they are entitled to their unpaid overtime wages and "an additional equal amount as liquidated damages" pursuant to 29 U.S.C. § 216(b), because Sterling has not "show[n] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.[87] There is a strong presumption in favor of liquidated damages, and the doubling of an award "is the norm, not the exception."[88]  "The granting of liquidated damages is mandatory under section 216(b) except where the employer shows to the satisfaction of the court that its act or omission was in 'good faith' and was based upon reasonable grounds for believing that it was not violating the Act."[89] An employer who violates the FLSA bears a

---

[87] 29 U.S.C. § 260.
[88] *Shea v. Galaxie Lumber & Const. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998).
[89] *Lowe v. Southmark Corp.*, 998 F.2d 335, 337 (5th Cir. 1993).

"substantial" burden of showing that it acted in good faith "and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."[90] Good faith requires the employer to investigate potential liability under the FLSA.[91] Ignorance cannot be the basis for reasonable belief.[92] The employer must show that it undertook active or affirmative steps to investigate and verify their FLSA compliance, for "[a]pathetic ignorance is never the basis of a reasonable belief."[93]

The Fifth Circuit has held that an employer's reasonable reliance on a federal agency's determination that the employer's pay practices comply with the FLSA is sufficient for an employer to avail itself of the good-faith defense.[94] Particularly relevant here, when an employer relies on a Department of Labor determination "that an employee is legitimately classified," then the employee's belief that its pay practices comply with the FLSA is a good-faith belief.[95]

Here, the classification of Plaintiffs' job duties was subject to multiple levels of state agency and government agency scrutiny, including the determinations by both the Louisiana Workforce Commission and the Department of Labor's Office of Foreign Labor Certification that the "Agricultural Equipment Operator" SOC 45-2091 code should apply to Sterling's application for temporary employment certification. The evidence submitted reflects that the Department of Labor modified the Louisiana Workforce Commission's initial 2018 determination that Plaintiffs should be classified as "Farm Crop Workers," but still did not assign

---

[90] 29 U.S.C. § 260. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990); *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003).
[91] *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016).
[92] *Id.*
[93] *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).
[94] *Steele*, 826 F.3d at 246 (finding that good faith defense to willful FLSA violations applied to restaurant who relied on the Department of Labor's determination that its tip-pooling system complied with the FLSA).
[95] *Id.* (quoting *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).

a "Heavy and Tractor-Trailer Driver" code.[96] From 2019 to 2021, the Department of Labor issued temporary employment certification under the SOC 45-2091 code for Agricultural Equipment Operators. Mr. Patout, Sterling's CEO and certifying officer for Sterling's applications for temporary labor certification, testified that he had no reason to suspect that the job classifications issued by the Department of Labor and the Louisiana Workforce Commission were inappropriate and that he "relied heavily" on those agencies' determinations.[97] The Fifth Circuit has held that the good-faith defense applies when an employer has no reason to "suspect that [it is] out of compliance with the FLSA."[98] The Court finds that Sterling has satisfied its burden and has "show[n] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.[99] Accordingly, no liquidated damages will be awarded.

### E.  Breach of Contract.

Plaintiffs claim that Sterling breached their contract by failing to pay the Plaintiffs the correct hourly rate. To recover on their contract claim, Plaintiffs must prove that a contract exists, that Sterling breached the contract, and the amount of damages caused by Sterling's breach.[100] The Court has already ruled that a contract existed between Sterling and Plaintiffs.[101] The parties' contract dispute centers on what hourly wage rate the parties' employment contracts required for each Plaintiff.

---

[96] For the 2018 harvest season, the Department of Labor classified Plaintiffs under the "Farmworkers – Crop" SOC code. From 2019 to 2021, the Department of Labor classified Plaintiffs under the "Agricultural Equipment Operator" SOC code. Patout, 883:25-885:19.
[97] Patout, 862:24-25, 863:1; 883:8-18; 891:11-20.
[98] *Steele*, 826 F.3d at 246 (quoting *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)).
[99] 29 U.S.C. § 260.
[100] *Ross v. State through University of Louisiana System*, 358 So.3d 162, 167 (La. App. 4 Cir. 2023).
[101] Trial Transcript at 963:1.

18

Louisiana law requires contract ambiguities to be resolved against the contract drafter.[102] Louisiana statutes further provide that where a contract ambiguity "arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party . . . ."[103]

The federal agricultural "guestworker" program, currently known as the H-2A program was created by the Immigration and Nationality Act,[104] and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of foreign workers to perform agricultural labor or services of a seasonal or temporary nature. An employer in the United States may import foreign workers to perform agricultural labor or services of a temporary nature if the DOL certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers.[105] Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

Employers seeking the admission of H-2A workers must first file an Application for Temporary Employment Certification with the DOL.[106] This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations.[107] Employers must certify that the job offer describes the actual terms and

---

[102] La. C.C. art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., 79 F.3d 393, 400 (5th Cir.1996) ("Under Louisiana law, ambiguous clauses are construed against the drafter."); *Kuhn v. Stan A. Plauche Real Estate Co*., 185 So.2d 210, 213 (1966) (Any "ambiguity or contradiction which existed in the language of the contract must be construed against the party who prepared the contract.").
[103] La. C.C. art. 2057.
[104] 8 U.S.C. § 1101, et seq.
[105] 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100.
[106] 20 C.F.R. § 655.130.
[107] 20 C.F.R. § 655.121(a)(1).

conditions of the employment being offered and that it contains all material terms of the job.[108] Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly situated U.S. workers.[109]  Among these terms is a requirement that for every hour or portion thereof worked during a pay period, the employer will pay the workers the highest of the AEWR, the applicable prevailing wage for the occupation in the geographic area where the work is to be performed, the federal minimum wage, or the state minimum wage.[110]  In the 2018, 2019, 2020, and 2021 seasons, the highest of the available wages in Louisiana was the AEWR, which was $10.73 per hour from January 4, 2018 to January 8, 2019, $11.33 per hour from January 9, 2019 to January 1, 2020, $11.83 per hour from January 2, 2020 to February 22, 2021, $11.88 per hour from February 23, 2021 to December 28, 2021, and $12.45 from December 29, 2021 through the present.[111]

In contrast, an employer must file an application for temporary employment certification under the H-2B program to obtain foreign workers for temporary or seasonal *nonagricultural* jobs, such as the heavy truck driving duties Plaintiffs were assigned.[112] Employers seeking certification to employ H-2B nonagricultural workers must offer wages at least equal to the prevailing wage for the occupation in the area of intended employment, as determined by the National Prevailing Wage Center ("NPWC") of the DOL.[113] Absent employer-submitted data, the NPWC prevailing wage is the arithmetic mean of the wages of workers similarly employed

---

[108] 20 C.F.R. § 653.501(c)(3)(viii).
[109] 20 C.F.R. §§ 655.120, 655.122 and 655.135.
[110] 20 C.F.R. § 655.120.
[111] *See* 82 Fed.  Reg. No. 60628 (December 21, 2017); 83 Fed. Reg. 66306 (December 26, 2018); 84 Fed. Reg. 69774 (December 19, 2019); 86 Fed. Reg. 10996-10997 (February 23, 2021); and 86 Fed. Reg. 71282 (December 15, 2021).
[112] 8 U.S.C. §1101(a)(15)(H)(ii)(b) and 20 C.F.R. §§ 655.1, et seq.
[113] 20 C.F.R. § 655.10.

(as defined by the Bureau of Labor Statistics' Occupational Employment Statistics codes) in the area of intended employment.

An employer seeking the admission of H-2B workers must obtain a labor certification from the DOL.[114] In order to obtain a labor certification, the employer files an application with DOL.[115] This application must include an attestation from the employer that it will comply with applicable regulatory requirements, including payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B employment certification,[116] and payment of overtime wages to all workers for any overtime hours.[117]

On February 28, 2023, after the contracts at issue in this case were already performed, the United States Department of Labor issued a Final Rule,[118] codified at 20 C.F.R. § 655.120(b) (the "Final Rule") and increased the minimum wages that must be paid to seasonal H-2A workers who engaged in hauling duties. "Under this final rule, if the job duties on the H-2A application (including the job order) constitute a combination of SOC codes that do not all fall within the field and livestock worker (combined) occupational grouping, the Department will determine the applicable adverse effect wage rate ("AEWR") based on the highest AEWR among the SOCs assigned to the job opportunity."[119]

According to the Final Rule, the United States Department of Labor took the position that "where an employer's job opportunity involves a variety of duties, some of which are consistent with higher paid SOC codes in the State, territory, or equivalent area, the Department would not satisfy its statutory obligation if it were to establish the required wage floor for H-2A

---

[114] 8 C.F.R. § 214.2(h)(6)(iii)(C).
[115] 20 C.F.R. § 655.15.
[116] 20 C.F.R. §§ 655.10(a), 655.18(b)(5) and 655.20(a).
[117] 20 C.F.R. § 655.18(b)(6).
[118] 88 Fed. Reg. 12,760 (Feb. 28, 2023).
[119] Id. at 12783.

employers at a lower rate than the AEWR applicable to workers in the United States who perform work in the higher paid SOC code." Ultimately, "the AEWR methodology adopted in the Final Rule provides a minimum wage rate threshold that an employer must offer and pay a worker for performing the H-2A job opportunity, including those H-2A job opportunities that require a worker to perform a combination of tasks that cannot reasonably be classified within a single SOC code."[120] Before the Final Rule became effective on March 30, 2023, the Department of Labor classified the combination of duties Defendant described under the "Agricultural Equipment Operator" Standard Occupational Classification code at rates that applied before the Final Rule was effective and changed the methodology. In separate litigation, on August 25, 2025, the Court vacated the Final Rule.

Plaintiffs' breach of contract claim is premised on the notion that Sterling misclassified its employees as "Agricultural Equipment Operators" under the H-2A program and that Plaintiffs should have instead been classified as "Heavy and Tractor-Trailer Truck Drivers" under the H-2B program. Plaintiffs' employment contracts with Sterling consisted of the job order (and the terms of that order), Sterling's H-2A application, and any obligations required under 8 U.S.C. § 1188, 29 CFR part 501, or 20 C.F.R. § 655.122.[121] Plaintiffs argue that under both Louisiana and federal law, the regular hourly rate of pay due to Plaintiffs is not the farmworker AEWR that Sterling paid, but rather the higher average hourly rate that U.S. workers who drive heavy trucks earn in Louisiana. Sterling argues instead that because DOL approved its H-2A applications—in which Sterling described the work to DOL as including "hauling"

---

[120] 88 Fed. Reg. 12,760, at 12,778.
[121] 20 C.F.R. § 655.122(q); 29 C.F.R. § 501.5.

sugarcane—the agency's certification conclusively establishes that the AEWR is the pay rate for which Plaintiffs contracted.

Sterling's work description in its 2018-19 H-2A application stated that job duties included "repair/maintain/continued maintenance of hauling equipment; haul/load/unload sugarcane."[122] Sterling's work description in its 2019-20, 2020- 21, and 2021-22 H-2A applications stated that job duties included "harvesting sugarcane, including operation of cane harvester to cut and remove leaves from crop; loading pieces of sugarcane into wagons; loading/unloading sugarcane; haul sugarcane; repairing, maintaining farm equipment, continued maintenance of farmland and farm equipment."[123] Sterling's 2021 H-2A application for mechanics similarly refers to repairing "farm and hauling equipment."[124]

The Department of Labor approved Sterling's applications for temporary labor certification, which plainly disclosed "haul[ing] sugarcane" as a job duty and concluded that Plaintiffs' work warranted an "Agricultural Equipment Operator" job classification.[125] The entirety of the evidence at trial, from both the Plaintiffs and the representatives of Sterling establishes that Sterling assigned Plaintiffs to haul sugarcane, which was specifically listed in the job duties for the temporary labor certifications which were approved by the Department of Labor. Further, as acknowledged by the Plaintiffs in their Second Amended Complaint, "Plaintiffs accepted the terms of their contract by traveling to the United States and working for Defendant in the jobs authorized by their H-2A visas."[126]

---

[122] Exhibit P-6 at 0003, 0015.
[123] Exhibits P-7, Pages 0003, 0020; P-8, Page 0025; P-9, Page 0025.
[124] Exhibit P-10 Page 0010.
[125] Exhibit P-7; Exhibit P-8; Exhibit P-9.
[126] ECF No. 66, ¶ 178.

As evidenced by their own pleadings and trial testimony, Plaintiffs accepted and performed the terms of their contracts. There simply is no evidence of a breach with respect to the work described in the job orders and the pay that would be offered according to the terms in the job orders. The evidence in the record establishes that the parties performed the obligations outlined in the job orders, which constitutes "acceptance by performance" under Louisiana law. There is no legitimate dispute about whether the contracts at issue were performed according to their terms. Plaintiffs rely on 29 C.F.R. § 501.5 to support the proposition that Plaintiffs cannot "waive" rights conferred to them under the H-2A program. However, the doctrine of acceptance by performance is a separate affirmative defense from waiver and requires discrete elements of proof.[127] 29 C.F.R. § 501.5 has no application in the present lawsuit as it applies when an H-2A employer presents H-2A workers with a private settlement agreement (rather than a binding job clearance order certified by the Department of Labor) that expressly purports to waive an H-2A employee's rights.[128]

The Court finds that Plaintiffs have failed to meet their burden of proving that Sterling breached their contracts. Plaintiffs were aware of the terms of their work contracts and performed the terms of those contracts year after year, as evidenced by their admissions that they worked the jobs described in the job orders. Each of the Plaintiffs testified that they accepted and performed the terms of their contracts by entering the United States and working according

---

[127] *See Steptore v. Masco Constr. Co.*, 643 So.2d 1213 (La. 1994) ("Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege."); La. C.C. art. 1939) ("When an offeror invites an offeree to accept by performance, and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance."); *Rogers v. Horseshoe Ent.,* 766 So.2d 595 (La. App. 2d 2000) (applying separate analyses for waiver and acceptance by performance defenses).

[128] *See, e.g., Sarmiento v. Fresh Harvest, Inc.*, No. 20-cv-7974, 2022 WL 718565, at *2 (N.D. Cal. Mar. 10, 2022) (invalidating private pre-lawsuit settlement agreement entered by H-2A employer and H2A employee pursuant to 29 C.F.R. § 501.5).

to the terms of their H-2A visas.[129] Accordingly, Plaintiffs have not met their burden of proving that Sterling breached their contracts.

The Court also notes that Plaintiffs' claims and arguments are essentially a collateral attack on the job clearance orders approved by the Department of Labor. 20 C.F.R. § 655.181 exclusively governs the procedure for revoking a job clearance order when an employer is accused of obtaining temporary agricultural certification by means of "fraud or misrepresentation in the application process[,]" as Plaintiffs allege in this lawsuit. The plain language of this regulation reflects that such authority is reserved to the Office of Foreign Labor Certification Administrator. The claims advanced by Plaintiffs present the precise scenario that this regulation is intended to address. Notably, there is no evidence that this administrative remedy has been exhausted.

### F. Louisiana Wage Payment Act.

Plaintiffs also assert that Sterling violated the Louisiana Wage Payment Act ("LWPA") by failing to pay all the sums due to them. The LWPA requires employers to pay all wages due by the employee's next regular payday and not later than 15 days after employment ends.[130] Sterling argues that the LWPA is preempted by the FLSA. Plaintiffs argue that Sterling waived the preemption argument by not raising it in the Joint Pretrial Order.

---

[129] Vega Guerrero, 189:2-14; Valenzuela Chavez, 208:9-11; Ruiz Pacheco, 232:19-25, 245:4-7, 251:3-9; Parra Martinez , 296:19-25;  Diaz Castro, 312:2-8; Romero Ruelas 348:9-14; Villegas Sifuentes, 376:24-25, 377:1-2; Martinez Arellano, 399:17-25, 400:1- 4;  Ramirez Fernandez, 406, 19-25, 407:1-5; Ramirez Fernandez, 419:20-25, 420:1-20; Rodriguez Penuelas, 433:19-25, 434:1-4; Francisco Mendez, 443:1-16; Pereyra Vidana at 424:12-19; Ramirez Lopez, 475:18-25, 476:1-6;  Sanchez Gonzalez, 493:2-15; Alvarez Barron, 504:9-25, 505:1-10;  Valdez Rodriguez, 522-3-25, 526:1-14; Valenzuela Urias, 534:14-25, 535:1-5; Velez Sandoval, 541:19-25, 542:1-6;  Diaz Meza, 558:11-19;  Chaires Mendoza, 567:8-23; Arce Ruiz, 576:17-25; Jiminez Gonzalez, 586:15-25; 587:1-4; Dep. Tr. Of Javier Soto, at 152:2125; Dep. Tr. of Miguel Martinez Villalobos, at 151:18-22; Dep. Tr. of Arnulfo Miranda, Vol. I, at 19:23; Dep. Tr. of Arnulfo Miranda, Vol. II, at 122:11-16; Dep. Tr. of Felipe de Jesus Suarez Palafox, at 84:2-4; Dep. Tr. of Juan Alejo Hernandez Canela, at 60:6:11.
[130] Louisiana Revised Statutes 23:631 and 23:632.

In the Fifth Circuit, "[a] party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order[.]"[131] To preserve an issue for trial, the "issue must be presented so as to put the opposing party and the court on notice that it is being raised."[132] Sterling placed Plaintiffs and the Court on notice of its preemption defense by asserting the defense in each of its responsive pleadings and in its Rule 52(c) motion made at trial. Although Sterling neglected to raise the issue in the Joint Pretrial Order, there is no dispute that they placed Plaintiffs on notice of their intent to argue that defense both before and after that time.

The statutory schemes of the FLSA and the LWPA are different, and they give rise to different, but sometimes overlapping, claims. The FLSA sets a minimum wage and mandates that employers pay their hourly employees one and a half times their regular rate of pay for all hours worked in excess of 40 hours per week.[133] Thus, an employer violates the FLSA if it fails to pay covered employees a minimum wage or fails to pay covered employees at least one and one-half times their normal rate for hours worked in excess of 40 hours per week.[134] The LWPA is broader in scope and obliges an employer promptly to pay an employee earned wages due upon the employee's discharge or resignation.[135] Thus, the LWPA punishes employers who fail

---

[131] *Mongrue v. Monsanto Co.,* 249 F.3d 422, 427 (5th Cir. 2001).

[132] *Id.*

[133] *Kingsbery v. Paddison*, 2021 WL 1909727, at *4 (E.D. La. May 12, 2021), citing 29 U.S.C. §207(a)(1); *Johnson v. Heckmann Water Res. (CVR), Inc*., 758 F.3d 627, 630 (5th Cir. 2014*); Johnson v. Big Lots Stores, Inc*., 561 F. Supp. 2d 567, 572 (E.D. La. 2008).

[134] 29 U.S.C. §§206, 207. *Knaps v. Quality Refractory Serv., Inc*., 2021 WL 125932, at *2 (E.D. La. Jan. 13, 2021).

[135] *Kingsbery*, 2021 WL 1909727, at *5–6, citing *Newton v. St. Tammany Fire District No. 12*, 318 So.3d 206, 211 (La. App. 1st Cir. 2/19/21) ("The main purpose of the wage payment law is to compel an employer to pay the earned wages of an employee promptly after [her] dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers.").

to promptly pay their former employees; in addition to penalty wages, the LWPA provides for an award of reasonable attorney fees, provided that certain conditions are met.[136]

"Unlike the FLSA[,] the Louisiana statute at issue, the LWPA, does not establish a minimum wage or overtime protection."[137] The LWPA "provides that contracted-for wages -- 'the amount then due under the terms of employment' -- must be paid to an employee within a certain time frame after termination or resignation."[138] "To prove 'terms of employment,' a plaintiff need not show a written agreement existed; a 'normal procedure' or 'internal policy' will suffice."[139] "To state a claim for unpaid wages under the LWPA, an employee must allege [1] that [the defendant] was her employer, [2] that the employee/employer relationship ceased to exist, [3] that at the time that the employee/employer relationship ended she was owed wages, and [4] that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days."[140]

In *Tillman v. Louisiana Children's Med. Ctr.*,[141] the plaintiff, a PBX operator at New Orleans East Hospital, alleged that she and others similarly situated were owed unpaid minimum wages and overtime from their employers, alleging that a half-hour meal break was deducted from every day that she worked, despite the fact that she was not allowed a meal break. The plaintiff brought a claim for unpaid wages under the FLSA as well as state law final wage payment claims.[142] The defendants filed a motion to dismiss under Rule 12(b)(6), arguing, inter

---

[136] *Id*., citing *Bergeron v. Ochsner Health System*, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017) (citation omitted).
[137] *See Bennett v. McDermott Int'l, Inc.,* 855 Fed.Appx. 932, 935 (5th Cir. 2021) (unpublished, per curiam).
[138] *Id*. at 935.
[139] *Id*.
[140] *Bergeron*, 2017 WL 3648451, at *2 (citation omitted).
[141] 2017 WL 1399619, at *1 (E.D. La. Apr. 19, 2017).
[142] *Id*.

alia, that the FLSA preempts the LWPA.[143] Plaintiff argued that her LWPA claims were not

preempted because she was seeking recovery of the amount that she was not paid over and above

minimum wage, and the Court agreed, finding:

> The language of the LWPS "is unambiguously broad in scope; it mandates that an employer pay any amount that an employee justifiably earns under the terms of his employment." The FLSA, on the other hand, requires only that an employer pay its employees a minimum wage as set by the Act and does not address the failure to pay agreed upon wages. Accordingly, [p]laintiff is entitled to seek the amount she is owed over and above minimum wage through the LWPS, and her claim is not preempted.[144]

Here, Plaintiffs are not seeking the recovery of overtime wages under the LWPA but

rather are seeking the payment of penalty wages based upon Sterling's failure to pay Plaintiffs

the contractually agreed-upon wages. As such, the LWPA is not preempted by the FLSA for the

purpose asserted by the Plaintiffs. However, since the Court has determined that Plaintiffs failed

establish that Sterling failed to pay the Plaintiffs the contractually agreed-upon wages and has

only found liability based upon the FLSA, Plaintiffs' claim under the LWPA must also fail.

### G. Costs and Attorney Fees.

The FLSA provides that "[t]he court in [an FLSA] action shall, in addition to any

judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by

the defendant, and costs of the action."[145] The FLSA "make[s] fee awards mandatory for

---

[143] *Id*. at *3.

[144] *Id*. at *3 (internal citations omitted), citing *Hendrix v. Delta Air Lines, Inc*., 234 So. 2d 93, 95 (La. App. 4th Cir. 1970) ("The federal law makes no provision for or against penalties for mere failure to pay admittedly due agreed-upon wages promptly upon termination of employment. We conclude there is no preemption on this question by the Fair Labor Standards Act...."). *See also Kingsbery*, 2021 WL 1909727, at *6 (where plaintiff sought not just overtime wages which are the object of her FLSA claim, but, rather, also sought unpaid wages and accrued vacation under the LWPA, the court found the LWPA claim, so limited, was not preempted); *see also England v. Adm'rs of the Tulane Educ. Fund, No.* 16-3184, 2016 6520146 (E.D. La. Nov. 3, 2016 ) (LWPA claim for unused vacation, paid time off, sick days, and paid holidays was not preempted); *Bergeron v. Ochsner Health Sys.,* No. 17-519, 2017 WL 3648451 (E.D. La. Aug. 24, 2017) (noting that the plaintiff's LWPA claim was limited to recover unpaid hourly wages involving workweeks that did not exceed 40 hours).

[145] 29 U.S.C. § 216(b).

prevailing plaintiffs."[146] "[A]n employer who violates the [FLSA] is . . . required to pay attorney's fees."[147] Plaintiffs are prevailing parties and are entitled to recover their reasonable costs and attorney fees, which will be assessed on a motion under Fed. R. Civ. P. 54(d). Plaintiffs shall file a Rule 54(d) motion for fees and costs within fourteen days.

## III.
### CONCLUSION

For the foregoing reasons, the Court finds that the thirty (30) Plaintiffs who testified are entitled to overtime compensation under the FLSA. The Court further finds that the FLSA violation was not intentional and that Sterling acted in good faith. As such, a two-year statute of limitation applies and no liquidated damages are due. Plaintiffs' claims for breach of contract and for damages under the LWPA are dismissed. Plaintiffs are entitled to recover reasonable costs and attorney fees. Counsel for Plaintiffs shall filed a motion for fees and costs within fourteen days of this ruling. The parties shall confer and submit a judgment in conformity with the foregoing reasons within twenty-one days.

THUS DONE in Chambers on this 11th day of September, 2025.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[146] *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 416 & n.5 (1978).
[147] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).