**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ARTEMIO ALVAREZ BARRON ET AL** | **CASE NO. 6:21-CV-03741** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **STERLING SUGARS SALES CORP** | **MAGISTRATE JUDGE DAVID J. AYO** |

# MEMORANDUM RULING

In the Court's Memorandum Ruling [ECF No. 242] entered on September 11, 2025, the Court found in favor of Plaintiffs on their FLSA claim and indicated that they were entitled to recover reasonable costs and attorney fees. The matter presently before the Court is the Plaintiffs' Motion for Attorney Fees and Costs [ECF No. 248]. Defendants oppose certain portions of the attorney fees and costs. Also before the Court are Plaintiffs' Motion for Entry of Proposed Final Judgment [ECF No. 254] and Defendants' Motion for Entry of Proposed Final Judgment [ECF No. 256].

## I. FACTUAL BACKGROUND

Plaintiffs[1] are 31 migrant workers from Mexico employed by Sterling Sugars Sales Corporation ("Sterling") under the federal H-2A temporary agricultural worker visa program for the 2018 through 2022 sugarcane harvesting seasons. Plaintiffs contend that Sterling obtained their

[1] Artemio Alvarez Barron, Carlos Ernesto Pereyra Vidana, Miguel Martinez Martinez Villalobos, Jesus Lamberto Ramirez Lopez, Carlos Alfredo Ramirez Fernandez, Daniel Valenzuela Chavez, Alfredo Valdez Rodriquez, Felipe de Jesus Suarez Palafox, Julio Santiago Villegas Sifuentes, Pedro Abel Jimenez Gonzalez, Jesus Ivan Ramirez Fernandez, Jesus Pedro Zazueta Ochoa, Arnulfo Villegas Miranda, Jesus Alfredo Parra Martinez, Teresa de Jesus Sanchez Gonzalez, Ricardo Guadalupe Arce Ruiz, Oscar Rene Velez Sandoval, Jesus Ignacio Diaz Castro, Jesus Antonio Rodriguez Penuelas, Javier Avila Soto, Israel Diaz Meza, Hibys Alberto Vega Guerrero, Hector Martinez Arellano, Francisco Javier Chaires Mendoza, Felipe De Jesus Meza Dimas, Margarita Valenzuela Urias, Oscar Javier Ruiz Pacheco, Pedro Daniel Romero Ruelas, Fabian Flores Garcia, Juan Alejo Hernandez Canela, and Julian Cristobal Francisco Mendez.

H-2A visas by falsely representing that Plaintiffs would be employed as agricultural workers; however, they were allegedly employed solely as heavy truck drivers, resulting in Sterling's payment to Plaintiffs at a wage rate below the prevailing wage for truck drivers. They further allege that they were never paid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. section 201, et seq., and Louisiana law. Plaintiffs seek declaratory and injunctive relief, money damages, interest, and attorney's fees. A six-day bench trial was held on this matter and the Court issued its Memorandum Ruling on September 11, 2025 finding that the thirty (30) Plaintiffs who testified were entitled to overtime compensation under the FLSA; and that the FLSA violation was not intentional and Sterling acted in good faith. As such, a two-year statute of limitation applied and no liquidated damages were due. Plaintiffs' claims for breach of contract and for damages under the LWPA were dismissed. Plaintiffs have now filed their motion seeking reimbursement of attorney fees in the amount of $922,339.50 and costs of $33,438.13. Defendants object to the motion.

## II.
## Law and Analysis

"[A]n employer who violates the [Fair Labor Standards Act (FLSA)] is . . . required to pay attorney's fees."[2] Plaintiffs have the burden of proving the reasonableness of the fees that they seek.[3] Courts in the Fifth Circuit use the "lodestar" method to calculate FLSA fees by "multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate."[4] "There is a strong presumption of the reasonableness of the lodestar amount."[5]

---

[2] *Black v. SettlePou, PC*, 732 F.3d 492, 502 (5th Cir. 2013).
[3] *Id.*
[4] *Id.*
[5] *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

"[A]fter calculating the lodestar, a district court may enhance or decrease the fee amount 'based on the relative weights of the twelve factors set forth in *Johnson*.'"[6] "The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."[7]

Any *Johnson* adjustments to the lodestar amount must be supported by "specific evidence" that is not already "subsumed in the lodestar calculation."[8] The "strong presumption [means] that the lodestar . . . should be modified only in exceptional cases."[9] "The lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting."[10] "In calculating the lodestar, the court should exclude all time that is excessive, duplicative, or inadequately documented."[11]

### A. Appropriate Hourly Rate.

Courts begin with the calculation of a reasonable rate. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market."[12] "The relevant legal market

---

[6] *Id.* (*citing Johnson v. Georga Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).
[7] *SettlePou*, 732 F.3d at 502 n.7.
[8] *Perdue*, 559 U.S. at 553; accord *SettlePou*, 732 F.3d at 502.
[9] *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood Cty.*, 16 F.3d 1214, at *2 (5th Cir. 1994).
[10] *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).
[11] *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016).
[12] *Hopwood v. State of Tex.*, 236 F.3d 256, 281 (5th Cir. 2000).

is the community where the district court sits."[13] "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her 'customary billing rate,' the rate is within the range of prevailing market rates, and the rate is not contested."[14]

The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates.[15] Reasonable hourly rates must be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation."[16] The reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing in the relevant locality, rather than an affidavit of the fee-seeker's attorney.[17] However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate.[18] "The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge."[19] Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits.[20]

Out-of-district counsel may use his or her home district as the basis for the lodestar "under certain limited circumstances," such as when "abundant and uncontradicted evidence" show the

---

[13] *Carr v. Kijakazi*, No. 21-CV-04454, 2023 WL 3168676, at *2 (W.D. La. Apr. 13, 2023) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)), report and recommendation adopted, No. 21-CV-04454, 2023 WL 3168343 (W.D. La. Apr. 28, 2023).
[14] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).
[15] *Fleming v. Elliot Security Solutions, LLC*, No. 19-2348, 2021 WL 4908875, at *2 (E.D.L.A. October 21, 2021) (citing *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987)).
[16] *Blum v. Stenson*, 465 U.S.886, 895 104 S.Ct. 1541; see *McClain.*, 649 F.3d at 381.
[17] *U.S. ex rel. Cook-Reska v. Cmty. Health Sys., Inc.*, 2016 641 F. App'x 396 (5th Cir. 2016); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381–82 (5th Cir. 2011); *Tollett*, 285 F.3d at 368.
[18] *See Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983).*
[19] *Creecy v. Metropolitan Property and Cas. Ins. Co.*, 548 F.Supp. 279, 284 (E.D.L.A. 2008) (citing *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).
[20] *Blum*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

necessity of turning to out-of-district counsel.[21] However, "a district court 'is itself an expert' on the issue of fees and 'may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'"[22]

In the instant case, counsel for Plaintiffs have no customary rates because as legal aid lawyers, they do not customarily charge for their services. However, the fact that the prevailing party was represented by a nonprofit law firm funded by the Legal Services Corporation is irrelevant for the purpose of calculating attorney fees.[23] In the absence of customary fees, nonprofit law firms' rates for fee purposes should be the same as those billed by private law firms in the "relevant community."[24] The parties agree that the "relevant community" is the district where the court hearing the case sits unless the party seeking fees proves that local attorneys are unavailable in that district, in which case the "relevant community" is where non-local counsel practices.[25]

Plaintiffs' counsel seek the hourly market rates where they reside rather than hourly market rates in the Western District of Louisiana arguing that comparable counsel in the Western District of Louisiana are not available to undertake litigation of this type, scale, and complexity, which includes: (a) a FLSA collective action; (b) involving dozens of workers over four seasons; (c) with litigation lasting four years; (d) when employment terms are governed by the H-2A visa program; (e) when plaintiff workers reside in Mexico and do not speak English; and (f) the FLSA overtime claims raising novel legal issues, including the applicability of the FLSA agricultural exemption

---

[21] *Franciscan Alliance, Inc. v. Becerra*, 681 F.Supp.3d 631, 643 (N.D. Tex. 2023) (quoting *McClain., Inc.*, 649 F.3d at 381–82).
[22] *Winget v. Corp. Green, LLC*, 2011 WL 2173840, at *6 (M.D. La. May 31, 2011) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).
[23] *Jordan v. Greenwood*, 808 F.2d 1114, 1117 (5th Cir. 1987); *see also Fairley v. Patterson,* 493 F.2d 598, 607 & n.13 (5th Cir. 1974) (whether the attorney charges a fee is not a basis on which to deny or limit fees).
[24] *Blum v. Stenson*, 465 U.S. 886, 895 (1984).
[25] *CenturyTel of Chatham, LLC v. Sprint Commc's Co. LP*, No. 09-cv-1951, 2016 WL 4005965, at *8-9 (W.D. La. July 25, 2016)

to workers who are misclassified under the H-2A program. Plaintiffs' counsel also argue that the same hourly rates would apply if the greater New Orleans area were considered the relevant market, because that is where Sterling looked to counsel, and it is the nearest locality with firms able to conduct litigation of this scope and duration.

Defendants argue that Plaintiffs' counsel's rate are unreasonable because there are experienced attorneys in the Western District of Louisiana that charge a much lower rate. The Court agrees based on its own experience with FLSA cases in which the plaintiffs were represented by local counsel. Other judges within the Western District of Louisiana have also had the same experience based upon a review of recent cases in this district. In 2025, in *Smith v. 1st Abundant Home Care LLC*, a suit bringing minimum and overtime wage claims under the FLSA, hourly rates for experienced attorneys was set between $300 and $375 per hour.[26] In *Smith*, the court noted that "there are numerous practitioners within [the WDLA] who litigate FLSA cases."[27] In 2024, in the another judge in this district approved a $365 per hour rate customarily billed by an attorney with twenty-two years of experience as within prevailing market rates, "albeit on the upper end."[28] In a survey that included cases from both the Western District and Middle Districts of Louisiana, another court noted that attorneys with over twenty years of experience regularly receive between $300 and $375 per hour.[29] Another court within the district in 2023 approved a rate of $395 per hour for a local attorney with over thirty years of litigation experience in a construction dispute.[30]

The Court agrees that the hourly rates sought by Plaintiffs' counsel, ranging from $250 to $600 per hour, are significantly above the prevailing market rates in the WDLA. Local standards

---

[26] *Smith v. 1st Abundant Home Care LLC*, No. 2:25-cv-00021, 2025 WL 2025 WL 1396508, at *6 (W.D. La. 2025).
[27] *Id.*, at *6.
[28] *Revell v. Prince Preferred Hotels Shreveport, LLC*, 2024 WL 3625214, at *4 (W.D. La. Aug. 1, 2024).
[29] *Olive v. Tubbs*, 2023 WL 6420794, at *8 (W.D. La. Sep. 29, 2023).
[30] *ADB Commercial Constr. (La.) LLC v. St. Charles Housing LP*, 2023 WL 8263433, at *2 (W.D. La. Nov. 29, 2023).

establish that experienced attorneys typically receive between $300 and $375 per hour, with even the most seasoned practitioners rarely exceeding the upper end of this range. The Court finds that the following rates are appropriate given each attorney's years of experience:

| | |
|---|---|
| Greg Schell | $395 per hour |
| Jerome Wesevich | $390 per hour |
| Douglas Stevick | $375 per hour |
| Nathaniel Norton | $350 per hour |
| Daniel Davis | $350 per hour |
| Lakshmi Ramakrishnan | $350 per hour |
| Caitlin Berberich | $350 per hour |
| Sarah Donaldson | $330 per hour |
| Melia Amal Bouhabib | $320 per hour |
| Hannah Wolf | $300 per hour |
| Nicole Bucheri | $300 per hour |
| David Huang | $250 per hour |
| Deborah Osborn | $250 per hour |

The Court finds that the following non-attorney rates are reasonable and customary in the Western District of Louisiana:

| | |
|---|---|
| Ramos Ramos | $100 |
| Thomas Rogel | $90 |
| Cynthia Farias | $90 |
| Arlow Ivan Cruz Veliz | $90 |
| Julieta Paredes | $75 |

| | |
|---|---|
| Doris Garcia-Ruiz | $95 |
| Diana Howell | $75 |
| Maria Elisa Murray | $75 |

**B. Number of Hours.**

Defendants also argue that the number of hours claimed by Plaintiffs' counsel is unreasonable for a variety of reasons. "[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment."[31] Attorneys must exercise billing judgment by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards.[32]

Defendants argue that the 2,502.9 hours for which Plaintiffs seek attorneys' fees are excessive, unreasonable, and do not reflect proper billing judgment.[33] Defendants argue that the billing records submitted by Plaintiffs' counsel clearly demonstrate they mismanaged timekeeper resources and did not value the substantial risk of loss that ultimately resulted. According to Defendants, Plaintiffs' counsel (a) billed for wholly unproductive and unsuccessful work; (b) submitted time entries which are not sufficiently detailed; (c) charged a premium rate for clerical tasks; (d) billed for entry level work; (e) charged an excessive and disproportionate amount related to filling the instant fees motion; and (f) duplicated work. Plaintiffs should be awarded reasonable attorneys' fees that align with the value of their case and that accounts for the judgment they exercised. The Court will address each of these categories.

[31] *DeArmond v. All. Energy Servs., LLC*, No. 17-2222, 2018 WL 2463207, at *1 (E.D. La. June 1, 2018) (Roby, M.J.) (citing *Walker v. City of Mesquite*, 313 F. 3d 246, 251 (5th Cir. 2002)).
[32] *Id.* (citing *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)).
[33] ECF No. 259, p. 15.

1. Unproductive and Unsuccessful Work.

Defendants first challenge the entirety of hours, specifically 177.3 hours spent on damages calculations, arguing that they were unsuccessful and not admitted at trial. The Court disagrees. Damage calculations are vital to this type of case and are typically time-consuming. Plaintiffs' damage calculations were necessary throughout the case and were, in fact, used by the Court. Defendants' objection to this category of fees is overruled.

Defendants next argue that there should be a percentage reduction for fees charged for unsuccessful motions and claims. However, Plaintiffs have excised from the billed time: (a) time spent solely on Plaintiffs' unsuccessful contract, willfulness, good-faith claims, and the Louisiana Wage Payment Act; (b) time spent on briefing cross-motions for summary judgment except with respect to some time briefing the FLSA overtime claims for which Plaintiffs were successful; (c) time spent pursuing claims for the eight Plaintiffs who will recover no money under the parties' proposed judgment; (c) all time spent by persons who worked fewer than 20 hours on this litigation; (d) time spent on Plaintiffs' Motion to Compel Discovery, responding to Non-Party Ashley Foret Dees's Motion to Quash Subpoena, responding to Defendant's Motion to Quash, and Plaintiff's Motion to Compel Deposition Testimony; (e) Plaintiffs' Motion for Leave to Take Plaintiffs' Trial Deposition; (f) time for more than the principal staff member on conferences or emails involving two or more staff; (g) time that is arguably duplicative because it involves one attorney reviewing someone else's work, unless the review was particularly important; (h) time related to attorney withdrawals; and (i) time spent for brief, incidental, and administrative work.[34] The Court finds that these were the appropriate exclusions from the time billed. The Court overrules Defendant's objection as to this category.

[34] *See* Berberich Decl. ¶¶ 13–14, Ex. 1; Ex. A to Berberich Decl. (Plaintiffs' billing records); Ramakrishnan Decl. ¶ 8, Ex. 2.

Defendants also argue that all work performed after Defendants' Rule 68 Offer of Judgment should be excluded. When a plaintiff rejects a Rule 68 offer of judgment and the judgment finally obtained is "not more favorable than the offer," Rule 68 requires the offeree to "pay the costs incurred after the making of the offer."[35] As the Supreme Court has noted, "[t]he plain purpose of Rule 68 is to encourage settlement and avoid litigation."[36] Defendants argue that Plaintiffs rejected Defendant's February 2024 Offer of Judgment in the amount of $724,510.84. Defendants rely upon a letter dated February 27, 2024 entitled Rule 68 Offer of Judgment.[37] However, this document was not made until seven (7) days before trial, rather than "[a]t least 14 days before the date set for trial" as required by Rule 68(a). Further, the alleged offer of judgment was a lump sum amount and did not apportion the amounts which would be paid to each individual Plaintiff and thus would not enable each Plaintiff to evaluate the offer. Accordingly, there was no valid offer of judgment and thus Rule 68 does not preclude fees incurred after the offer was made. Defendant's objection as to this category of fees is overruled.

For the foregoing reasons, the Court finds that Defendants have failed to demonstrate that a reduction of specific hours is appropriate for unproductive and unsuccessful work.

2. <u>Insufficiently Detailed Time Entries.</u>

Next, Defendants challenge 117 hours which are purportedly insufficiently detailed. "It is well settled that supporting documentation for attorney's fees must be of sufficient detail and probative value to enable the court to 'determine with a high degree of certainty' that the billing is reasonable.'"[38] An attorney demonstrates a lack of billing judgment by failing to describe, with sufficient particularity, his billing entries in a fee request. Courts have disallowed attorney fees for

[35] Federal Rule of Civil Procedure 68(d).
[36] *Marek v. Chesny*, 473 U.S. 1, 5 (1985).
[37] ECF No. 259-1.
[38] *Funez v. EBM, No.* 16-01922, 2018 WL 5004806, at *6 (E.D. La. Oct. 16, 2018).

billing entries that are vague.[39] Vague entries are those that are 'not illuminating as to the subject matter' or 'vague as to precisely what was done.'"[40] The Court has reviewed the specific entries challenged by Defendants and has no difficulty in discerning the subject matter of those entries. Defendants' objection as to this category of hours is overruled.

3. Attorney Rates for Clerical Tasks.

Next, Defendants challenge a total of 10 hours which they allege were clerical tasks which were performed by attorneys. When an attorney performs a clerical task, the opponent should not be charged the attorney's hourly rate.[41] This is because "clerical or secretarial costs are part of an attorney's overhead and are usually reflected in the billing rate."[42] The Court has reviewed the nine (9) time entries challenged by Defendants and finds that they are not simply clerical tasks. This objection is overruled.

4. More Experienced Counsel Billed for Entry Level Work.

Defendants also object to 106.6 hours of work which are alleged to be entry level work but were billed by more experienced counsel. "Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner."[43] "[L]ower rates may, and indeed should, be charged for routine work requiring less extraordinary skill and experience."[44]

---

[39] *See Rodney v. Elliot Security Solutions, LLC*, 2020 WL 4756490, at *9.
[40] *Id.* (quoting *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005), aff'd, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007)).
[41] *Id.*, at *10; *see also DeArmond v. All. Energy Services*, 2018 WL 2463207, at *7
[42] *DeArmond*, at *7 (citing *Hagan v. MRS Assocs.,* No. 99-3749, 2001 WL 531119, at *9 (E.D. La. May 15, 2000)); *see also Rodney*, 2020 WL 4756490, at *10.
[43] *Rodney*, 2020 WL 4756490, at *11 (quoting *Union Cent. Life Ins. Co. v. Berger*, No. 10 CIV. 8408 PGG, 2013 WL 6571079, at *1 (S.D.N.Y. Dec. 13, 2013) (internal quotation omitted); *see also White v. Imperial Adjustment Corp.*, 99-3804, 2005 WL 1578810 (E.D. La. June 28, 2005), at *8 (recognizing that attorneys customarily charge their highest rates only for trial work, and lower rates should be charged for routine work requiring less extraordinary skill and experience).
[44] *Rodney*, 2020 WL 4756490, at *5 (quoting *White*, 2005 WL 1578810, at *8).

First, if the Court agreed with Defendants on this issue, the Court would not exclude the hours, but rather, the rates charged for those hours may be reduced. Second, the Court has reviewed the time entries challenged by Defendants and finds that there is no basis to find that the work should have been assigned to entry level attorneys. Defendants' objection to these hours is overruled.

5. Fees Charged for the Fee Motion.

Next, Defendants object to 58.7 hours charged for work performed on the present fee motion. "It is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation."[45] A district court has discretion to reduce or eliminate fees related to time spent litigating a fees request.[46] One factor to be considered in determining whether to award fees on fees "involves a comparison between the hours spent on the merits and the hours spent on the fee petition. In other words, '. . . the relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case.'"[47] The Court has reviewed the hours charged by Plaintiffs' counsel for the merits of the case as compared to hours spent on the fee motion and the hours spent on the fee motion represent less than 3% of the fees spent on the merits of the case. The Court finds that this is not an unreasonable amount of time given the nature of the case. Defendants' objection is overruled.

---

[45] *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (citations omitted).
[46] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995) at 336.
[47] *Liger v. New Orleans Hornets NBA Ltd. Partnership*, No. 05-01969, 2010 WL 3952006, at *26 (E.D. La. Aug. 3, 2010), report and recommendation adopted, No. 05-1969, 2010 WL 3951506 (E.D. La. Oct. 6, 2010) (quoting *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 554 (7th Cir.1999)).

6. Duplicated Work.

Finally, Defendants object to a total of 135.2 hours, primarily performed by the most senior counsel on the basis that Plaintiffs made unreasonable staffing decisions which resulted in substantial duplication of effort. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted."

Defendants' primary complaint here is that Plaintiffs employed a total of thirteen attorneys, four of whom represented the trial team. Defendants do not specify the entries which they challenge as being duplicative but rather complain that certain attorneys worked on certain generic aspects of the case. The Court has reviewed all time entries and cannot find that there are specific duplicative time entries. The Court also cannot fault the size of Plaintiffs' team of attorneys given the nature of the case and the years long litigation. Defendants' objection on this issue is overruled.

In conclusion, the Court finds that the number of hours asserted by Plaintiffs is the appropriate number of hours. Based upon the fees and the hours which the Court has determined to be appropriate, the following represents the lodestar:

| Counsel/Staff | Rate | Hours | Total Fees Allowed |
|---|---|---|---|
| Caitlin Berberich | $350 | 874.40 | $306,040 |
| Nicole Bucheri | $300 | 495.10 | $148,530 |
| Tomas Rogel | $90 | 295.10 | $26,559 |
| Hannah Wolf | $300 | 213.20 | $63,960 |
| Cynthia Farias | $90 | 112.10 | $10,089 |
| David Huang | $250 | 70.70 | $17,675 |
| Diana Howell | $75 | 66.70 | $5,002.50 |
| Daniel Davis | $350 | 62.60 | $21,910 |
| Gregory Schell | $395 | 62.20 | $24,569 |
| Lakshmi Ramakrishnan | $350 | 56.20 | $19,670 |
| Douglas Stevick | $375 | 55.20 | $20,700 |
| Melia Amal Bouhabib | $320 | 39.50 | $12,640 |
| Julieta Paredes | $75 | 19.00 | $1,425 |

| | | | |
|---|---|---|---|
| Roman Ramos | $100 | 18.50 | $1,850 |
| Deborah Osborn | $250 | 13.80 | $3,450 |
| Arlow Ivan Cruz Veliz | $90 | 13.40 | $1,206 |
| Sarah Donaldson | $330 | 12.80 | $4,224 |
| Maria Elisa Murray | $75 | 12.00 | $900 |
| Jerome Wesevich | $390 | 5.80 | $2,262 |
| Nathaniel Norton | $350 | 2.50 | $875 |
| Doris Garcia-Ruiz | $95 | 2.10 | $199.50 |
| | | | |
| Total | | | $693,736 |

### C. Adjustment of the Lodestar.

Having determined the appropriate rates and the appropriate hours, the Court must now determine whether a reduction of the lodestar is appropriate. After calculating the lodestar, a court may decrease or enhance the amount based on the relative weight of the factors set forth in Johnson.[48] Those factors are: "(1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."[49] After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended.[50] Courts have recognized that "[t]he most critical factor in determining an attorney's fees award is the 'degree of success obtained.'"[51] When "a plaintiff has achieved only partial or limited success, the

---

[48] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).
[49] *Id.* (citing *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir. 1998))
[50] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).
[51] *Rodney*, 2020 WL 4756490, at *2 (quoting *Hensley*, 461 U.S. at 436); *see also Martinez v. Ranch Masonry, Inc.*, 760 F. App'x 288, 290 (5th Cir. 2019) (same); *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) (same)).

product of hours reasonably expended on the litigation as a whole time a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith."[52] A district court may also consider the amount of the damages award in determining an attorney's fees award. However, "while a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award."[53]

In considering the *Johnson* factors, the Court finds that a significant reduction to the lodestar is necessary. The Court notes that Plaintiffs only recovered $140,000 and are now seeking fees of $955,777.63. Further, while the offer of judgment did not comply with Rule 68, it does represent a settlement offer and shows that Plaintiffs ultimately recovered more than $580,000 less than offered in settlement. The Fifth Circuit has held that, in setting a reasonable attorney's fee in the FLSA context, "a court should consider the prevailing party's rejection of a Rule 68 offer that was more favorable than the judgment obtained."[54] The Fifth Circuit explained: "In measuring the success of a party, a court should ask whether the party would have been more successful had his attorney accepted a Rule 68 offer instead of pressing on to trial. As one treatise puts it: 'In setting reasonable attorneys' fees, a court is to look at the results obtained, and it need not close its eyes to the reality that plaintiff's post-offer legal work produces a net loss.'"[55] The Supreme Court has similarly recognized, "[i]n a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the post offer services of his attorney."[56] In *Gurule*, the Fifth Circuit approved a 60%

[52] *Rodney*, 2020 WL 4756490, at *2 (quoting *Hensley*, 461 U.S. at 436).
[53] *Singer v. City of Waco, Tex.*, 324 F.3d 813, 830 (5th Cir. 2003) (citations omitted.)
[54] *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 261 (5th Cir. 2018).
[55] *Id.* (quoting 12 WRIGHT, MILLER & MARCUS § 3006.2).
[56] *Marek v. Chesny*, 473 U.S. 1, 11 (1985).

reduction in the lodestar.[57] That reduction was based upon the fact that the plaintiffs had rejected numerous settlement offers and ultimately recovered significantly less damages.

While Plaintiffs were technically the prevailing party and therefore entitled to fees and costs, the recovery in the case was a significant loss for the Plaintiffs. Further, while the case was somewhat complicated, it was not as complicated as Plaintiffs assert. While it dealt with a specialized statute, it was very similar to other FLSA case over which this Court has presided. Here, however, the case was characterized by aggressive litigation tactics of counsel for both parties. While each side argues that the other side over-litigated the case, the Court cannot place the blame on counsel for either side but finds they were both at fault for over-litigating the case. Based upon all of the *Johnson* factors, the Court finds that a reduction of 65% of the lodestar is appropriate. Fees in the amount of $242,807.60 are allowed.

**D. Costs.**

Plaintiffs also seek costs in the amount of $33,438.13. Defendants argue that none of the costs claimed by Plaintiffs are recoverable under 28 U.S.C. § 1920. However, the costs sought by Plaintiffs in this motion are in addition to the costs that they sought under § 1920 in their Bill of Costs [ECF No. 247].

In addition to the taxable costs recoverable by a prevailing party under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, the FLSA permits recover of additional costs for "travel, meals, lodging, photocopying, long-distance phone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment . . . as part of an attorneys' fee award."[58] Courts have long recognized that [w]here cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a)

---

[57] 912 F.3d at 261.
[58] *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 629 (W.D. Tex. 2015) (collecting cases).

do not apply."[59] Allowable FLSA related litigation expenses must be "reasonable and necessary to the prosecution [of] the case."[60] The Court finds that the costs asserted by Plaintiffs are reasonable. Accordingly, the costs are allowed.

**E. Motions for Entry of Judgment.**

Each side has now submitted their proposed final judgments. Most issues have been resolved with the exception of three issues: (1) the damages recoverable by four specific Plaintiffs; (2) the tax treatment of the judgment amounts; and (3) language regarding the basis of Plaintiffs' recovery of attorney fees and cost. The third issue has now been resolved by the Court determining the exact amount of attorney fees and costs which are recoverable.

1. Damages Recoverable by Four Specific Plaintiffs.

The parties were unable to reach agreement on the amounts due for four Plaintiffs, namely Alfredo Valdez Rodriguez, Arnulfo Villegas Miranda, Filipe de Jesus Suarez Palafox and Pedro Jimenez Gonzalez. The discrepancy is caused by Defendant excluding from its calculations pay periods at the end of these Plaintiffs' employment, on the basis that Plaintiffs cannot recover for pay periods during which overtime violations continued to accrue during the pendency of this litigation after these Plaintiffs joined the lawsuit and through the end of their 2021-22 season of employment. Plaintiffs' Second Amended Complaint joined all alleged claims of all Plaintiffs, including FLSA overtime claims that accrued through the completion of the 2021-22 sugarcane season.[61]

[59] *Dowdell v. City of Apopka*, 698 F.2d 1181, 1188–89 (8th Cir. 1983); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003) (affirming award of travel costs under ADEA fee-shifting).

[60] *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-cv-1091-X-BN, 2023 WL 4551576, at *7 (N.D. Tex. June 28, 2023), report and recommendation adopted, 2023 WL 4553384 (N.D. Tex. July 14, 2023).

[61] *See e.g.,* Doc. 66 ¶¶ 63, 69, 76, 79, 127, 129, 132, 133, 152, 155, 163, 165, 168, 171 (factual allegations detailing Plaintiffs' employment through the end of the 2021-22 season, and legal pleadings showing that Plaintiffs' complaint encompassed overtime claims into 2022).

Because the overtime claims for this period (roughly November 2021 through January 2022) were timely commenced by Plaintiffs within the two-year FLSA statute of limitations because they had already joined the lawsuit, and because these claims were properly joined and encompassed in Plaintiffs' Second Amended Complaint, the Court finds that Plaintiffs' calculations as to these four Plaintiffs is correct.

2. Tax Treatment of the Judgment Amounts.

The final dispute raised is the tax treatment of the judgment amounts awarded to Plaintiffs. Unlike other workers, wages earned by foreign workers admitted into the United States on H-2A visas are exempt from U.S. Social Security and Medicare and similarly are not normally subject to federal income tax withholding, which withholding is completely voluntary.[62] While Defendants do not dispute this, they argue that since the Plaintiffs provided W-4 forms to Defendants, Defendants are required to withhold taxes until Plaintiffs submit revised W-4 forms to Defendants.

The Internal Revenue Code (IRC) and the Treasury regulations provide that the earnings of H-2A persons admitted as H-2A workers are not "wages" for purposes of federal income and payroll (Social Security and Medicare) tax withholding. In general, an employer must withhold federal income tax and the employee's share of federal payroll taxes from "wages" paid for "employment."[63] But the term "employment . . . shall not include . . . service performed by foreign agricultural workers lawfully admitted to the United States . . . from any . . . foreign country . . . on a temporary basis to perform agricultural labor."[64] Thus, remuneration paid to persons admitted as H-2A workers is not "wages" earned in "employment," no federal income or payroll taxes may

---

[62] *See* 26 U.S.C. § 3121(b)(1), 26 U.S.C. § 3401(a)(2), and 26 U.S.C. § 3121(a) (read in conjunction with 26 U.S.C. § 3121(b)); see also IRS Pub. 15 (Circular E), Employer's Tax Guide, at 18, 29 (2025)

[63] *See* 26 U.S.C. § 3121(a)(1) (defining "wages"); 26 U.S.C. §§ 3401(a)(1) & 3402(a)(1) (requiring employer to withhold federal income tax from "wages"); 26 U.S.C. §§ 3101(a)–(b) & 3102(a) (requiring employer to withhold federal income tax from "wages").

[64] 26 U.S.C. § 3121(b)(1) ; accord 26 C.F.R. § 31.3121(b)(1)-1(c).

be withheld from an H-2A worker's remuneration. An employee receiving "wages" is normally required to furnish their employer with a withholding allowance certificate, i.e., Form W-4.[65] However, as indicated above, because remuneration paid to persons admitted as H-2A workers is not "wages," H-2A workers are not required to furnish a Form W-4 to their employer. An H-2A worker and their employer may, however, enter into a voluntary agreement for the employer to withhold federal income tax from the worker's remuneration.[66] To do so, the employee furnishes the employer with a duly executed Form W-4, and the "furnishing of such Form W-4 shall constitute a request for withholding."[67] The Treasury regulations have specific requirements for an employee to request that the agreement terminate on a specific date and for terminating such an agreement early.[68] The regulations are silent, however, on how an H-2A worker is to terminate a withholding agreement that has no termination date, which is the situation here.

While a W-4 normally "shall continue in effect with respect to the employer until another such certificate takes effect under this subsection,"[69] this provision does not address Plaintiffs' situation, where the employee wishes to terminate voluntary withholding, which cannot be accomplished by furnishing another Form W-4. In these circumstances, an employee's unambiguous communication to the employer that he wishes to end voluntary withholding should be sufficient. Herein, Plaintiffs have submitted correspondence to Defendants, as well as these pleadings indicating they wish to terminate the withholding agreement. The Court recognizes that Defendants wish to avoid any liability to the IRS, however the Court's judgment should relieve them of any such liability.

---

[65] *See* 26 U.S.C. § 3402(f)(1) & (2)(A).
[66] 26 U.S.C. § 3402(p)(1)(A).
[67] 26 C.F.R. § 31.3402(p)-1(b)(1)(i).
[68] 26 C.F.R. § 31.3402(p)-1(b).
[69] 26 U.S.C. § 3402(f)(4); accord 26 C.F.R. § 31.3402(f)(4)-1(a).

Accordingly, Defendants' Motion for Entry of Proposed Final Judgment [ECF No. 256] is DENIED. Plaintiffs' Motion for Entry of Proposed Final Judgment [ECF No. 254] is GRANTED and will adopt the language proposed by Plaintiffs to include the allowed attorneys' fees and costs.

## III.
## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Attorney Fees and Costs [ECF No. 248] is GRANTED in part and DENIED in part. The Court will allow total fees in the amount of $242,807.60 and costs in the amount of $33,438.13.

Further, Defendants' Motion for Entry of Proposed Final Judgment [ECF No. 256] is DENIED. Plaintiffs' Motion for Entry of Proposed Final Judgment [ECF No. 254] is GRANTED and will adopt the language proposed by Plaintiffs to include the allowed attorneys' fees and costs.

THUS DONE in Chambers on this 30th day of September, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE